IN THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION

**FILED**

Nelson Willis, Plaintiff, v. Adam M. Aron, Defendant

Case No.: 04:23-CV-00732-ALM

JUL **2 3** 2024

JULY 23, 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

THE HONORABLE DISTRICT JUDGE AMOS LOUIS MAZZANT, III

PLAINTIFF'S MOTION ALLEGING FRAUDULENT CONVEYANCE AND DEMAND FOR IMMEDIATE ACTION

Dear Judge Mazzant, III:

Your Honor,

I am compelled to bring an urgent matter to your immediate attention. As detailed in my comprehensive 254-page statement of facts (see March 11, 2024, 04:23-CV-00732, Exhibit A, Dkt1 Doc27 SoF w/Doc26 4th EoT), fraudulent conveyance involving AMC Preferred Equity Units (PEUs) issued to Antara Capital LP has occurred. This transaction was designed to manipulate shareholder voting power and force a reverse stock split, contrary to the wishes of Class A shareholders.

Issuance of PEUs and Manipulative Intent

1. On February 7, 2023, AMC issued 197,621,297 PEUs to Antara under a forward purchase agreement dated December 22, 2022.
2. These PEUs had super voting power, blatantly overpowering the voting rights of Class A shareholders.
3. This issuance was deliberately timed to ensure the outcome of the 1-for-10 reverse stock split vote on March 14, 2023, resulting in a "Yes" vote.
4. The next day, on March 15, 2023, Antara sold all its PEUs, profiting massively.
5. To exacerbate the issue, these PEUs were issued to Antara on February 7, 2023, the day before the record date (February 8, 2023) for the March 14, 2023, shareholder vote. They barely made the deal in the "Knick of Time," before the end of the deadline.
6. This sale was clearly intended to rig the vote.
7. AMC's efforts to present this transaction as routine, despite completing all necessary paperwork, do not obscure the fact that it was a calculated move to undermine Class A shareholders and force the reverse stock split.
8. Additionally, AMC sold these units to Antara for the dirt-cheap price of $0.58 each and did not offer the same sale of equal value to the Class A shareholders.
9. In fact, Your Honor, when they pressed the button to transfer those 197,621,297 AMC Preferred Equity Units to Antara Capital, defendant Adam M. Aron committed fraudulent conveyance.

Pattern of Misconduct by Adam M. Aron

10. Adam Aron's actions during and after the pandemic overwhelmingly harmed AMC Entertainment Holdings, Inc.
11. He burdened the company with insurmountable debt by purchasing every worthless movie theater he could find, making AMC's financial situation precarious.

12. Coming out of the pandemic, Aron became a predator of retail shareholders.

13. Utilizing his relationship with Tremayne L. Collins aka @TreysTrades (SEE Exhibit A Flow Chart), an unknown with a suddenly new and massive following on his YouTube channel promoting AMC short squeeze, Buy&Hold strategy.

14. In early February 2021, Trey began hosting livestream shows with the defendant Adam M. Aron as a guest.

15. The defendant was a guest on Tremayne L. Collin's livestream multiple times. This was strategic planning on the defendant's part to gain the trust of the public.

16. He devised a scheme to create a sense of belonging, loyalty, and camaraderie among retail investors, encouraging them to buy and hold AMC stock under the guise of an imminent short squeeze.

17. While retail investors were buying and holding, the entire AMC Board, including Aron and his two sons, dumped their shares.

18. They profited over $300 million from this scheme, betraying the trust of shareholders who believed in them.

Financial Performance Under Adam Aron (See Exhibit B)

19. Despite the serious allegations in the United States v. Sakoya Blackwood case (SEE EXHIBIT D New York Post article) and Adam Aron's continued role as CEO, AMC's financial performance has been abysmal under his leadership. Here are the net profits by year since 2016:

• 2016: Net income of -$105.9 million
• 2017: Net income of -$487.2 million
• 2018: Net income of -$487.0 million
• 2019: Net income of -$149.1 million
• 2020: Net income of -$4,589.1 million
• 2021: Net income of -$1,269.1 million
• 2022: Net income of -$973.6 million
• 2023: Net income of -$396.6 million (up to the latest reporting period)

20. Despite the CEO's involvement in criminal activities and the company's dire financial performance, the Board has taken no significant action against him.

21. This illustrates that the Board of Directors is compromised, complicit, and colluding with Adam Aron.

Legal Basis for Fraudulent Conveyance

22. The issuance of PEUs constitutes a fraudulent conveyance under the Texas Uniform Fraudulent Transfer Act (TUFTA), codified in the Texas Business & Commerce Code § 24.005(a)(1) and (2), as well as § 24.006(a).

23. In Sterling Trust Co. v. Adderley, 168 S.W.3d 835 (Tex. 2005), the Texas Supreme Court affirmed that transfers made with intent to hinder, delay, or defraud creditors are actionable under TUFTA.

24. Additionally, Texas Capital Securities, Inc. v. Sandefer, 58 S.W.3d 760 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) emphasizes the importance of fair value in transactions, supporting my claim that the PEUs were issued without receiving reasonably equivalent value.

25. Moreover, these actions violate federal securities laws, specifically Section 10(b) of the Securities Exchange Act of 1934 (15 U.S. Code § 78j) and SEC Rule 10b-5 (17 CFR § 240.10b-5), which prohibit any manipulative or deceptive practices in connection with the purchase or sale of any security.

26. In SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968), the court held that material misrepresentations or omissions in connection with securities transactions are actionable under Rule 10b-5.

27. Additionally, these actions violate Delaware General Corporation Law (DGCL) Section 144(a)(1), which addresses conflicts of interest in transactions involving interested directors. Furthermore, under DGCL Section 102(b)(7), directors are expected to act in good faith and with due care, which the AMC Board has clearly failed to do.

Demand for Immediate Action

I am demanding the following immediate actions from the Court:

27. Immediate Production of Communications: (SEE Exhibit C Project Popcorn scope of work, follow up items.)

• Compel Defendant Adam M. Aron to produce all emails, text messages, instant messages, and other forms of communication, including burner phone and email accounts, from January 1, 2020, to December 31, 2024. This includes all communications between Adam M. Aron and all Board of Directors members, and any other relevant parties.

28. Verification of Communications: Order these communications to be verified through local law enforcement channels directly from the platforms to ensure their integrity and completeness.

29. Temporary Restraining Order: Issue a temporary restraining order to prevent any further manipulative actions that could harm Class A shareholders during the investigation and litigation.

30. Immediate Arrests and Investigation: Initiate immediate arrests and a thorough investigation into these fraudulent activities to bring those responsible to justice.

Periculum in mora

31. The danger in delay is imminent.

32. The timely acquisition and verification of these communications are critical to exposing the full extent of this fraudulent conveyance.

33. Delays in obtaining this evidence will result in irreparable harm to my ability to effectively prosecute this case.

34. Furthermore, the CEO and Board, who are beyond compromised with the institutions of Wall Street, have proven time and again that they act contrary to their statements that they work for the owners of the company, the Class A shareholders.

35. Instead, they give lip service and do the opposite. Adam M. Aron is a vile, remorseless human being who should be held accountable for his actions, including his sexually explicit involvement of a minor, in the case mentioned in the Southern District of New York, United States District Court, United States v. Sakoya Blackwood, Case 1:22-cr-00460-JMF.

36. Despite these serious allegations and the poor financial performance of AMC under his leadership, the Board has taken no significant action against Adam M. Aron.

37. This demonstrates that the Board of Directors is compromised, complicit, and colluding with him.

Plaintiff demands that his words be taken with the seriousness they warrant, just as if they came from a lawyer of the highest standing.

38. This is not just a request; it is a demand for justice.

39. If ever there was a case that deserves to move to immediate discovery, this is that case. (SEE Exhibit E)

Conclusion

Based on the comprehensive evidence provided in my 254

Based on the comprehensive evidence provided in my 254-page statement of facts and the legal basis outlined, it is clear that the opinion by Weil, Gotshal & Manges LLP is inadequate and fails to capture the full extent of the fraudulent conveyance and manipulative actions perpetrated by Adam M. Aron and the AMC Board. I respectfully request that the court take immediate and decisive action to address these serious issues and uphold justice for the Class A shareholders.

Inclusion of Weil, Gotshal & Manges LLP Opinion Letter as Evidence:

Attached herewith is Exhibit 5.1, the legal opinion letter dated March 9, 2023, from Weil, Gotshal & Manges LLP. This letter is included as evidence to demonstrate the deficiencies and omissions in the analysis and conclusions drawn by the law firm regarding the issuance of AMC Preferred Equity Units (PEUs).

Rebuttal to Legal Opinion by Weil, Gotshal & Manges LLP:

1. Insufficient Examination of Manipulative Intent:
• The opinion letter fails to address the manipulative intent behind the issuance of 197,621,297 PEUs to Antara Capital LP on February 7, 2023, just one day before the record date for the shareholder vote on the reverse stock split. This timing was deliberately chosen to ensure a favorable vote outcome, thereby disenfranchising Class A shareholders.
2. Super Voting Power of PEUs:
• The opinion neglects to consider the disproportionate voting power granted to the PEUs, which significantly overpowered the voting rights of Class A shareholders. This strategic move was designed to manipulate the vote on the reverse stock split, as evidenced by Antara's immediate sale of the PEUs for massive profits the day after the vote.
3. Fraudulent Conveyance:
• The issuance of PEUs at the extremely low price of $0.58 each, without offering the same sale terms to Class A shareholders, constitutes a fraudulent conveyance. Under the Texas Uniform Fraudulent Transfer Act (TUFTA) and relevant case law (Sterling Trust Co. v. Adderley and Texas Capital Securities, Inc. v. Sandefer), this transaction lacks reasonably equivalent value and was executed with intent to hinder, delay, or defraud creditors, in this case, the Class A shareholders.
4. Corporate Misconduct and Complicity:
• Adam M. Aron's actions, supported by the AMC Board of Directors, reveal a pattern of misconduct that has severely harmed AMC's financial health and retail shareholders. The Board's failure to take significant action against Aron, despite the company's abysmal financial performance and serious allegations against him, indicates complicity and collusion.
5. Violations of Federal and State Securities Laws:
• The opinion letter does not address the potential violations of federal securities laws, specifically Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, which prohibit manipulative and deceptive practices. Furthermore, the Delaware General Corporation Law (DGCL) provisions regarding conflicts of interest and director duties have been blatantly disregarded.

6. Demand for Immediate Action:
• Given the imminent danger of delay (periculum in mora), it is crucial for the court to take immediate action. This includes compelling the production and verification of communications, issuing a temporary restraining order to prevent further manipulative actions, and initiating arrests and investigations into the fraudulent activities.

Conclusion:

Based on the comprehensive evidence provided in my 254-page statement of facts and the legal basis outlined, it is clear that the opinion by Weil, Gotshal & Manges LLP is inadequate and fails to capture the full extent of the fraudulent conveyance and manipulative actions perpetrated by Adam M. Aron and the AMC Board. I respectfully request that the court take immediate and decisive action to address these serious issues and uphold justice for the Class A shareholders.

Respectfully submitted,

Date: July 23, 2024

Signed:

Nelson Willis
Pro Se Litigant

Attachments:

1. Exhibit 5.1 - Legal Opinion Letter from Weil, Gotshal & Manges LLP dated March 9, 2023.
2. Plaintiff's Comprehensive 254-page Statement of Facts. (See Doc27 March 11, 2024, Exhibit A, SoF's)
3. Relevant Case Law Citations and Supporting Documentation.

1. Texas Uniform Fraudulent Transfer Act (TUFTA)
• Texas Business & Commerce Code § 24.005(a)(1) and (2)
• Texas Business & Commerce Code § 24.006(a)
2. Case Law:
• Sterling Trust Co. v. Adderley, 168 S.W.3d 835 (Tex. 2005)
• Texas Capital Securities, Inc. v. Sandefer, 58 S.W.3d 760 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)
• SEC v. Texas Gulf Sulphur Co., 401 F.2d 833 (2d Cir. 1968)
3. Federal Securities Laws:
• Section 10(b) of the Securities Exchange Act of 1934 (15 U.S. Code § 78j)
• SEC Rule 10b-5 (17 CFR § 240.10b-5)
4. Delaware General Corporation Law (DGCL):
• DGCL Section 144(a)(1)
• DGCL Section 102(b)(7)

—-

CERTIFICATE OF SERVICE

Case No.: 04:23-CV-732-ALM

July 23, 2024

I, Nelson Willis, Plaintiff Pro Se, hereby certify that a true and correct copy of the foregoing:

Plaintiff's Motion Alleging Fraudulent Conveyance and Demand for Immediate Action

notification has been sent by the court's electronic filing system to each attorney/party of record on this day July 5, 2024, by filing with the Clerk of the Court.

Richard A. Illmer
State Bar No. 10388350
Rick.Illmer@HuschBlackwell.com

Meghann Reeves
State Bar No. 24094499
Meghann.Reeves@HuschBlackwell.com

July 23, 2024

Nelson Willis
Pro Se Litigant