663.    The authors of the two briefs, Plaintiffs' Opening Brief in Support of Settlement, Award of Attorneys' Fees and Expenses, and Incentive Awards ("Plaintiffs' Brief") and Defendants' Brief in Support of Proposed Settlement ("Defendants' Brief"), converge on just two points in the entire argument: first, that the settlement should be consummated, and second, that should it fail to materialize, AMC faces the imminent threat of bankruptcy.

664.    Both sets of counsel advance their respective arguments for settlement by employing fear tactics.  Notably, neither party offers alternative solutions for raising capital, but instead, champion the conversion of APE into AMC common stock followed by a reverse stock split. The Plaintiffs' counsel had a substantial 20 million dollar incentive to endorse this untenable narrative. Similarly, AMC Defendants' counsel acquiesce to this contrived storyline to shield their clients from liability and secure releases.

665.    Upon reading both briefs, one is left asking themselves the following question:  Whether this precipitous settlement is predicated on preserving AMC from financial ruin or on thwarting and impeding the ongoing litigation to preclude stockholders from uncovering the facts.

666.    In both briefs, none of the authors address the conspicuous absence of any deposition testimony from Aron, a key participant in the scheme and a material fact witness. While the term "scheme" does surface in the Plaintiffs' brief, Lead Counsel conspicuously omits any reference to the consideration of petitioning the Court for leave to amend the complaint to include a cause of action against AMC Defendants grounded in fraud, as a consequence of the scheme. One of the elements required to allege for an action for fraud, scienter, has been established as a result of discovery.

667.    In the Plaintiffs' Brief, Lead Counsel also aims to enhance credibility and merit for the settlement by incorporating the following sentence:

> "The Settlement is a boon for the Class. As detailed above, the Settlement Consideration, which is estimated to provide immediate value exceeding $129 million, **is one of the largest class action financial recoveries in Delaware history**."[291]

668.    Lead Counsel however diverts attention from the most inculpating document procured during discovery, Jon Merriman's May 27th, 2022 emails, by incorporating the following sentence to downplay the impact the supervoting preferred shares had on OPGN, AVGR and AGRX , as well as what AMC Defendants knew. Notably, the Plaintiffs' Brief does not

---

[291]  D.I. 206 for Case 2023-0215-MTZ

reference or mention at all the subsequent stock price movements of OPGN, AVGR and AGRX.

> "On May 27, 2022, B. Riley Financial, one of the Company's advisors, sent AMC executives Sean Goodman and John Merriwether a number of prospectuses from issuers that had used supervoting preferred shares to force through Certificate amendments."[292]

669.   Lead Counsel, in addition to filing the Plaintiffs' Brief, submitted an application for attorneys' fees and expenses, along with an incentive award for Plaintiffs in consolidated action No. 2023-0215-MTZ. Six affidavits were provided by Lead Counsel, including Mark Lebovitch, Michael Barry, Thomas Curry, William Fields, Jeremy Friedman, and Richard A. Maniskas. These affidavits attest to the amount of hours their firm dedicated to the prosecution of the action.

670.   In the submission, Lead Plaintiffs provided **only** two affidavits – one from Franchi and another from Walter Szymanski, on behalf of ACER.  Notably absent was Munoz's affidavit. Each affidavit included an application for a $5000.00 USD incentive award, acknowledging the time and effort Allegheny and Franchi dedicated on behalf of the Class.[293]

671.   Plaintiffs' settlement brief stated that Franchi, ACER, and Munoz had **all** filed affidavits in support of the settlement. **This was not true.**

672.   The third argument in the Plaintiffs' Brief requests attorneys' fees of $20 million, inclusive of $121,641.74 in expenses.[294]

673.   On May 4th, 2023, Jordan Affholter once again penned a letter to Judge Zurn expressing concerns about the process AMC stockholders must undergo to submit their objections and support documents, particularly sensitive information such as brokerage account numbers. Jordan Affholter highlighted the potential risk to stockholders, as this information could expose their accounts to potential hacking. [295] Jordan Affholter proposed an alternative method for the party attorneys to utilize the official stockholder list, rather than a brokerage statement, to confirm ownership, which was required for submitting an objection and support document. However, Judge Zurn did not entertain Jordan Affholter's suggestion. Instead, Judge Zurn instructed the court administrators to file stockholders' financial information under seal.

---

[292] D.I. 206 for Case 2023-0215-MTZ
[293] D.I. 206 for Case 2023-0215-MTZ
[294] D.I. 206 for Case 2023-0215-MTZ
[295] D.I. 205 for Case 2023-0215-MTZ

674.    During the first week of May 2023, Alex Mathew, Jordan Affholter, and Etan Leibovitz began collaborating on drafting the AMC Community Objection Brief. Their goal was to empower every AMC stockholder who wished to voice their concerns by submitting an objection to the proposed settlement with respect to the 2023-0215-MTZ action. Lead Counsel refer to this brief as the "Form Objection". [296]

675.    On May 8th, 2023, at 9:52 am EST, Alex Matthew filed a motion for discovery in the consolidated C.A. 2023-0215-MTZ action.

676.    On May 8th, 2023, Corinne Amato submitted her Report and Recommendation regarding Tuttle's Motion to Intervene. In her recommendation, Corinne Amato suggests denying the motion to intervene, citing the reasoning that it was not the "proper" time for intervention and that Brian Tuttle's concerns could be addressed as part of the objection letter process.

677.    On May 8th, 2023, at 1:28 pm EST, Alex Mathew filed his first recusal motion,[297] urging the recusal of Corinne Amato in the Consolidated C.A. 2023-0215-MTZ action due to a conflict of interest. The conflict stems from Corinne Amato's close familial relationship with her brother, Barrett Amato, who works in the entertainment industry, specifically in Hollywood as an editor with notable credits, as evidenced by his IMDb page:

• **https://www.imdb.com/name/nm2381892/** ,
and professional website:
• **http://www.barrettjamato.com/**

Given AMC's significant presence in the entertainment sector, Barrett Amato's employment in the same industry raises concerns about potential bias and impacts on the fairness and impartiality of the proceedings.

678.    On May 8th, 2023 at 2:11 pm EST, Corinne Amato asked if the party attorneys opposed Alex Mathew's motion regarding the release of the discovery record to the putative class members.[298]

679.    On May 8th, 2023, at 3:45 pm EST, Alex Mathew filed his second recusal motion, seeking to recuse Corinne Amato in the Consolidated C.A. 2023-0215-MTZ action due to a conflict of

---

[296] A copy of this objection brief was filed on the docket by Lead Counsel as an exhibit.  Lead Counsel called it the "Form Objection". DI 439 Exhibit Form Objection. Link:
https://www.docketalarm.com/cases/Delaware_State_Court_of_Chancery/2023-
0215/IN_RE_AMC_ENTERTAINMENT_HOLDINGS_INC._STOCKHOLDER_LITIGATION/918993
51/91899352/
[297] DI 230 for Case 2023-0215-MTZ
[298] DI 234 for Case 2023-0215-MTZ

interest.[299] Alex Mathew argued that Lead Counsel Mark Lebovitch, a partner at Bernstein Litowitz Berger & Grossmann LLP, "representing the class", has previously collaborated with Corrine Amato on the Globe Specialty Metals Inc. stockholders litigation (Consol. C.A. No. 10865-VCG). This past professional relationship may create an appearance of impropriety or lack of impartiality, potentially undermining the integrity of the proceedings in the current case.

680.    On May 9th, 2023, Etan Leibovitz's May 1st, 2023 letter motion, with two attached exhibits, was published on the consolidated action No. 2023-0215-MTZ docket, and assigned docket indexes #259, #260 and #261. Attached to the letter motion as Exhibit A, Docket Index #260, was Etan Leibovitz's Computershare statement, reflecting share ownership of both AMC and APE. Etan Leibovitz's letter motion sought  the following relief:

     a.   "That the Delaware Chancery Court issue an order  sua sponte, directing AMC's Defense Attorney John Neuwirth to convert his April 25th, 2023 telephonic conference call statement to the Court, that there are 3.8 million beneficial stockholder, to an affirmation.  Since Adam Aron was **never** deposed by the Plaintiffs' attorneys, it is imperative that Adam Aron also submit an affidavit to the Court substantiating his above Tweet, that he conducted "6 share counts", aver the **exact** amount of stockholders that exist with respect to the record date – February 8th, 2023 - Corporate Action March 13th, 2023 vote for 3 proposals, and the amount of shares each stockholder owns with respect to AMC and APE. This is not a herculean request as pursuant to Delaware General Corporation Law §219, AMC should already have a **partial** list.  Now, AMC would have to procure the international stockholders.  Once a complete list is produced to the Court by AMC, to hold said list to account, each interested shareholder who wants to participate should be able to call the Special Master to inquire what said list has on record for them.  If said list doesn't match what the stockholder owns a red flag should go up.   It is crucial that this Court doesn't take this request lightly as the **accountability pendulum should swing both ways**.   Accurately determining the number of beneficial stockholders as well as ownership is essential to ensure transparency and accountability in the proceedings as well as that fraud is not being committed on the Court as well as on us stockholders, (the "Affidavit Request").

     b.   Secondly, concerning the public redacted version of the Verified Complaint in case number 2023-0216 MTZ, it contains 101 substantive

---

[299] DI 241 for Case 2023-0215-MTZ

averments, with approximately 27 out of 101 being either entirely or partially redacted. In other words, about 27 percent of the averments are redacted. In the interest of justice and full disclosure, Mr. Leibovitz respectfully requested that an unredacted version of the Verified Complaint be made available contemporaneously on AMC's Investor Relations Website for inspection for all interested AMC and APE stockholders (the "Rule 5.1 Challenge");

c. Thirdly, according to the docket it looks like discovery began on or about March 2nd, 2023 when this Court granted the proposed scheduling order (Docket Items 39,40) In the interest of justice and full disclosure, Mr. Leibovitz respectfully requested that all the documents that have been produced and exchanged via the tools of discovery, production of documents and deposition transcripts, be made available contemporaneously on AMC's Investor Relations Website for inspection for all interested AMC and APE stockholders (the "Discovery Request")."[300]

681.    On May 10th, 2023 at 10:23 am EST, Judge Zurn published her four page letter addressed to Alex Matthew stating in part,

"I write to address your two motions to recuse Special Master Amato. The first is denied, and I reserve judgment on the second pending Special Master Amato's submission of an affidavit concerning her alleged conflict."[301]

682.    Seven hours and thirty-four minutes later, Corinne Amato filed her three page affidavit pursuant to Judge Zurn's instructions addressing if she:

"(a) can "hear the case free of bias or prejudice" concerning the party seeking recusal, and
(b) "may resolve motions in this case free of bias in light of [my] service alongside Mr. Lebovitch in the Jn re Globe Specialty Metals matter."[302]

683.    On May 11th, 2023 at 1:46 pm EST, Judge Zurn published her two page letter addressed to Alex Matthew stating in part,

"Dear Mr. Mathew:

---

[300] DI 259 for Case 2023-0215-MTZ
[301] DI 265 for Case 2023-0215-MTZ
[302] DI 268 for Case 2023-0215-MTZ

I write to address your second motion to recuse Special Master Amato. On May 10, 2023, I explained that I could not rule on that motion until Special Master Amato submitted an affidavit "regarding her subjective belief as to whether she may resolve motions in this case free of bias in light of her service alongside Mr. Lebovitch in the In re Globe Specialty Metals matter." Special Master Amato has since submitted such an affidavit. I have reviewed her affidavit and am satisfied that she undertook the subjective analysis required by our law. Having previously found that your motion "does not point to an objective appearance of bias," I conclude that the concerns it raises are unfounded. The motion is denied. IT IS SO ORDERED."[303]

684. On May 11th, 2023, Corinne Amato sent a follow-up letter to the party attorneys, in the consolidated action No. 2023-0215-MTZ, concerning the putative class members' discovery motions. [304]

685. On May 12th, 2023, Brian Tuttle filed a motion for declaratory relief and a brief in support on the consolidated action No. 2023-0215-MTZ docket.[305] Brian Tuttle's motion explained that,

"Defendant's adversely altered the voting rights and powers of common by giving APE a special right. On August, 4, 2022, subsequent the filing of Certificate of Designations, Defendants entered into an Agreement with Computershare Inc. without shareholder approval. D.B. at 11. Under the accord, the underlying Preferred Stock, used to form APE preferred equity units, were deposited with Computershare Inc. and governed by a deposit agreement ("the Computershare Depositary Agreement"). The Computershare Depositary Agreement instructs Computershare to vote all of the preferred stock in its custody "proportionally" on non-routine matters and routine matters….Ultimately, the stockpiled Antara pledged votes were leveraged through The Computershare Depositary Agreement to ensure Defendant's proposals were a lock. Although, without either: the Computershare Agreement or Antara deal, Defendants could not harvest the required affirmative vote to authorize conversion." [306]

---

[303] DI 275 for Case 2023-0215-MTZ
[304] DI 276 for Case 2023-0215-MTZ
[305] DI 282, 283, 285, 286 for Case 2023-0215-MTZ
[306] DI 285 for Case 2023-0215-MTZ

686.  On May 15ᵗʰ, 2023, **within 20 minutes** of each other, both Lead Counsel and AMC's defense attorneys, in the consolidated action No. 2023-0215-MTZ, filed their opposition to the putative class members' discovery motions. [307]

687.  On May 15ᵗʰ, 2023, Citigroup's analyst Jason Bazinet issued a sell rating on AMC with a price target of $1.65.[308]

688.  Sometime in mid-May of 2023, Jordan Affholter, Alex Mathew, Etan Leibovitz, and with the help of a few others, completed the final draft of the AMC Community Objection Brief. The AMC Community Objection Brief spanned 87 pages, including exhibits, and was shared online freely with AMC stockholders. [309] It included a detailed history of the market manipulation of AMC stock, legal analysis, and mathematical analysis of why the proposed settlement would harm AMC stockholders.  It was later reported that over 200 stockholders adopted this template as part of their objection.

689.  The AMC Community Objection Brief presents six arguments why Judge Zurn should deny the proposed settlement:

- The proposed settlement is not fair and reasonable
- The class should not be certified as it fails to satisfy one of the four prerequisites mandated by subsection in Delaware Court of Chancery Rule 23(a)
- The requested lawyer fee and expense award is unjustified
- The Lead Plaintiffs do not deserve an incentive award as they fail to meet the second factor in *Raider v. Sunderland*
- The proposed settlement violates the class members' due process rights
- The vote on March 14ᵗʰ, 2023, was unlawfully manipulated.

690.  The AMC Community Objection Brief presented alternative options for a revised settlement proposal designed to benefit both AMC and its stockholders:

- Establishing an NFT debt repayment fund.
- Including retail representation on the AMC Board.
- Reforming the stockholder voting process to ensure transparency and verifiability, thereby safeguarding stockholder value.  This reform

---

[307] DI 295 - Plaintiffs' Response to Class Member's Discovery Requests and DI 294 - Defendants' Opposition to Requests to Access the Discovery Record, with a Certificate of Service
[308] https://www.tradingview.com/news/mtnewswires.com:20230515:A2907306:0-citigroup-adjusts-amc-entertainment-price-target-to-1-65-from-1-60-maintains-sell-rating/
[309] AMC Community Objection Brief  DI 439 Exhibit Form Objection. Link:
https://www.docketalarm.com/cases/Delaware_State_Court_of_Chancery/2023-
0215/IN_RE_AMC_ENTERTAINMENT_HOLDINGS_INC._STOCKHOLDER_LITIGATION/918993
51/91899352/

could involve leveraging blockchain technology to track AMC shares and prevent market manipulation effectively.

691.    The AMC Community Objection Brief presents calculations estimating that, as of May 2023, the proposed settlement would have clawed back very little, if any, value to shareholders:

Plaintiffs posit that the settlement is valued at approximately $129 million for AMC common stockholders. However, the Plaintiffs' argument in support of the proposed settlement and their request for a $20 million award lacks any reference to the $5,150,690,236.70 in total market value that has been eradicated from AMC stockholder value since the introduction of the APE share into the US Markets on August 22, 2022, less than a year prior. In the aftermath of a loss of approximately 53.4% in market capitalization, amounting to $5.15 billion, this settlement proposes to recover $129 million, **a mere 2.5% of the lost market cap value**, while compensating the Plaintiffs' Counsel with "an award of fees and expenses equal to $20 million, **reflecting approximately 15.5% of what they exclusively created for the Class.**" "As of May 3rd, 2023, the combined market capitalization of the company, for purposes of illustration, remained at $4,493,182,066.[ D.I. 206, pg. 31] By subtracting the current total market capitalization of AMC and APE as of May 3rd, 2023 ($4,493,182,066) from the total AMC market capitalization before APE ($9,643,872,302.70), the resulting figure, $5,150,690,236.70, represents the total market value lost by AMC shareholders in less than a year.

692.    The AMC Community Objection Brief also provided recent historical examples showing that reverse splits have damaged shareholder value:

In the Plaintiff's opening brief, the Plaintiffs acknowledge that if the settlement is approved that one cannot definitively predict the price at which AMC stock will trade following the Conversion."[ D.I. 206 page 9-10] While this statement holds partial truth, recent historical trends of small to mid-cap stocks following a reverse split can serve as a basis for estimating potential market cap gains or losses. One recent example would be Mullen Automotive (Ticker: MULN) Stock.  The company announced a 25 for 1 reverse split on May 3, 2023, which would take into effect the following day (on May 4th, 2023). Once the announcement was made, the stock closed down about 21% on the day.[ Mullen Automotive Stock Forecast. FXStreet.com. Posted May 4, 2023. Link: https://www.fxstreet.com/news/mullen-automotive-stock-forecast-after-1-for-25-reverse-split-muln-sinks-another-8-on-thursday-202305041324] And then on May 4th, 2023, after the reverse split was effectuated, MULN shares dropped about another 8%.[ MULN Historical

Data. nasdaq.com. Time Range Referenced is May 3-4, 2023. Link: https://www.nasdaq.com/market-activity/stocks/muln/historical] The MULN reverse split clearly shows how quickly share price and market cap can drop as a result of a reverse stock split. MULN is just one example, there are countless other companies (e.g., COSM, WISA, SNDL, etc) that also experienced massive drops in value post reverse stock split.

693.    The AMC Community Objection Brief also correctly predicted that any settlement value of "new" (actually re-assigned) shares would be instantly wiped out:

Due to the inherent volatility of the stock, historical patterns of market cap loss following reverse splits, and the absence of accountability in market structure (e.g., no blockchain verification to prevent brokers or market makers from creating synthetic shares), the anticipated $129 million settlement value may significantly diminish in a brief period following the conversion, adversely affecting long-term AMC shareholders. The majority of the $129 million settlement value would represent the presumed AMC stock value before it is sold, constituting unrealized gains for most shareholders rather than immediate cash value. Nevertheless, shareholders might experience some realized gains when they receive cash to replace fractional shares. For the vast majority of the settlement value, AMC is reallocating shares they intended to sell on the market back to shareholders, which is not equivalent to AMC directly paying $129 million to their shareholders. Given the history of reverse stock splits negatively impacting stockholders, there exists a real possibility that if the market cap of AMC common drops by $129 million (a projected 2.9% of the estimated $4.49 billion market cap), any benefit from this settlement could be instantly wiped out. Short sellers often view reverse splits as favorable opportunities. The estimated $129 million value is, in essence, highly theoretical and not guaranteed to materialize, or if it does materialize, it could be fleeting before gradually diminishing over time. In a scenario where AMC common stock is aggressively shorted immediately following the reverse split, effectively eroding shareholder value, nearly all parties involved in this lawsuit would suffer— AMC as a company, retail shareholders, Allegheny, and other investors—while only the attorneys would retain their gains.

694.    The AMC Community Objection Brief asserts that the Lead Plaintiffs are not representing the putative class members but instead are representing the interests of the lawyer class to secure a swift payout at the expense of the stockholders.

695.    On May 17th, 2023, Alex Mathew notified Judge Zurn that he had been informed by other putative class members over the previous week that their objection submissions to the proposed settlement were encountering bounce-back emails from Lead Counsel's email account - AMCSettlementObjections@blbglaw.com.  These bounce-backs indicated that their emails, containing their attached objections, could not be delivered to some recipients. AMC stockholders expressed concern that their objections were not reaching their intended recipients. Although Lead Counsel's IT personnel eventually resolved the issue, it raises questions as to why Lead Counsel's IT department did not detect the issue during testing, **if testing was indeed conducted.** This issue deserves emphasis, especially as Judge Zurn had cautioned AMC stockholders that only one submission was permissible.

696.    On May 18th, 2023, Peter J. Walsh Jr. ("Peter Walsh") filed a three-page letter[310] dated May 15th, 2023, with the court in the consolidated action No. 2023-0215-MTZ. Peter Walsh submitted this letter on behalf of his client Antara. The letter, addressed to Corinne Amato, underscores his client's concerns as follows:

- The potential sharing of subpoenaed documents with AMC stockholders/putative class members due to discovery motions.
- Antara and its employees have been subject to threatening phone calls and messages from purported AMC stockholders since the commencement of this action.
- Antara is apprehensive that the disclosure of its confidential information could exacerbate threats to the health and safety of its employees.

697.    Mr. Walsh's letter incorporates zero exhibits or evidence to support its claim.

698.    On May 18th, 2023, Judge Zurn granted Etan Leibovitz's first relief, Rule 5.1 Challenge, with respect to his May 1st, 2023 letter motion.  Judge Zurn ordered that the Franchi and Munoz Verified Complaint in the consolidated action No. 2023-0215-MTZ be filed publicly without any redactions.

699.    On May 19th, 2023, Theodore Kittila filed his entry of appearance, as counsel for AMC stockholder and Objector Rose Izzo, in the consolidated action No. 2023-0215-MTZ.


## Objectors' Discovery Motions Are Finally Granted


---

[310] DI 304 for Case 2023-0215-MTZ

700.   On May 19th, 2023, Corinne Amato submitted her Report and Recommendation regarding putative class members' access to the discovery record. In the report, Corinne Amato recommended granting discovery but proposed a confidentiality order, which would additionally entail a prohibition on trading AMC stock and APE units until the conclusion of the class action. [311] It's noteworthy that this report was submitted less than two weeks before the class members' objections and support documents were due, on May 31st, 2023. The report **also** highlights the party attorneys for their delayed response to the putative class members' motions for discovery.

701.   One important item mentioned in the footnote of Corinne Amato's May 19th, 2023 report was:

> "Plaintiffs contend that "access to the discovery record beyond that filed publicly with the parties' settlement briefs" should not be provided. Plaintiffs' Opposition ¶ 5. The Court previously indicated its preference for the parties to publicly file exhibits to their settlement briefs. See Tr. at 9 ("I would ask that the brief be posted on AMC's investor relations website and that it be fully public and that all exhibits that are attached also be posted in a fully public manner."). **Plaintiffs, however, filed the exhibits to their settlement brief as confidential filings, limiting class access to the documents on which plaintiffs claim to have relied when entering into the settlement.** " [312]

702.   Clearly absent from Corinne Amato's May 19th, 2023 report was a recommendation to Judge Zurn to adjust the timelines for the settlement hearing due to the time lost for the putative class members to review the discovery documents. This delay was a result of both party attorneys filing the exhibits to their settlement brief as confidential filings. Of note, the putative class members lost 16 days of time to review the exhibits and the discovery record. Stated differently, the actions of the party attorneys resulted in the putative class members losing 59% of the time allocated to them to submit their objection or support document.

703.   On May 19th, 2023, Judge Zurn adopted Corinne Amato's May 19th, 2023 report and granted the discovery motions from AMC stockholders and objectors, including Frank Maribito, Jordan Affholter, Alex Mathew, and Etan Leibovitz. This decision enabled AMC stockholders to access the existing discovery record.

704.   On Friday evening, May 19th, 2023, Judge Zurn requested any feedback from the party attorneys and objectors, who filed discovery motions, by the end of the day for a potential Saturday hearing regarding the discovery record. However, no one submitted any feedback in time. On May 20th, 2023, Judge Zurn issued a letter opinion adopting Corinne Amato's report

---

[311] DI 307 for Case 2023-0215-MTZ
[312] DI 307 for Case 2023-0215-MTZ

regarding discovery. Judge Zurn instructed the parties to publish the exhibits to the Plaintiffs'
and Defendants' Settlement Briefs and the unredacted Franchi and Munoz complaint on the
docket and publicly on AMC's website. [313]

705.    On May 20th, 2023, Lead Counsel and AMC's defense attorneys finally made the discovery
record available on their website. The discovery record comprises:

- Daniel Meyer's transmittal affidavit - 37 Exhibits, 928 pages
- Kevin Gallagher's transmittal affidavit, - 28 Exhibits,  731 pages
- Franchi and Munoz Verified Complaint without any redactions - 52
  pages

706.    Daniel Meyer's transmittal affidavit incorporates at least five exhibits that are incomplete.
For instance, Exhibit 14 is an email dated December 8th, 2022, with a timestamp of 1:19 pm,
authored by Derek Van Zandt. Derek Van Zandt's email includes a PDF attachment named
"2022.12 AMC APE Investment Analysis_v6.pdf," indicating it underwent 6 versions.
However, Daniel Meyer's transmittal affidavit fails to include this crucial PDF file in Exhibit
14, rendering it an incomplete record. Similar incompleteness is observed in the following
exhibits:

| Exhibit # | Document | Missing File |
|---|---|---|
| Exhibit 14 | Email | PDF 2022.12 AMC APE Investment Analysis_v6.pdf |
| Exhibit 15 | Email | Excel Sheet - AMC APE Model.xlsx |
| Exhibit 19 | Email | 3 PDF  attachments - OpgenInc_20211015_424B5 (Final Prospectus - Priced Offering (S-3)).pdf; AvingerInc_20220113_424B5 (Final Prospectus - Continuous Offering (S-3)).pdf; AgileTherapeuticsInc_20220314_424B5 (Preliminary Prospectus (S-3)).pdf |
| Exhibit 20 | Email | Excel Sheet Institutional Investor Ownership Report AMC_May 17 2022.xlsx |
| Exhibit 24 | Email | PDF  AMC- Rights Offering Prospectus Supplement_WEIL_98448255_31.pdf |

707.    On May 22nd, 2023, Anthony Rickey filed his entry of appearance with the court, as counsel
for Rose Izzo, in the consolidated action No. 2023-0215-MTZ. [314]

---

[313] DI 312
[314] DI 315

708.    On May 22nd, 2023, Jordan Affholter filed a motion with the court, in the consolidated action No. 2023-0215-MTZ, for an enlargement of time and objection to the discovery process regarding the potential due process issue arising from the previously sealed exhibits originating from the Plaintiffs' and Defendants' Settlement Briefs. Jordan Affholter writes in part,

> "As per the Court instructions, the cited exhibits [The cited exhibits in the Plaintiffs' and Defendants' Briefs posted on AMC's site. May 20, 2023. Link: https://investor.amctheatres.com/financial-performance/Shareholder-Meeting-Information/] were posted on AMC's website on Saturday May 20, 2023. Said documents should have been provided to stockholders (and class members) much earlier as it provides vital information for both objectors and supporters in drafting their objection or supporter documents before the quickly approaching May 31, 2023 deadline. **Given that the Plaintiffs cited exhibits exceed 900 pages and the Defendants cited exhibits exceed 700 pages, this delay puts unnecessary burden on objectors and supporters to review before May 31, 2023. On Exhibit 1, page 8 of the Plaintiffs cited exhibits (an email from Mr. Van Zandt),[ AMC_0000050] it clearly shows an alleged quid pro quo scheme between AMC, Citi, and Antara, where Antara was willing to put up a set amount of capital in order to allow AMC to rig the vote.** Furthermore in that email, it states that AMC would lift the restriction for Antara selling APE shares if the price went above 3 dollars, ensuring Antara would have a windfall of profit. How is this not market manipulation, insider trading, and rigging of corporate votes? **And furthermore, why didn't Lead Counsel and Lead Plaintiff share this vital information before May 20, 2023 to the putative class they claim to represent?** Several class members had already submitted their objection and support documents without properly been given notice." [315]

709.    Jordan Affholter further writes,

> "In the Plaintiffs' Brief, Lead Counsel states that "Counsel spent 3,330.75 hours litigating this action on an expedited basis, which included review of over 56,000 pages of documents produced by Defendants and over 2,500 pages of documents produced by third-parties."[D.I. 206 at 55] Access to discovery has been granted to applicable class members or movants in order to assist in determining whether they object or support the proposed settlement on May 31, 2023. Given the complexities of this case, that gives class members up to 8 business days (10 total days) to review the discovery record (up to 58,000 plus pages of

---

[315] DI 320

documents).  Lead Counsel in this matter are experienced attorneys, while the vast majority of the settlement class are not attorneys, and reflect a wide statistical spread of technical and legal understanding. **It is not mathematically possible for any class member to be able to review the majority of the discovery documents within 1-2 weeks in order to meet the objection and support letter deadline on May 31st, 2023**."

710.   Jordan Affholter's May 22nd, 2023 motion also calls out how restrictive the confidentiality agreement was,

> "**However, by signing this agreement, paragraph 8 essentially locks the objectors and supporters into not being able to buy or sell their legally owned AMC stock until a final judgement has been rendered either in the Trial Court or the Appellant (sic) Court. That time frame could potentially take months or years.** It is incontrovertible that AMC is a highly volatile stock. Between November 2020 and February 2021, AMC stock traded between 1.91 and 20.36. Between May and June 2021, AMC ran up from around 8.93 dollars to a high of 72.62 dollars.  In March 2022, the stock traded between 12.90 and 34.33.[ Yahoo Finance Ticker AMC (NYSE Exchange). Various Time Ranges Referenced between 2020-2023 https://finance.yahoo.com/quote/AMC Accessed on May 22, 2023. ] So if AMC's stock price runs up again (like it did historically) at any point between signing this agreement and the resolution of this matter, then objectors and supporters who execute this confidentiality agreement would not be able to buy or sell, and if they do, they have to report themselves to the SEC. In the case of AMC stock running up higher, that is not something the objectors and supporters' control.  On the reverse side, if an objector and supporter have an issue of financial hardship (loss of job, medical emergency, natural disaster, severe market turmoil, etc), then based on this agreement the objector and supporter would not be able to sell." [316]

711.   Jordan Affholter's May 22nd, 2023 motion concludes by requesting an enlargement of time to file an objection or support document from May 31st, 2023 to June 14th, 2023. [317]

712.   On May 23rd, 2023, Corinne Amato issued her report regarding Jordan Affholter's May 2nd, 2023 notice correspondence and denied his application. Corrine Amato found no basis to infer that any statement by Mr. Neuwirth on April 25th, 2023, was incorrect, much less that Mr. Neuwirth lacked an objective, good faith belief about the veracity of the statements.

---

[316] DI 320
[317] DI 320

Additionally, Corinne Amato disagreed with Jordan Affholter's contention that Mr. Neuwirth's statements regarding AMC's cash position conflicted with Aron's representations in a tweet six days later.

713.    On May 24th, 2023, Judge Zurn denied Jordan Affholter's May 22nd, 2023 motion for an enlargement of time and objection to the discovery process.  At no point did Judge Zurn consider or entertain a blind trust as a solution to the draconian confidentiality agreement.

714.    On May 24th, 2023, at 2:59 pm EST,  AMC's defense attorneys filed their  opposition to Jordan Affholter's request to extend the deadline to submit objections.  They argue that,

> "In any event, Mr. Affholter's extension request is meritless.  Time remains of the essence, and the notion that putative class members -- and Mr. Affholter in particular -- need more time to consider, prepare, and submit objections to the proposed settlement is wrong." [318]

715.    On May 24th, 2023, at 7:36 pm EST, Lead Counsel filed their opposition to Jordan Affholter's request to extend the deadline to submit objections.  They argue that,

> "Extending the objection deadline by two weeks would effectively render the June 29-30 settlement hearing impossible. Two additional weeks of objections would leave the parties, the Special Master, and the Court just 14 days to file a reply brief, make a report and recommendation, and consider the report and recommendation and any exceptions thereto, respectively. Denying the request will not prejudice putative objectors, who were given 30 days to object and received significant protections for their rights leading to the settlement hearing, including multiple forms of notice, the opportunity to access the nonpublic discovery record, and the opportunity to appear in person.  The two operational errors identified by Mr. Affholter—for which Plaintiffs' counsel takes responsibility—do not justify modifying the Scheduling Order in a manner that would almost certainly adjourn the June 29-30 hearing."[319]

716.    On May 25th, 2023, Corinne Amato filed the Report and Recommendation regarding Jordan Affholter's motion for enlargement of time and objection to the discovery process. Corinne Amato's report states,

---

[318] DI 333
[319] DI 335

"I recommend that the Court deny Affholter's request to enlarge the time for the submission of written objections and grant Affholter's request that the Court accept in-person appearance forms postmarked on or before May 31, 2023, even if not received until after May 31, 2023." [320]

717.    On May 26th, 2023, Jordan Affholter filed a motion for an adjournment of the settlement hearing due to the violation of the putative class members' due process rights. The motion highlights the defendants' lack of due process in notifying the settlement class. Jordan Affholter states that he and many other putative class members did not receive their postcards, which were supposed to notify them of the objection deadline by May 24th, 2023. The motion concludes in part,

"… because the Plaintiffs and Defendants failed to properly notify the settlement class members by the deadline, **and the Court stated that the timeline "will only work if postcards will generally be delivered by May 24, 2023"[ D.I. 175 Letter to Counsel from Vice Chancellor Zurn, dated April 28, 2023, regarding revisions to settlement documents. April 28, 2023. ] - I** as a pro se interested party in this matter as well as an objector - I submit this motion as a (sic) Appeal for Adjournment of the Settlement Hearing and for the Court to postpone the settlement hearing to a later date than June 29-30, 2023 so that the putative class members can be properly served due process and have proper time to fully review the newly documents and potential discovery before submitting their objection or support document. This new scheduling timeline should include an updated objection and support document deadline for submission." [321]

718.    On information and belief, Rose Izzo was the only AMC stockholder and Theodore Kittila and Anthony Rickey were the only attorneys, who executed the confidentially agreement in order to review the complete discovery record.

719.    On May 26th, 2023, Etan Leibovitz filed a motion[322] with the court in the consolidated action No. 2023-0215-MTZ, pursuant to the authority granted under the Court of Chancery Rule 23 and the 14th Amendment Due Process Clause of the United States Constitution. Etan Leibovitz's motion reads in part,

---

[320] DI 341

[321] D.I. 345 for case 2023-0215-MTZ. Link:
https://www.docketalarm.com/cases/Delaware_State_Court_of_Chancery/2023-
0215/IN_RE_AMC_ENTERTAINMENT_HOLDINGS_INC._STOCKHOLDER_LITIGATION/918394
72/
[322] DI 343

1. I am a shareholder of AMC Entertainment Holdings, Inc. and on May 9th, 2023, I established my standing before this Court when my omnibus motion was submitted and docketed with this Court. Attached to said motion as Exhibit A was my Computershare screenshot.

2. I am currently drafting my objection brief and one of my arguments is the process that this Court elected to adopt, to provide the putative class members with notice, was in violation of AMC stockholder's 14th Amendment right and in violation of Chancery Rule 23(b)(3).

3. On April 25th, 2023, a telephonic conference call was held. This Court opened up the discussion citing precedence and stating that the Court is hesitant to forego notice by mail.

4. Given the legal effect of the proposed settlement, putative class members should be provided with sufficient notice and the opportunity to be heard with respect to the terms - and consequences of this agreement. Both elements are fundamental guarantees of the Fourteenth Amendment's, which "at a minimum ... require]s] that deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate 1See DI 259-261 to the nature of the case."2 "This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."

5. Delaware Court of Chancery Rule 23 mandates that each stockholder be given notice with respect to the scheduled settlement hearing "[i]n any class action maintained under paragraph (b)(3), the Court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

6. Notice need only be sent to record holders. Delaware law contemplates the use of a record date for delivering notice.

7. In Kahn v. Sullivan, 594 A.2d 48 (Del. 1991), the Court of Chancery directed that for settlement purposes, the Sullivan action would be maintained as a stockholder derivative action and as a class action. The action was to be maintained by those plaintiffs, as representatives of the class who held Occidental common stock on April 6, 1989, and their successors in interest up to and including January 2, 1990, excluding the defendants and members of their immediate families. A settlement hearing was scheduled for April 4, 1990. The Notice of Pendency of Class and Derivative Action, Proposed Settlement,

Settlement Hearing and Right to Appear, was sent to all class members one month prior to the hearing.

8. On June 6, 1990, after the case had already been taken under advisement, the Court of Chancery was informed that the Notice of the Settlement Hearing was not sent to a number of shareholders because of an oversight. The Court of Chancery directed that notice be sent to those stockholders. Supplemental notice was sent on June 15, 1990 providing that any additional objections to the Settlement could be filed up to July 16, 1990. In response to that notice only two letters were received, neither of which asserted any new basis for an objection.

9. Subsequently, on behalf of the AMC Defendants, Attorney John Neuwirth ("Mr. Neuwirth") made the following representation to the Court on April 25th, 2023, stating in part that

> "by our estimation the number of beneficial stockholders is approximately 3.8 million …… the cost of mailing to that many stockholders is approximately $2.9 million dollars….. Which is significant."

10. Here, Mr. Neuwirth only estimates the number of beneficial stockholders, not record holders of AMC Common Stock

11. On April 28th, 2023, this Honorable Court published a letter providing the Parties the following notice:

> "This schedule depends on prompt initiation of postcard notice, and will only work if postcards will generally be delivered by May 24, 2023. Acceptance of this schedule constitutes a representation that postcards can be expected to be delivered by then. I have committed to delivering a written opinion on the settlement terms rather than a bench ruling at the hearing, so a June 28 deadline for exceptions should not meaningfully slow my ruling. Alternatively, we can move the hearing back."

12. On May 1st, 2023, the Scheduling Order with respect to Notice and Settlement Hearing ("Scheduling Order") was entered making May 8th, 2023 the Notice Date.

13. Pursuant to the Scheduling Order, no later than May 8th, 2023, the Notice Administrator was mandated to mail a post card notice to all record holders of AMC Common Stock and request that, within five (5) business days of such request, any record holders of AMC Common Stock who are nominees or custodians for beneficial holders provide either physical addresses or email addresses for all such beneficial owners to which the post card notice can be sent or request copies of the postcard notice from the Notice Administrator to mail to such beneficial owners.

14. Throughout the entire proceedings, this Honorable Court failed to probe the basis of Mr. Neuwirth's "estimation" and to procure the exact amount of record holders of AMC Common Stock.

15. It remains unclear upon what point of reference this estimation was even derived from. These unresolved issues cast a cloud of uncertainty over the proceedings, thereby warranting further examination to ensure justice is served in an equitable and fair manner.

16. Throughout the proceedings, this Honorable Court has conspicuously refrained from issuing a court order that would mandate the AMC Defendants to provide a comprehensive list of record holders of AMC common stockholders.

17. This Court's Scheduling Order of requiring "all record holders" is notably devoid of specificity, lacking essential parameters such as a record date. Such absence of clarity leaves open the question as to which precise record holders of AMC Common Stock list is being leveraged for the stockholder postcard notice process.

18. Is it the record holders of AMC Common Stock list from May 1st, 2023 that forms the basis for the distribution, or is it the record holders of AMC Common Stock list up to May 8th, 2023? Is there an evolving or dynamic record holders of AMC Common Stock list that is tabulated and updated daily that forms the basis for this process?

19. This Honorable Court has not delineated a lucid protocol by which the AMC Defendants could be held to account for ensuring that each record holder of AMC Common Stock is in receipt of the postcard notice.

20. Indeed, the Honorable Court seems to lack requisite knowledge concerning the identity of the record stockholders, as stipulated under Paragraph 14 of the Scheduling Order. Such a serious oversight indicates a significant gap in the

Court's understanding and administration of the process, thus compromising the efficacy of the stockholder notification procedure.

21. To substantiate my above referenced argument, I respectfully request that this Court grant my application, thereby mandating the AMC Defendants to generate and submit a comprehensive report that explicates the methodology employed in processing the postcards, clarify which specific record holders of AMC Common Stock list was utilized, and disclose the original source of this list, supported by sworn affidavits. Such an order would significantly contribute to ensuring due process and maintaining the integrity of these proceedings.

**22. Should this Court deny this motion, I reserve the right to file my objection subsequent to this Court's decision should it be rendered after May 31st, 2023 and in addition file my in person settlement affirmation with this Court. At no point am I waiving my right to file my objection and my in person court appearance affirmation.**

## Usbaldo Munoz is removed as a Lead Plaintiff

720.    On May 26th, 2023, Lead Counsel Thomas Curry filed a motion with the court in the consolidated action No. 2023-0215-MTZ, to withdraw its appearance on behalf of one of the three lead plaintiffs, Munoz. [323]  In support of his application, Thomas Curry gave Judge Zurn notice that Munoz has ceased responding to communications from plaintiffs' counsel or otherwise participating in this action. After duly advising Munoz, plaintiffs' counsel now seek to terminate their representation of him. Separately, the other two lead plaintiffs, ACER and Franchi move for entry of an order dismissing Munoz from this action to allow the matter to move forward.

721.    On May 26th, 2023, Corrinne Amato recommended "that the Court DENY the Requests to Intervene and any other requests to intervene made in advance of the settlement hearing without prejudice." [324]

---

[323]  D.I. 344 for case 2023-0215-MTZ.
[324]  D.I. 350 for case 2023-0215-MTZ. Link:
https://www.docketalarm.com/cases/Delaware_State_Court_of_Chancery/2023-
0215/IN_RE_AMC_ENTERTAINMENT_HOLDINGS_INC._STOCKHOLDER_LITIGATION/918408
84/

722.   On May 28th, 2023, at 9:23 pm, Theodore Kittila, filed his letter addressed to Judge Zurn on the Delaware Chancery Court docket in the consolidated action No. 2023-0215-MTZ. [325] Theodore Kittila's letter outlines four concerns:

- Plaintiffs did not serve Rose Izzo with their May 26th, 2023 motion to withdraw its appearance on behalf of Munoz, despite Theodore Kittila and Anthony Rickey's entry of appearance a week ago.

- Theodore Kittila and Anthony Rickey are currently drafting an objection to the proposed settlement and only discovered said motion during their review of the docket in preparation for filing. Rose Izzo intends to respond said motion and may seek (1) a brief extension of time to file her objection (which must now be modified to reflect this late-breaking development that Plaintiffs revealed over a holiday weekend) and/or (2) a deposition of Munoz.

- Theodore Kittila had specifically asked Plaintiffs' counsel for a copy of Munoz's Rule 23(e) affidavit in a May 20th, 2023 email, but received no response.

- **Theodore Kittila reasonably assumed that Munoz's affidavit existed: <u>it is referenced on page 51 of Plaintiffs' opening brief in support of the proposed settlement.</u>** Said motion now indicates that this is not true. Rose Izzo's response to said motion, which she intends to submit early Tuesday, May 30th, 2023, will describe the prejudice that said motion causes to her ability to object, as well as elements of the factual record (yet undisclosed to the Court) that make Munoz's dismissal inappropriate.

723.   On May 28th, 2023, Jordan Affholter submitted his reply with the court, which was classified as an exception to Corinne Amato's report, in the consolidated action No. 2023-0215-MTZ, stating in part,

> **"With the recommended Special Master's denial of Mr. Affholter's request for more time for a class member like himself (or possibly other class members) to review the newly posted documents totaling 1,714 pages before submitting their objection or support document before the May 31, 2023 deadline, the Court is stating on the record that burdening the putative class with 5.19 hours worth of review over 11 days straight is "sufficient time for class members to review." In this document, Mr. Affholter even provided the mathematical equation to prove that class members such as himself did not**

---

[325] DI 354

have enough time to review: **"**1. As mentioned, new documents posted included
the cited exhibits in the Plaintiffs' Brief (928 pages) and the cited exhibits in the
Defendant's Brief (734 pages) and also the unredacted original complaint (52
pages), which totals 1,714 new pages for review.   The unredacted original
complaint is in 14 pt font and has copyable text. The Defendants' exhibits contains
mostly small font (under 14 pt) and has mostly copyable text. Meanwhile, the
Plaintiffs' exhibits contains mostly small font and has very little copyable text.
Overall, the cited exhibits include a mix of emails, public releases and filings,
detailed financial charts, and technical presentations. Due to the level of technical
detail, small text, and lack of copyable text, the amount of time needed to read and
to take notes (applicable to the objection or support document due by May 31,
2023), an estimation of an aggressive review pace would be reviewing 1 page per
2 minutes (or 30 pages per hour). To estimate the time needed to review, the
equation would be the following: total pages (1,714) divided by days remaining to
the deadline from original posting (11 days), and then divide by the review pace
per hour (30 pages per hour). **Based on the equation, it would require Mr.
Affholter as a class member to dedicate 5.19 hours per day every day before
the deadline just to review the 1,714 pages of new documentation that was
released several weeks late."** Mr. Affholter called out the special master again,
"In the page 8 footnotes of the Special Master report, the Special master asserts that
"Affholter's use of the settlement brief exhibits in the Motion to Enlarge
demonstrates the ability to timely review and make use of those exhibits."[ D.I.
341] This is a complete misrepresentation by the Special Master without providing
any evidence.  Mr. Affholter's motion  specifically referenced page 8 of the 928
page cited exhibits to the Plaintiffs' Brief. As of this time, Mr. Affholter has
reviewed the unredacted original complaint (52 pages), but has had not had the
opportunity to fully review the cited exhibits in the Plaintiffs' Brief (928 pages) and
the cited exhibits in the Defendant's Brief (734 pages), and still has over 1,500
pages left to review." [326]

724.   On May 29th, 2023, Jordan Affholter filed a motion for a report filed under oath, a hearing,
and shareholder data audit due to the violation of the putative class members' due process
rights. In this motion, Jordan Affholter requested Judge Zurn to compel the AMC defendants
to furnish their shareholder list, any share count data, and information regarding the March
14th, 2023 shareholder vote. Additionally, the motion called for both plaintiffs and defendants
to produce an affidavit report detailing the sequence of events leading to the oversight of failing
to notify the settlement class within the stipulated time frame. Furthermore, it proposed that
Judge Zurn convene a hearing to address the issue of delayed notification to settlement class

---

[326] DI 352 and also main points submitted in DI 363

members, with the aim of rectifying this oversight and establishing a revised timeline. This motion also explicitly stated,

> "Should this Court deny this motion, I reserve the right to file my objection following this Court's decision should it be rendered after May 31st, 2023 and also file my in person court appearance affirmation with this Court. I am not waiving my right to file my objection and my in person court appearance affirmation."

725. On May 29th, 2023, Theodore Kittila filed his affidavit in support of response and a cross-motion to lead counsel's motion for withdrawal of their representation of Munoz and to dismiss Munoz as lead plaintiff. Theodore Kittila's cross motion sought the following relief:

- Extension of time to file Rose Izzo's Objection
- Permission to notice deposition on Munoz.[327]

726. On May 30th, 2023, Judge Zurn denied Brian Tuttle's exception to Corinne Amato's May 8th, 2023 report regarding his motion to intervene. Judge Zurn agreed with Corinne Amato's initial recommendation to deny Brian Tuttle's motion to intervene and stated that concerns should be addressed in the objection letter.

727. On May 30th, 2023, at 4:00 pm EST, Theodore Kittilia filed his response to combined motion by Lead Counsel to withdraw its appearance on behalf of Munoz and motion by Lead Plaintiffs ACER and Franchi to dismiss Munoz and (ii) cross-motion for extension of time and permission to notice deposition on Munoz. [328] Theodore Kittlia makes the following two arguments,

- By concealing the fact that Mr. Munoz never signed a Rule 23(e) affidavit, Plaintiffs have prejudiced Ms. Izzo and other objectors, who must now revise their objections with less than two business days before the current deadline. Ms. Izzo therefore moves for a three-day extension to the current objection deadline to June 3, 2023.
- Moreover, the Motion is notable for what it, and the accompanying affidavit of Mr. Kupka, do not say: whether, based upon Plaintiffs' counsels' conversations, Mr. Munoz continues to support the proposed Settlement. This would not be the first case where a purported class plaintiff recanted their support on the ever of a settlement hearing. The

---

[327] DI 357
[328] DI 362

Class should know whether Mr. Munoz—who appears to be the Plaintiff
with the largest ownership stake by orders of magnitude has changed his
mind.  Thus, Ms. Izzo further moves the Court for the opportunity to
depose Mr. Munoz.

728.   In support of his response, Theodore Kittila highlights key points,

- The Court schedule for the settlement hearing gave potential objectors
  **only** 27 days to respond to the opening briefs.
- On May 4th, 2023, Lead Plaintiffs filed their Opening Brief, supposedly
  supported by "Affidavits of Munoz, Franchi and ACER." However, Lead
  Counsel **only** filed affidavit on behalf of ACER and Franchi.
- These Affidavits were not mere formalities: they revealed new
  information. For instance, Franchi only purported to have continuously
  owned AMC stock since November 8th, 2022 – over two months after
  AMC issued the APEs to holders of AMC Common stock.
- On the same day Lead Counsel filed their Opening Brief, the AMC
  Defendants attorneys filed their brief in support of the Settlement,
  asserting that "unless revenue and attendance levels rise, the failure to
  obtain additional liquidity through equity capital would likely result in
  bankruptcy…." The next day, AMC filed it first quarter results, crowing
  that both revenue and attendance increased by 21.5% and 21.9%,
  respectively, over the same period in 2022.
- Ms. Izzo's counsel began to incorporate this new and more optimistic
  information into a potential objection. Meanwhile, they assumed that
  Plaintiff's failure to file the required affidavit was an oversight, given that
  their opening brief cited to, and relied upon, the existence of Mr. Munoz's
  affidavit.
- On May 20th, 2023, Ms. Izzo's counsel emailed Plaintiff's counsel
  concerning the process for gaining access to discovery information
  permitted by the Court. In that email, Ms. Izzo's counsel asked Plaintiff's
  counsel to "let us know where the [Munoz Affidavit] could be found?"
- Plaintiff's counsel never responded. Instead, on May 26th, 2023, they filed
  their present Motion, without serving Ms. Izzo's counsel, revealing for
  the first time that Mr. Munoz "has not submitted an affidavit in support
  of the settlement." As reflected in the Kupka Affidavit, "Mr. Munoz
  stopped responding to communication as of May 20, 2023" – the day that
  Ms. Izzo's counsel emailed Plaintiffs' counsel seeking the whereabouts
  of the Munoz Affidavit. From that point on, all that is known is that a

> flurry of emails, text messages, and phone calls were sent/made to Mr. Munoz, with no response coming. Without a word to Mz. Izzo's counsel, Plaintiffs' counsel now seek to withdraw from their representation of Mr. Munoz, and ACER and Franchi seek to dismiss him as Plaintiff.

729.   On May 30th, 2023 at 4:48 pm EST, Corinne Amato submitted her report and recommended denying Jordan Affholter's May 26th and 29th, 2023 motions and Etan Leibovitz's May 26th, 2023 Notice of Motion Oral Argument Requested. [329]

730.   On May 30th, 2023 at 4:56 pm EST, Lead Counsel filed their reply to Theodore Kittila's 4:00 pm response. [330]

731.   On May 30th, 2023 at 9:07 pm EST, Theodore Kittila filed his reply to Lead Counsel's 4:56 pm reply. [331]   Theodore Kittila hammers Lead Counsel stating,

> Plaintiff's response to Ms. Izzo's cross-motion attempts to tar Ms. Izzo with the brush of a "conspiratorial online mob." A few points must be made in response to this guilt-by-association.
>
> **First**, as Plaintiffs' counsel admits, facts related to the representative plaintiffs are relevant to class certification.  Objectors are entitled to challenge class certification and the adequacy of the purported representatives of the Class.  They are not limited to simply focusing on the weaknesses of the Settlement.
>
> **Second,** despite the volume of ink Plaintiffs spill attacking anonymous posters on Twitter (none of whom are Ms. Izzo), Plaintiffs' counsels' "informed conjecture" is not admissible testimony:  neither Ms. Izzo, the Court, nor anyone else need accept that speculation as evidence.  When a party changes position, discovery is appropriate to address speculation to determine what the facts actually are.  Seeking such discovery is not "theatrics," a "gimmick," or "punishment" to the deponent.
>
> **Third**, for all that Plaintiffs' counsel purport to be "insult[ed]", Ms. Izzo's counsel have had the courtesy to respond to their emails.  Plaintiffs' counsel have not.  Had Ms. Izzo's counsel's question been promptly addressed by Plaintiffs' counsel concerning the Munoz Affidavit, perhaps this dispute

---

[329] DI 365
[330] DI 366
[331] DI 367

could have been avoided.  As it is, Ms. Izzo's counsel have wasted valuable time addressing issues Plaintiffs now contend are moot.

**Finally,** what Plaintiffs' counsel castigate as a "conspiratorial online mob" are Class Members.  This litigation will likely determine the allocation of over a billion dollars of AMC's capital.  Plaintiffs' counsel have chosen to denigrate those who question their preferred process.  Unsurprisingly, passions are running high on both sides.  It would not be difficult to amass a volume of rude online comments offered by proponents of the Settlement.  It would, however, be irrelevant, and inappropriate for Ms. Izzo or her counsel to suggest those comments reflect on Plaintiffs.  Plaintiffs' suggestion that Delaware counsel may be intentionally "fanning the flames of toxic misinformation on social media" is baseless.

732.   On May 31st, 2023, Alex Mathew submitted an over 250-page Memorandum with the court in  the consolidated action No. 2023-0215-MTZ, documenting the manipulation surrounding AMC stock.

733.   Also on May 31st, 2023, Judge Zurn issued her written decision regarding the combined motion to withdraw and dismiss Munoz as a lead plaintiff and Rose Izzo's cross-motion for an extension of time to file their objection and to depose Munoz.  Judge Zurn writes that,

"Izzo may want to know whether and why Munoz may have changed his mind, and Izzo may be frustrated by plaintiffs' counsel's communication about Munoz's affidavit, but at the end of the day, none of those topics are relevant to the good faith  negotiation  of  the settlement terms or the competency of the settlement. Even if Munoz now believes the settlement to be a bad deal, he would be free to object, and lead counsel could still present the settlement on behalf of the other lead plaintiffs. Izzo is not entitled to explore Munoz's absence after he agreed to the settlement. Izzo's request that all objectors be given an extra three days to file objections is denied."[332]

734.   Judge Zurn further writes that,

"The Combined Motion will be held in abeyance pending notice to Munoz and an opportunity for him to be heard.  The plaintiffs' counsel should file an updated certificate of service reflecting service on Munoz." [333]

---

[332] DI 369
[333] DI 369

735. On May 31st, 2023, several letters from AMC stockholders were filed with the court in the consolidated action No. 2023-0215-MTZ.[334] These four stockholders submitted proof of stock ownership with their letters and informed Judge Zurn that they did not receive their postcard notice on time, citing concerns about the lack of due process.

736. On May 31st, 2023, Theodore Kittila submitted Rose Izzo's objection to the proposed settlement. Rose Izzo's wide-ranging submission included arguments that the Settlement's release of claims was impermissibly broad because it "encompasse[d] claims based on tangential facts" and claims "that could arise based on a future event," and that "due process concerns" required that the Class be afforded a right to opt-out of the Settlement.[335]

737. The stockholder response might have been even more dramatic if the parties' notice procedures had been robust. Notice was **not mailed to approximately 1 million beneficial owners**, and was significantly delayed to another 1.5 million. The postcard contained a "non-functioning URL that did not direct to the correct website."

738. On May 31st, 2023, Daniel Meyer complied with Judge Zurn's May 31st, 2023 written decision and served Munoz notice, along with copies of all briefing and court decisions related to the combined motion by counsel to withdraw its appearance on his behalf.

739. On May 31st, 2023, Jordan Affholter submitted a letter expressing his intent to file exceptions to Corinne Amato's report concerning his previous motions.[336] On June 1st, 2023, Jordan Affholter submitted his exceptions to Corinne Amato's report.[337] In the conclusion of this document, Jordan Affholter asserts that,

> "Special Master Amato provides very little evidence or judicial precedent in the report to support the recommended denial of Affholter's motions. Special Master Amato provides no contrary evidence to challenge Affholter's legal argument regarding the need for due process (14th amendment), Court of Chancery Rule 23, and the Court's requirements for notice to deliver to class members such as Affholter by May 24, 2023. Instead, Special Master Amato appears to utilize an Orwellian method of dismissal by implying class members should "reject the evidence of your eyes and ears." **This Court cannot deny this class their constitutionally protected due process rights for the sake of expediency.** The Delaware Court of Chancery Officials took an oath to uphold the US Constitution.

---

[334] DI 386, 387, 388, 389
[335] A public version of Izzo's objection was submitted to the docket on May 31st, 2023. DI 472
[336] DI 394
[337] DI 404

The Court has to decide whether to protect the putative class members' Constitutional rights for due process or blitz through these proceedings in order to provide a synthetic corporate stamp of approval on the proposed settlement. The Court has to decide whether it will keep its word on timeline requirements for notifying the settlement class or whether it will go back on its word. If so, then why are class members beholden to the original timeline but the Plaintiffs and Defendants are not? Further, does the Court want to re-enact Kahn v Sullivan? If the issues are not addressed now, the perceived legitimacy of the Court and its decision in the eyes of 3.8 million class members (and their families) are at risk and could result in a public perception that potentially millions of class members (including American and international citizens) due process rights were violated by the Court. To ensure that Affholter, as a putative class member (and possibly other class members), is granted due process rights to be fully informed before submitting his objection and support documentation, and for all of the reasons provided in the original motions and in this document, the Court should grant Affholter's Motion for Adjournment of the Settlement Hearing and Motion for an Affidavit Report, Hearing, and Shareholder Data Audit (due to the Violation of the Putative Class Members' Due Process Rights)."[338]

740.    On June 1st, 2023, Etan Leibovitz filed his notice to submit exceptions to Corinne Amato's two reports regarding his May 1st, 2023 letter motion, "Affidavit Request" and his May 26th, 2023 motion challenging the process Judge Zurn elected to adopt with respect to effectuating notice to AMC stockholders via postcards. [339],[340]

741.    On June 2nd, 2023, Lead Counsel and AMC's defense attorneys both submitted their opposition letters, coincidentally within 20 minutes of each other, in response to Jordan Affholter's exceptions to Corinne Amato's report. [341] The AMC defendants were responsible for providing a complete stockholder list to Strategic Claims Services, while the Lead Counsel had the obligation to ensure that postcard notices were provided to the entire class. However, both parties failed in their responsibilities. Yet, they filed their opposition to Jordan Affholter's motion, including his exceptions to Corinne Amato's report, which aimed to extend the time for stockholders to be notified of the settlement hearing and to review the evidence that was concealed inappropriately and finally released to AMC stockholders on May 20th, 2023.

---

[338] DI 404

[339] DI 397

[340] Previous motion D.I. 343 stated "Should this Court deny this motion, I reserve the right to file my objection subsequent to this Court's decision should it be rendered after May 31st, 2023 and in addition file my in person settlement affirmation with this Court. At no point am I waiving my right to file my objection and my in person court appearance affirmation."

[341] DI 411 and DI 412

742.    On June 2nd, 2023, Jordan Affholter file a motion, with the court in the consolidated action No. 2023-0215-MTZ, for equal protection under the law regarding access to confidential information and discovery. Jordan Affholter states,

   "On Exhibit 1, page 8 of the Plaintiffs cited exhibits (an email from Mr. Van Zandt),[ AMC_0000050 , referenced in exhibits of the Plaintiffs Briefs] it clearly shows an alleged quid pro quo scheme between AMC, Citi, and Antara, where Antara was willing to put up a set amount of capital in order to allow AMC to rig the vote. Furthermore in that exhibit, it states that AMC would lift the restriction for Antara selling APE shares if the price went above 3 dollars, ensuring Antara would have a windfall of profit. In this alleged scheme, the AMC Board of Directors worked with Antara to trade based on confidential insider information and conditions that the putative class members did not have access to. Interestingly, Antara still regularly trades AMC related securities….In conclusion, I - as an objector and verified class member in this matter - submit this motion to move that the Court emphatically endorses its stance on prohibiting trading of AMC stock (and related assets) based on confidential insider information acquired during discovery so that it applies equally to all AMC common stock and related AMC asset holders. **As such, all parties privy to confidential discovery, confidential insider information from AMC's Board of Directors, or those directly represented by such parties (inclusive of the AMC Defendants, AMC's Board of Directors, Allegheny, the Lead Plaintiffs, and Antara Capital), shall be barred from trading (buying, selling, or vesting through compensation plans or other means) AMC common stock or related assets such as APE stock, AMC Performance Share Units (PSUs), APE PSUs, AMC Restricted Stock Units (RSUs), APE RSUs, or AMC derivatives (calls or puts) until the current Court case or any subsequent appeal is unequivocally resolved.** Class members who do not have direct access to confidential discovery and confidential insider information would not be barred from trading during this time frame unless they signed the Revised Stipulation and [Proposed] Order for the Production and Exchange of Confidential and Highly Confidential Information ("confidentiality form")."[342]

743.    On June 3rd, 2023, Alex Mathew submitted a letter addressed to Judge Zurn regarding Citadel and Citigroup's AMC Brazilian Depositary Receipts. [343]

---

[342] D.I. 405
[343] D.I. 413

744.    On June 3rd, 2023, Alex Mathew filed a motion with the court in the consolidated action No. 2023-0215-MTZ for discovery of ACER's trading history and investigation. Alex Mathew states,

> "I have noted significant discrepancies in the data provided by ACERS regarding their AMC investments across different quarterly reports. Furthermore, the sudden and drastic increase in hedge fund allocations by ACERS in 2022 following a consistent period of decline is of concern. Which also calls into question continued ownership of both APE and AMC shares. We respectfully request the Court to direct ACERS to disclose all relevant documents that may aid in resolving these inconsistencies. We believe this will not only uncover the truth but also promote the fair and equitable resolution of this matter.... Finally, we request the Court to investigate the connections between ACERS, Crestline Capital, and a number of short sellers of AMC Entertainment Holding. We believe that this is an essential aspect of the case that should be addressed by the Court." [344]

745.    On June 6th, 2023, Corinne Amato submitted her report regarding Jordan Affholter's motion for equal protection under the law regarding access to confidential information and discovery.[345]  Corinne Amato recommended denying the motion despite the concerns that stockholders were held to higher accountability than insiders.

746.    On June 7th, 2023, the AMC Defendants filed the defendants' reply brief in further support of the proposed settlement.[346]  The AMC Defendants reiterate that,

> "As established in Defendants' Opening Brief, the Settlement is fair, reasonable, and adequate, and should be approved. Through the Settlement, class members stand to receive additional shares of AMC Common Stock that Plaintiffs value, based on recent market prices, at over $100,000,000. This consideration is especially significant given that Plaintiffs' claims were likely to fail, in which case AMC's stockholders would have received nothing. In exchange, AMC will be able to effectuate the Charter Proposals that were overwhelmingly approved in a March 14, 2023 stockholder vote. AMC continues to need to raise significant equity capital for its business to survive, and effectuating the Charter Proposals will provide AMC with a non-discounted security that it can use to raise equity capital. If the Settlement is not approved, at best, AMC would be forced  to  continue selling the significantly discounted -- and, thus, significantly dilutive -- APEs to raise equity capital. At worst, AMC could be left without any security  to  raise

---

[344] D.I. 416
[345] D.I. 434
[346] DI 441

equity capital, which would put it at significant risk of failing to meet its financial obligations beyond 2023, which would likely result in a bankruptcy or financial restructuring, and the total loss of the investments of holders of both Common Stock and APEs… A very vocal group of purported holders of Common Stock (collectively, the "Objectors") have inundated the Court, the Special Master, and the parties with purported objections to the Settlement (collectively, the "Objections").   Yet, the Objectors, in the aggregate, represent a very small portion of the putative class and, thus, stand in stark contrast to, and are far outnumbered by, the members of the putative class holding the over one hundred and twenty-eight million shares of Common Stock that were voted in favor of the Charter Proposal…Fourth, Objections based on beneficial holders of Common Stock allegedly failing to receive a post card notice are meritless." [347]

747.   The defense counsel's reply brief for AMC lacked substantive analysis, projections, or supporting charts to justify the necessity of effectuating the chartered proposals to avert bankruptcy. Instead, they relied heavily on unsubstantiated assertions. Furthermore, the March 14th, 2023 vote lacked proper validation by AMC stockholders, casting doubt on the claim that the chartered proposals were "overwhelmingly approved."  Notably, AMC's own attorney uses the word "purported" to describe a vocal group of "purported" holders of Common stock who objected to the proposed settlement. Indeed, the use of "purported" by AMC's attorney to describe a vocal group of Common stock holders highlights that AMC does not have a clear understanding of the true composition of its shareholder base.

### Strategic Claims Services

748.   On June 7th, 2023, Paul Mulholland, President of Strategic Claims Services, a nationally recognized class action administration firm, executed his affidavit titled "Affidavit of Paul Mulholland Concerning Mailing of Post Card Notice."  Adriane Kappauf, the defense attorney for AMC, subsequently filed the affidavit on the Chancery Court docket in the consolidated action No. 2023-0215-MTZ.

749.   Paul Mulholland's affidavit, spanning five pages, notably lacks any testimony regarding the following four aspects:

---

[347] DI 441

- Who hired Strategic Claims Services?[348]
- Did Strategic Claims Services effectuate postcard notice on **EVERY** AMC Stockholder and if so what is the total number of AMC Stockholders?
- Why did Paul Mulholland fail to address and confirm if the postcard notices were delivered by the court-ordered deadline of **May 24th, 2023**?
- Why did Paul Mulholland fail to mention how many individual AMC stockholders are in receipt of a postcard?[349]

750.    Paul Mulholland's affidavit, specifically averment number five, addresses Strategic Claims Services' proprietary master list.  Averment number five reads in part:

SCS (Strategic Claims Services) maintains a proprietary master list consisting of 851 banks and brokerage companies ("Nominee Account Holders"), as well as 1,505 mutual funds, insurance companies, pension funds, and money managers ("Institutional Groups"), who are nominees of beneficial purchasers. On May 3, 2023, SCS caused a letter to be mailed or emailed to the 2,356 nominees contained in the SCS master mailing list.

751.    Upon reviewing averment number five in Paul Mulholland's affidavit, one major question remains unanswered: Is Strategic Claims Services' proprietary master list all-inclusive, meaning does the proprietary master list incorporate every possible US and international institution, bank, and brokerage thus guaranteeing that **every** AMC stockholder would be effectuated notice with a postcard? The answer is simple: No.

752.    The postcard notice process that Judge Zurn chose to adopt to effectuate notice on AMC stockholders was on its face defective.  Not a single person can reasonably argue otherwise.

753.    Paul Mulholland's affidavit reveals that notices for over 1.5 million "Names/Addresses" who used Robinhood were sent on May 26th, 2023, just a few days before the objection and support document filing deadline of May 31st, 2023.

---

[348] The Affidavit of Josephine Bravata Concerning Mailing of Notice, in the CA No. 2019-0303-JTL Chancery Court Transaction ID 67949687, Averment #2 explicitly states that SCS was retained by Nominal Defendant AMC Entertainment Holdings, Inc.

[349] The conversion of the amount of postcard notices sent out (2.8 million postcards) to what it equates to as individual AMC stockholders.

| ROBINHOOD | SENT 1,560,828 NAMES/ADDRESSES | 5/22/2023 | 5/26/2023 |
|---|---|---|---|
| ROYAL BANK OF CANADA | ONLY SEND IF THERE IS CFD | 5/10/2023 | NOT APPLICABLE |
| SHAPIRO CAPITAL MANAGEMENT | NO HOLDERS | 5/11/2023 | NOT APPLICABLE |
| SOUTHEASTERN ASSET MANAGEMENT | NO HOLDERS | 5/30/2023 | NOT APPLICABLE |

754.   On June 8th, 2023, Corinne Amato recommended that Judge Zurn deny Alex Mathew's motion for discovery of ACER's trading history and investigation and motion for issuance of stock certificate.[350]

755.   On June 8th, 2023, eight days after the objection deadline, Judge Zurn issued her written decision and denied Jordan Affholter's First and Second Exceptions. In her decision, Judge Zurn writes,

> "The Special Master denied Mr. Affholter's motion to intervene, and he did not take exception: he is a nonparty without standing to move this Court for relief....I repeat to Mr. Affholter what every other AMC stockholder who has contacted the Court has been told: he is free to submit his untimely objection, but there is no guarantee it will be considered."[351]

756.   In her June 8th, 2023 decision, Judge Zurn disregarded valid due process concerns raised by Jordan Affholter regarding Lead Counsel and AMC's defense attorneys concealing over one thousand pages of discovery documents until only eleven days before the objection submission deadline. Jordan Affholter warned that stockholders, including himself, did not have adequate time to review the documents. Judge Zurn incorrectly assumed that because Affholter assisted in drafting the AMC Community Objection Brief, he had sufficient time to thoroughly review the 1,500 pages of exhibits. Additionally, Judge Zurn overlooked the fact that the AMC Community Objection Brief template was shared with AMC stockholders on May 16th, 2023, and the 1,500 plus pages of exhibits were released a few days later on May 20th, 2023, after many shareholders had already submitted their objections. Concerning the postcard notice, Judge Zurn states,

> "The Court agrees with the May 30 Report's conclusion that because Mr. Affholter clearly received timely electronic notice of the settlement, as evidenced by his numerous filings with this Court, his "individual interest in having additional notice through a post card falls short of providing good cause, or any reason, to adjourn the settlement hearing.".

---

[350] DI 451
[351] DI 454

757.    Judge Zurn and Corinne Amato demonstrate a logical fallacy. Individuals who write to the court have notice of the settlement hearing, but those who are unaware of the case or hearing cannot correspond with the court.  If the Lead plaintiffs don't look out for the class, and active stockholders like Mr. Affholter don't notify the Court that the class was not notified, then there would be little chance for non-notified shareholders to be notified on time.

758.    After receiving Judge Zurn's June 8th, 2023 written decision, Jordan Affholter and Etan Leibovitz both submitted their own objections to the proposed settlement to Lead Counsel's email address within 24 hours. Despite being submitted after the May 31st , 2023 deadline, their objections were not accepted as timely. This was the case even though they both had pending motions and had notified the court that they were not waiving their right to file their objection should the court render a decision to their motions after the deadline.

759.    On June 8th, 2023, despite concerns about due process and incomplete notification of the class, Lead Counsel filed the Plaintiffs' Reply in Further Support of Settlement, Award of Attorneys' Fees and Expenses, and Incentive Awards. [352] In this document, Lead Counsel claims, "The Settlement here would provide the Class with approximately 6.9 million shares of AMC Common Stock, valued by Lead Plaintiffs' expert at $129,067,486.45 as of May 3, and at $114,091,860.88 as of June 6. It is one of the largest recoveries in Delaware class action history. A $20 million fee represents just 15.5% and 17.5%, respectively, well within the range of precedent." [353]

760.    Lead Counsel claims that "Plaintiffs achieved substantial financial benefits by negotiating approximately 6.9 million settlement shares." [354]  However, they fail to acknowledge that these "new" shares were not genuinely "new". Following the reverse split and conversion, AMC shareholders would lose 90% of their AMC shares, with only a small percentage returned. These new shares did not represent new value, akin to a new business venture; rather, they amounted to further dilution.  Additionally, Lead Counsel asserts that **"None of the Scattershot Objections to the Proposed Award Have Merit".**  This assertion would later be proven entirely false, highlighting both the lack of respect and economic awareness demonstrated by Lead Counsel towards AMC stockholders.  Concerning the fee paid out to Franchi and ACER, Lead Counsel states,

> "Plaintiffs' efforts in the case (and the negativity endured from some corners of the online community) justify modest service awards of $5,000, which will be paid exclusively from Class Counsel's fee and will not diminish  the consideration paid to the Class." [355]

---

[352] DI 450
[353] DI 450
[354] DI 450
[355] DI 450

However, the $5,000 service awards to ACER and Franchi raises questions about how much ACER and Franchi actually lost, if any, on their AMC investment.

761.   In the Plaintiffs' Reply in Further Support of Settlement, Award of Attorneys' Fees and Expenses, and Incentive Awards, Lead Plaintiff stated,

"In total, approximately 3,500 timely submissions were received. Approximately 2,850 individuals, representing about 0.00075% of AMC's estimated 3.8 million stockholders, submitted purported objections. Out of approximately 600 timely "nonobjections," about 375 were letters of support for the Settlement and 235 advised only that the sender had not received postcard notice. Per the Notice, stockholders were required to provide their full name and information sufficient to prove ownership of Common Stock from August 3, 2022, through and including the date of submission. Of the approximately 2,850 purported objectors, almost half—about 1,235—did not include any information regarding their holdings. Of objectors including some evidence of beneficial ownership (e.g., a brokerage account statement, a screen shot, or an authorized statement from a broker), the vast majority did not comply with applicable requirements. Nevertheless, Plaintiffs treated any apparent good-faith attempt include proof of ownership as sufficient to constitute an "objection," and in any event believe that this Reply addresses the substantive issues raised in all submissions, regardless of compliance."

762.   On June 8th, 2023, Lead Counsel Thomas Curry filed a letter with the court in the consolidated action No. 2023-0215-MTZ.  Lead Counsel Thomas Curry give Judge Zurn notice that,

Yesterday evening, I filed: (i) Plaintiffs' Reply in Further Support of Settlement, Award of Attorneys' Fees and Expenses, and Incentive Awards; and (ii) a Transmittal Affidavit attaching Exhibits 1-26 thereto. As of yet, those filings have not been accepted onto the public docket by the Register in Chancery. Shortly after the filing, counsel for Objector Rose Izzo alerted me that my publicly-filed Transmittal Affidavit attached the nonpublic version of Ms. Izzo's objection, which included Ms. Izzo's phone number and address, as well as certain other information Ms. Izzo's counsel had requested to be redacted.  I committed to correcting the error.  In reviewing the exhibits to the Transmittal Affidavit, we determined that another exhibit attaching correspondence received from another stockholder also included a phone number and address.  Accordingly, I immediately took steps to prevent the uncorrected version of my Transmittal Affidavit from reaching the

public docket—including by leaving a voicemail and email for the Register in Chancery, asking that the filing be rejected from the docket so that I may file a corrected version in its stead.  Shortly after contacting the Register in Chancery, I also sent the email reproduced below to the six individuals who have registered for pro se File&Serve accounts in this action and were served with Plaintiffs' Reply, in the hope of preventing widespread dissemination of the mistakenly filed exhibits:

> Subject: AMC Delaware Litigation
>
> Body:
>
> All,
>
> As registered SRI filers in the AMC stockholder litigation, each of you were served earlier this evening with a copy of Plaintiffs' reply brief in support of the proposed settlement.  Though you were served with the brief and supporting documents, those documents are not yet on the public docket.
>
> It has come to my attention that the filed version of the exhibits to my Transmittal Affidavit included information that was not intended to be filed publicly, including personal identifying information.  We intend to work with the Court to ensure that such exhibit(s) are not docketed publicly before being appropriately replaced.  In the meantime, I ask that you not disseminate any of the exhibits to my Transmittal Affidavit on social media or otherwise.  I believe that doing so would be contrary to the wishes of the Court. If you have questions, feel free to contact me on my cell: (302) 4388706.
>
>                           Thomas Curry SAXENA WHITE P.A.

Regrettably, rather than contacting me with any questions, certain of the recipients appear to have jumped to mistaken conclusions about the issue. Specifically, one of the recipients of my email—Mr. A. Mathew—immediately published a YouTube video titled "URGENT: AMC Data Breach," featuring my email, in which he suggests that my email reflects some type of widespread "hack" or other "breach" of personal identifying information pertaining to objecting/supporting stockholders generally.  In the video, which received well over 1,000 views promptly upon its posting, he also "urges" his viewers to call the Court for additional information. Mr. Mathew then filed a letter with the Court concerning this purported "breach,"

which was followed minutes later by a similar communication from Mr. Affholter. We have taken extensive measures to protect personal information of Class members while processing a staggering amount of information on a tight timeline. We sincerely regret the public filing of information that should have been sealed or redacted. I remain hopeful that I will be able to work with the Register in Chancery to prevent the information in question from reaching the public docket.  In response to Mr. Mathew's and Mr. Affholter's filings, however, I write to confirm that there has been no widespread breach of stockholders' personal identifying information. My filing mistake pertains to only two stockholders and, at least as of yet, has not been published on the public docket.  I am, as always, available at the call of the Court should Your Honor have any questions concerning this matter.

Respectfully,
/s/ Thomas Curry

763.    On June 9th, 2023 both Jordan Affholter and Etan Leibovitz submitted their own affirmation stating that they filed a complaint written objection to the Plaintiffs' counsel via email, to AMCSettlementObjections@blbglaw.com, which states the basis for their objections and that they will attend the June 29th and 30th, 2023 settlement hearing with the purpose of ensuring that their voices are heard. [356]

764.    On June 13th, 2023, two investors, Dennis J. Donoghue and Mark Rubenstein, filed suit against Antara over short-swing APE profits. The action was filed in the Southern District Court of New York under the caption, Donoghue et al v. Antara Capital Master Fund LP et al, case number 23-cv-04985, before District Court Judge Jennifer H Rearden. [357]

765.    On June 13th, 2023, Theodore Kittila filed a nine page motion, on behalf of his client Rose Izzo, to supplement the record in the consolidated action No. 2023-0215-MTZ. [358]  Rose Izzo's motion moved to "permitting the supplementation of the record to include:

(a) documents responsive to allegations and facts raised for the first time in Plaintiffs' Reply Brief in Further Support of Settlement, Award of Attorneys' Fees and Expenses, and Incentive Awards and
(b) documents cited in Rose Izzo's objection that could not be attached because the Parties did not permit objectors to download. Rose Izzo stated: "Plaintiffs baselessly accuse Ms. Izzo of having "opaque competing interests" with the

---

[356] DI 468  DI 469 and DI 492
[357] Docket Link: https://dockets.justia.com/docket/new-york/nysdce/1:2023cv04985/600362
[358] DI 485

Class because she owns slightly more Preferred units (APEs) than Common stock."

766.   At the time, Rose Izzo owned 3,106 AMC shares and 4,244 APE shares. Exhibit B contains an analysis that illustrates how the settlement would impact Rose Izzo, ACER, and Franchi.

767.   Only ACER and Franchi would benefit from the lead plaintiff incentive award of $5,000.

768.   Rose Izzo reported in Exhibit B that ACER owned only 879 AMC shares (and 879 APE shares), while Franchi reported owning only 32 AMC shares.

769.   Until this point, and subsequent filings bringing attention to this fact, ACER and Franchi's ownership was concealed from the putative class members they claimed to represent. [359]

770.   In this motion, Rose Izzo also states,

"Exhibits C and D relate to Kevin Barnes, a purported AMC stockholder whose letter Plaintiffs rely upon in support of the settlement. Although dated May 30th, 2023, Kevin Barnes' letter was not disclosed to potential objectors, leaving them with no opportunity to respond. Had Rose Izzo had knowledge of Mr. Barnes' letter, the Izzo Objection would have included Exhibits C and D. Exhibit C is a letter, publicly available on the website of the U.S. Securities and Exchange Commission, demonstrating that Kevin Barnes is the manager of K-Bar Holdings, LLC. Exhibit D is an order and final judgment from this Court, dated October 13, 2020, approving a motion by Bernstein Litowitz Berger & Grossman LLP, one of Plaintiffs' counsel here, to award K-Bar Holdings LLC $25,000 as a plaintiffs' incentive." [360]

771.   On June 14th, 2023, Jordan Affholter submitted a letter notifying the court that "AMC had "allegedly" been selling over 200 million of unregistered AMC Preferred Equity Units in 2020, 2021, and 2022 before they had registered that security (later called APE) with the SEC. Page 206 of the previously concealed cited exhibits from the defendants brief (which release was delayed), clearly displays the sale of these securities. [D.I. 201 page 206 Link: https://s25.q4cdn.com/472643608/files/doc_downloads/shareholder-

---

[359] DI 485 Exhibits.  Link:
https://www.docketalarm.com/cases/Delaware_State_Court_of_Chancery/2023-
0215/IN_RE_AMC_ENTERTAINMENT_HOLDINGS_INC._STOCKHOLDER_LITIGATION/919369
17/91936918/
[360] DI 485

meeting/2023/05/defendants-affidavit-and-exhibits-filed-iso-settlement.pdf] However, AMC preferred equity units were not registered with the SEC until August 4, 2022." [361] This document also included a table of mathematical analysis revealing discrepancies in the calculations of unregistered APE shares, indicating a need for further investigation to ascertain whether fraud occurred. However, due to the delayed release of over 1,500 pages of exhibits, this critical information was not discovered until after the deadline. Subsequently, the AMC Defendants claimed that the discrepancy resulted from updating documentation post APE, but the math still did not add up.

772.   On June 14th, 2023, Judge Zurn published her order establishing the settlement hearing protocol for June 29th-30th, 2023, on the court docket in the consolidated action No. 2023-0215-MTZ. [362]

773.   On June 15th, 2023, Judge Zurn granted Rose Izzo's motion to supplement the record.[363]

774.   Subsequently, Theodore Kittila filed his supplemental transmittal affidavit, in further support of Rose Izzo's Objection to the Proposed Settlement, Award of Attorneys' Fees and Expenses, and Incentive Award, on the consolidated action No. 2023-0215-MTZ docket.

775.   Theodore Kittila's affidavit incorporates exhibits N to U, sourced from the confidential discovery database. Exhibit N is the Antara February 11th, 2023 email titled "AMC Debt Capacity" from Benjamin Chuchla, an investment analyst at Antara, to Himanshu Gulati. Exhibits O to U mostly contain redacted brokerage statements showing the ACER, Franchi, and Munoz AMC ownership. Further information regarding the plaintiffs' ownership of AMC would later be revealed.

776.   On June 16th, 2023, Lead Counsel Michael Barry submitted the Second Revised Transmittal Affidavit of Michael J. Barry providing logs of stockholder communications, in response to errors identified in the first version. [364]

777.   On June 16th, 2023, Theodore Kittila published a letter, on the consolidated action No. 2023-0215-MTZ docket, giving Judge Zurn notice of the following:

---

[361] DI 486
[362] DI 488
[363] DI 495
[364] DI 499

"I write on behalf of Objector Rose Izzo ("Ms. Izzo") in response to Plaintiffs' letter concerning Mr. Usbaldo Munoz, dated today, June 16, 2023 (D.I. 498). Plaintiffs' letter omits two key facts:

> (a) far from being discouraged by a "conspiratorial online mob" (D.I. 366 ¶ 16), Mr. Munoz sought to speak with my co-counsel, Anthony Rickey, Esq., over a week ago and
> (b) Plaintiffs' counsel have been in contact with Mr. Munoz for over a week. See Ex. A.

As required by our ethics rules, Mr. Rickey declined to talk to Mr. Munoz until he could determine whether Mr. Munoz was still represented—a matter that Plaintiffs' counsel waited for nine days to address. *Id.* Plaintiffs' counsel contend that this is irrelevant. *Id.* We disagree. To the extent Ms. Izzo's opposition (D.I. 357, 362) to Plaintiffs' counsel's motion is preventing Mr. Munoz from withdrawing from this case and seeking other counsel, Ms. Izzo withdraws her opposition to the Motion, which is now unopposed. I am available at the Court's convenience if Your Honor has any questions." [365]

778. On June 16th, 2023, Jordan Affholter wrote a letter to give Judge Zurn notice

"… that the Allegheny Ownership Screenshot referenced by Mr. Kittila in his affidavit (submitted on June 15, 2023) appears to show APE ownership and NOT AMC ownership."[366] "The CUSIP number referenced in this screenshot is the CUSIP number for APE (00165C203) not AMC (00165C104)....Walter Szymanski, Executive Director of Allegheny County Employees Retirement System, previously signed two affidavits saying Allegheny owned AMC stock since 2015. However, no verification was provided. The first affidavit was signed on February 20, 2023….A second affidavit was signed on May 4, 2023 but only AMC was mentioned and APE was conspicuously omitted." [367]

779. As of June 16th, 2023, AMC stockholders had not seen proof that ACER owned AMC shares. Also of note, the partially redacted screenshots did not list ACER's name on them, but instead another entity - CIM Investment Management. Furthermore, the affidavits submitted by ACER did not list any relationship with CIM Investment Management.

---

[365] DI 500

[366] DI 504 referencing the original screenshot included in D.I. 496, Transaction ID: 70208052 - Exhibits N to U to Supplemental Transmittal Affidavit of Theodore A. Kittila Containing Documents from the Confidential Discovery Database in Further Support of Rose Izzo's Objection to the Proposed Settlement, Award of Attorneys' Fees and Expenses, and Incentive Award. Filed on June 15, 2023.

[367] DI 504

780.   On June 20th, 2023, Kathrine J. Sullivan entered her appearance on the court docket, in the consolidated action No. 2023-0215-MTZ, on behalf of her client, interested party and potential objector, Anthony Kramer. [368] Katherine Sullivan made an application via joinder of Rose Izzo's objection to the proposed settlement, award of attorneys' fees and expenses, and incentive awards. In her application, Katherine Sullivan states in part:

> "Mr. Kramer informs the Court that he was not on notice of the Proposed Settlement until June 2, 2023 nine days past the May 24,2023 deadline by which the Court ordered Defendants to deliver postcard notices, and two days after the May 31, 2023 deadline by which class members were to submit their objections. To date, Mr. Kramer has not yet received a postcard notice in the mail. Worse, the mailing agent's affidavit fails to confirm that the postcard notices were delivered by the Court-ordered deadline of May 24, 2023. Specifically, the affidavit opaquely states that "[p]rior to May 31, 2023, [the mailing agent] and nominees for beneficial holders of AMC Common stock mailed or emailed approximately 2.8 million post card notices to beneficial holders of AMC Common Stock," and is silent as to the critical issue of whether postcard notices were delivered by May 24, 2023." [369]

781.   On June 20th, 2023, Judge Zurn granted Lead Counsel's motion and withdrew Munoz as a lead plaintiff. However, Judge Zurn did not exercise her judicial powers to conduct a hearing to investigate potential fraud against the court or to inquire into any misrepresentations made by Lead Counsel.

782.   On June 20th, 2023, Judge Zurn issued a nine-page letter addressed to the party attorneys ahead of the settlement hearing. In the letter, Judge Zurn posed several questions for the parties' counsel, providing them with an opportunity to respond in writing before the hearing, rather than afterward. Judge Zurn set June 23rd, 2023 as the deadline to respond. Judge Zurn's questions with respect to Franchi are:

   i.   Has Mr. Franchi owned AMC common stock continuously from the wrongs alleged by the plaintiffs through the present?  Or did his ownership begin on November 8th, 2022?
   ii.  If the latter, does Mr. Franchi have standing to bring claims based on wrongs that predated his stock ownership?
   iii. If the answer to (ii) is "no," how does that lack of standing to press at least one of the claims before the Court inform Mr. Franchi's ability to serve as

---

[368] DI 505
[369] DI 506

class representative, his personal interest in pursuing claims he has no standing to bring, and the typicality of his claims vis a vis the class?

iv.  Is the Settlement Class limited to AMC common stockholders that continuously held AMC common stock the entire time from August 3rd, 2022, through and including the Settlement Class Time?  Or does it also include AMC common stockholders that held AMC common stock at any time between August 3rd, 2022, through and including the Settlement Class Time?

v.   Does the Settlement Class include Mr. Franchi?

vi.  If the Settlement Class includes Mr. Franchi and others who bought stock after August 3rd, 2022, please address the commonality requirement and the standing of class members to bring both claims pending before the Court.

vii. If the Settlement Class does not include Mr. Franchi, how can he serve as a class representative?

783.  Judge Zurn concludes her nine page letter with her one question for ACER:

i.   Has ACER continuously owned AMC common stock continuously from the wrong it alleged through the present?

784.  On June 21st, 2023, Michael Barry submitted the Third Revised Transmittal Affidavit of Michael J. Barry Providing Log of Stockholder Communications. This revision was necessary as the second version still contained errors that needed correction. [370]

785.  On June 21st, 2023, Corinne Amato issued her report regarding objections to the settlement. In her report, Corinne Amato concluded that the settlement consideration was a valuable "get" that would benefit the Class. She recommended that the Court of Chancery deny all objections to the settlement, including those raised by Rose Izzo.

786.  On June 21st, 2023, ACER filed their response to Judge Zurn's June 20th, 2023 nine page letter.  In this document, ACER stated,

"Allegheny can confirm that it has continuously held AMC common stock (CUSIP: 00165C104) from December 2015 through the present. Documentation reflecting that fact is submitted herewith as set forth below." [371]

787.  In the submission, ACER included three exhibits. The first exhibit features a screenshot from BNY Mellon, indicating that CIM Investment Management, not ACER, owned 879 AMC shares as of November 30th, 2021. The second exhibit displayed a screenshot from BNY

---

[370] DI 509

[371] DI 521

Mellon showing 879 AMC shares and 879 APE shares owned by CIM Investment
Management, also not ACER, on June 19th, 2023. The third exhibit was an unconfirmed Excel
screenshot listing ACER's trading history of AMC and identifying CIM Investment
Management as the manager. This relationship was neither confirmed nor disclosed to
stockholders. As of the submission, ownership of the 879 AMC shares remained unconfirmed.

788.    On June 21st, 2023, Jordan Affholter's June 21st, 2023 letter, addressed to Judge Zurn, was
filed with the court in the consolidated action No. 2023-0215-MTZ. His letter reads in part,

> "It has been brought to my attention that there is a Director of Operations at Antara
> Capital named Frank Amato.[ https://www.linkedin.com/in/frank-amato-71126918
> , https://brokercheck.finra.org/individual/summary/5017918 ] Frank Amato shares
> the same last name as the Special Master Corinne Elise Amato. Further, Antara
> Capital is based in the Northeast (specifically New York), not far from where the
> Special Master works in Pennsylvania and Delaware…I honestly ask the Court does
> Special Master Corinne Elise Amato know Frank Amato (from Antara) or is  the
> Special Master associated with Frank Amato or Antara in any way?...If the Special
> Master Corinne Elise Amato is any way associated with Frank Amato from Antara
> Capital, or any undisclosed affiliations that could impact her objectivity, it would
> constitute a clear breach of her role as the Special Master. This needs to be clarified
> and the burden of proof lies on the Special Master…." [372]

789.    On June 22nd, 2023 a supplemental affidavit was filed with the court in the consolidated
action No. 2023-0215-MTZ, coming from Quality Assurance Manager Josephine Bravata
("Ms. Bravata") at Strategic Claims Services.[373]

790.    Ms. Bravata updates Judge Zurn stating that,

> "As of June 22, 2023 SCS and nominees for beneficial holders of AMC
> common stock mailed or emailed approximately **three million post card
> notices** to beneficial holders of AMC common stock."

791.    Of note, the reported 3 million postcard notices are still significantly fewer than the
representation John Neuwirth made during the April 25th, 2023 telephonic conference call,
stating that there are approximately 3.8 million AMC stockholders.

792.    Exhibit D to the Mulholland Affidavit shows that Apex **only** sent out 43 notices in **May**

---

[372] DI 522
[373] DI 531

**2023**. [374]

| BROKER | ACTION | RESPONSE RECEIVED | SENT |
|---|---|---|---|
| ABBEY CAPITAL | NO HOLDERS | 5/11/2023 | NOT APPLICABLE |
| ANB BANK | BROADRIDGE WILL FILE FOR | 5/10/2023 | NOT APPLICABLE |
| APEX CLEARING | SENT 43 NAMES/ADDRESSES | 5/12/2023 | 5/17/2023 |
| ARIEL INVESTMENTS | NO HOLDERS | 5/18/2023 | NOT APPLICABLE |
| AXOS CLEARING | SENT 362 NAMES/ADDRESSES | 5/4/2023 | 5/17/2023 |
| BANCWEST INVESTMENT SERVICES | SENT 109 NAMES/ADDRESSES | 5/11/2023 | 5/17/2023 |
| BROADRIDGE: MORGAN STANLEY WM, WEDBUSH SECURITIES OTS, WEDBUSH SECURITIES 103, WELLS FARGO CLEARING, CHARLES SCHWAB, TD AMERITRADE, U.S. BANCORP, STIFEL, D.A.DAVIDSON, EDWARD JONES, ETRADE, R.W.BAIRD, RAYMOND JAMES, NATIONAL FINANCIAL SERVICES, LPL FINANCIAL, VANGUARD, AMERIPRISE, SCOTIABANK, BANQUE SCOTIA, VISION FINANCIAL, TRADESTATION, MURIEL SIEBERT & CO, BNP PARIBAS, & MERRILL LYNCH | REQUEST 1,183,555 POSTCARDS | 5/17/2023 | 5/18/2023 |

793.    However, Exhibit A to the Ms. Bravata affidavit clearly indicates that on behalf of Apex, Strategic Claims Services sent out an additional 240,000 notices on June 9th and June 12th, 2023, which is respectively 9 and 12 days after the May 31st, 2023 objection and support deadline.

| BROKER | ACTION | RESPONSE RECEIVED | SENT |
|---|---|---|---|
| ABBEY CAPITAL | NO HOLDERS | 5/11/2023 | NOT APPLICABLE |
| ANB BANK | BROADRIDGE WILL FILE FOR | 5/10/2023 | NOT APPLICABLE |
| APEX CLEARING | SENT 240,217 NAMES/ADDRESSES | 5/12/2023, 6/5/2023, AND 6/12/2023 | 5/17/2023, 6/9/2023, AND 6/12/2023 |
| ARIEL INVESTMENTS | NO HOLDERS | 5/18/2023 | NOT APPLICABLE |
| AXOS CLEARING | SENT 362 NAMES/ADDRESSES | 5/4/2023 | 5/17/2023 |
| BANCWEST INVESTMENT SERVICES | SENT 109 NAMES/ADDRESSES | 5/11/2023 | 5/17/2023 |
| BROADRIDGE: MORGAN STANLEY WM, WEDBUSH SECURITIES OTS, WEDBUSH SECURITIES 103, WELLS FARGO CLEARING, CHARLES SCHWAB, TD AMERITRADE, U.S. BANCORP, STIFEL, D.A.DAVIDSON, EDWARD JONES, ETRADE, R.W.BAIRD, RAYMOND JAMES, NATIONAL FINANCIAL SERVICES, LPL FINANCIAL, VANGUARD, AMERIPRISE, SCOTIABANK, BANQUE SCOTIA, VISION FINANCIAL, TRADESTATION, MURIEL SIEBERT & CO, BNP PARIBAS, & MERRILL LYNCH | REQUEST 1,183,555 POSTCARDS | 5/17/2023 | 5/18/2023 |

794.    Over half of the postcard notices were not sent until May 26th, 2023, the day before Memorial Day weekend. This left AMC stockholders with, at best, one or two business days to evaluate the settlement, potentially find counsel, and file a timely objection.

---

[374] DI 442

795.    On April 28th, 2023, Judge Zurn stated that the settlement schedule,

> **"depends upon prompt initiation of postcard notice, and will only work if postcards will generally be delivered by May 24th, 2023."**

However, based on Mr. Mulholland's affidavit and Ms. Bravata's affidavit, it's clear that AMC stockholders' 14th Amendment Right to the United States Constitution - Due Process Clause, Chancery Rule 23, and Judge Zurn's own instructions were not met for at least 1 million AMC stockholders who did not receive notice before May 24, 2023. Despite this evidence, Judge Zurn somehow found the notice acceptable anyway, without even making any inquiry for an explanation.

796.    The affidavits of Mr. Mulholland and Ms. Bravata, particularly in Exhibit D, reveal significant omissions regarding postcard notification. Exhibit D illustrates which brokers sent delivery, raising questions about the potential absence of major brokers like **Fidelity and Interactive Brokers, as well as other retail-friendly apps like Cash App and Moo Moo (Futu Clearing).** The lack of international brokers on this list also raises concerns about whether Strategic Claims Services attempted to contact international AMC stockholders. Additionally, while Robinhood shows that they notified over 1.5 million AMC stockholders, it's unclear why the postcard notifications were sent out so late, on May 26th, 2023.

| BROKER | ACTION | RESPONSE RECEIVED | SENT |
|---|---|---|---|
| ABBEY CAPITAL | NO HOLDERS | 5/11/2023 | NOT APPLICABLE |
| ANB BANK | BROADRIDGE WILL FILE FOR | 5/10/2023 | NOT APPLICABLE |
| APEX CLEARING | SENT 43 NAMES/ADDRESSES | 5/12/2023 | 5/17/2023 |
| ARIEL INVESTMENTS | NO HOLDERS | 5/18/2023 | NOT APPLICABLE |
| AXOS CLEARING | SENT 362 NAMES/ADDRESSES | 5/4/2023 | 5/17/2023 |
| BANCWEST INVESTMENT SERVICES | SENT 109 NAMES/ADDRESSES | 5/11/2023 | 5/17/2023 |
| BROADRIDGE: MORGAN STANLEY WM, WEDBUSH SECURITIES DTS, WEDBUSH SECURITIES 103, WELLS FARGO CLEARING, CHARLES SCHWAB, TD AMERITRADE, U.S. BANCORP, STIFEL, D.A.DAVIDSON, EDWARD JONES, ETRADE, R.W.BAIRD, RAYMOND JAMES, NATIONAL FINANCIAL SERVICES, LPL FINANCIAL, VANGUARD, AMERIPRISE, SCOTIABANK, BANQUE SCOTIA, VISION FINANCIAL, TRADESTATION, MURIEL SIEBERT & CO, BNP PARIBAS, & MERRILL LYNCH | REQUEST 1,183,555 POSTCARDS | 5/17/2023 | 5/18/2023 |
| CETERA INVESTMENT SERVICES LLC | SENT 138 NAMES/ADDRESSES | 5/9/2023 | 5/23/2023 |
| CITI 274 | SENT 230 NAMES/ADDRESSES | 5/22/2023 | 5/23/2023 |
| CITI 418 | SENT 1 NAME/ADDRESS | 5/22/2023 | 5/23/2023 |
| CREW & ASSOCIATES | SENT 1 NAME/ADDRESS | 5/16/2023 | 5/23/2023 |
| DAIWA CAPITAL MARKETS AMERICA INC | SENT 5 NAMES/ADDRESSES | 5/5/2023 | 5/17/2023 |
| GARDNER LEWIS ASSET MANAGEMENT | NO HOLDERS | 5/9/2023 | NOT APPLICABLE |
| GUARDIAN | SENT 30 NAMES/ADDRESSES | 5/22/2023 | 5/23/2023 |
| HILLTOP SECURITIES INC | SENT 41 NAMES/ADDRESSES | 5/4/2023 | 5/17/2023 |
| HSBC BANK USA | SENT 95 NAMES/ADDRESSES | 5/3/2023 | 5/17/2023 |
| ITAU BBA USA SECURITIES INC | PERSHING WILL SUBMIT FOR | 5/12/2023 | NOT APPLICABLE |
| JEFFERIES LLC | SENT 352 NAMES/ADDRESSES | 5/4/2023 | 5/17/2023 |
| KESSLER TOPAZ MELTZER & CHECK LLP | NO HOLDERS | 5/11/2023 | NOT APPLICABLE |
| MACKIE RESEARCH CAPITAL | SENT 12 NAMES/ADDRESSES | 5/3/2023 | 5/17/2023 |
| MANULIFE SECURITIES | SENT 5 THEMSELVES | 5/10/2023 | NOT APPLICABLE |
| MD MANAGEMENT LIMITED | SENT 4 THEMSELVES | 5/5/2023 | NOT APPLICABLE |
| MUNICIPAL CAPITAL MARKETS GROUP INC | NO HOLDERS | 5/11/2023 | NOT APPLICABLE |
| OPPENHEIMER & CO INC | SENT 140 NAMES/ADDRESSES | 5/18/2023 | 5/23/2023 |
| ORION | SENT 91 NAMES/ADDRESSES | 5/12/2023 | 5/17/2023 |
| PERSHING LLC | SENT 8800 NAMES/ADDRESSES | 5/4/2023 | 5/17/2023 |
| PIPER JAFFRAY | SENT 49 NAMES/ADDRESSES | 5/10/2023 | 5/17/2023 |
| ROBINHOOD | SENT 1,560,828 NAMES/ADDRESSES | 5/22/2023 | 5/26/2023 |
| ROYAL BANK OF CANADA | ONLY SEND IF THERE IS CFD | 5/10/2023 | NOT APPLICABLE |
| SHAPIRO CAPITAL MANAGEMENT | NO HOLDERS | 5/11/2023 | NOT APPLICABLE |
| SOUTHEASTERN ASSET MANAGEMENT | NO HOLDERS | 5/30/2023 | NOT APPLICABLE |
| STONEX FINANCIAL INC | SENT 31 NAMES/ADDRESSES | 5/3/2023 | 5/17/2023 |
| SUMMIT GLOBAL INVESTMENTS | NO HOLDERS | 5/11/2023 | NOT APPLICABLE |
| THE INLAND REAL ESTATE GROUP LLC | NO HOLDERS | 5/30/2023 | NOT APPLICABLE |
| TRUIST WEALTH | SENT 32 NAMES/ADDRESSES | 5/9/2023 | 5/17/2023 |
| UBS | SENT 923 NAMES/ADDRESSES | 5/11/2023 | 5/17/2023 |
| W.D. LATIMER CO LIMITED | SENT 1 NAME/ADDRESS | 5/9/2023 | 5/17/2023 |
| ZURICH NORTH AMERICA | NO HOLDERS | 5/11/2023 | NOT APPLICABLE |

797.   Not a single attorney, from either party, Lead Counsel or AMC's defense team, filed a motion with Judge Zurn to bring this constitutional violation regarding postcard notice to her attention. If Lead Counsel had properly represented the Class, they would have raised this violation to the Court's and the Class' attention. Additionally, if the AMC Board had genuinely cared about their retail investors, they would have taken action. However, they refrained from doing so to avoid exposing the Project Popcorn scheme, which could reveal the true number of stockholders and shares in circulation.

798.   On June 23rd, 2023, Judge Zurn responded to Jordan Affholter's letter, declining to entertain his inquiry regarding any potential conflict of interest involving Corinne Amato and Frank Amato.   Additionally, no affidavit was submitted by Corinne Amato on this challenge.

799.   On June 23[375], 2023, Jordan Affholter filed his letter [375]  with the court, in the consolidated action No. 2023-0215-MTZ, addressing Judge Zurn's June 20th, 2023 letter that presented questions for the parties' counsel in advance of the settlement hearing, specifically:

> Has Allegheny continuously owned AMC common stock continuously from the wrong it alleged through the present?

Jordan Affholter's letter informed Judge Zurn that ACER had failed to demonstrate that they held AMC common shares throughout the relevant period, spanning from August 3rd, 2022, until June 23rd, 2023.

800.   Throughout late June 2023, several AMC stockholders submitted exceptions to Corinne Amato's June 21st, 2023 Report and Recommendations, regarding objections to the proposed settlement. [376]

801.   On June 27th, 2023, Etan Leibovitz filed his 13-page letter with the court in the consolidated action No. 2023-0215-MTZ. The letter exposes Strategic Claims Services, Paul Mulholland's and Josephine Bravata's affidavits, Mr. Neuwirth's 3.8 million stockholder representation, and Corinne Amato's June 21st, 2023 Report and Recommendation. Etan Leibovitz concludes his letter by presenting Judge Zurn with several questions she should consider at the Settlement Hearing:

- Would the results of the March 14th, 2023 Vote have been the same if I, Judge Zurn, would have released the operating complaint unredacted and other discovery documents prior to the vote and allowed the AMC shareholders to read said documents  in advance of vote?
- If Jordan Affholter, Alex Mathew, Frank Maribito and Etan Leibovitz never filed their discovery and omnibus motions, when was Lead Counsel as well as the attorneys representing the AMC Defendants planning to comply with paragraph 72 of the Notice of Pendency of Stockholder class action and proposed settlement, settlement hearing, and right to appear?
- Did every AMC Stockholder receive a postcard notice, if so how many AMC stockholders are there?

---

[375] DI 538
[376] DI 533, 543, 546, 547, 553, 556, 558, 559, 560, 565

- If I, Judge Zurn, move forward with the Settlement without giving all the putative class members notice and time to object or support, would I be violating their 14th Amendment Right?

802.   On June 28th, 2023, Jordan Affholter filed his June 22nd, 2023 letter with the court in the consolidated action No. 2023-0215-MTZ, providing Judge Zurn with notice that the screenshots reported by ACER show that CIM Investment Management owned AMC and APE shares, not ACER. [377]

803.   On June 29th, 2023, Corinne Amato filed a report on the list of stockholder objections that showed that Lead Counsel had **misclassified dozens of stockholders.** [378]

## June 29th – 30th, 2023 Settlement Hearing

804.   On June 29th and 30th, 2023, Judge Zurn held the settlement hearing.  Rose Izzo was allocated meaningful time to address the court and advance her objections.

805.   Three individuals AMC Retail Shareholders (not represented by counsel) spoke in person at the settlement hearing on June 29-30, 2023 and they spoke against the proposed settlement. Additionally, Attorney Kittila and Attorney Rickey spoke on behalf of AMC Shareholder Rose Izzo at the settlement hearing and they spoke against the proposed settlement.  Attorneys Kittila and Rickey critiqued Allegheny and Franchi for not being appropriate class representatives and that Izzo would be a more representative plaintiff for AMC shareholders.

806.   The scheduling order listing which shareholders (of the many submissions, approximately 23 were selected) was filed on the court docket on June 23, 2023 (one week before the hearing)

---

[377] DI 562
[378] DI 567

and many shareholders reported receiving letters in the mail only 1-3 days before the hearing, so many could not attend and make travel arrangements (time off court, drive, flight, and/or hotel arrangements) on such short notice.

807.    During the Settlement Hearing Judge Zurn asked Lead Counsel to identify which discovery document convinced them that AMC "was facing imminent bankruptcy," - they did not and could not.

808.    Lead Counsel, Franchi, and ACER assured Judge Zurn that warnings of oncoming harm resulting from settlement were "wild speculation."   Plaintiffs were wrong.

809.    On July 3rd, 2023, Citigroup's analyst Jason Bazinet issued a sell rating on AMC with a (maintained) price target of $1.65.

810.    On July 12th, 2023, Justin Rodriguez, Assistant United States Attorney for the Southern District of New York,  filed his 13-page sentencing memorandum in United States of America vs Sakoya Blackwood, docket number 22 Cr. 460 JMF.[379]

### The July 21, 2023 Opinion -  Judge Zurn Denies the Settlement

811.    On July 21st, 2023, at approximately 4:08 pm EST, Judge Zurn denied the proposed settlement.  Zurn's 69-page opinion[380], rejected the Settlement as initially proposed on the ground that it provided that members of the proposed Settlement class would release claims arising out of the action that they might have as a result of their ownership of APEs.  Zurn's opinion did call out the APE issuance for being a blank check for issuing more shares, the mirrored voting by Computershare, and the lack of common share support (less than 50% of authorized common shares voted in favor) for the March 14th , 2023 reverse splits and APE to AMC conversion proposals.[381]
DI 581
Discuss - how Judge Zurn says she cant do anything - people complaining about Wall St fraud etc.   ….

---

[379] https://cdn.sanity.io/files/ifn0l6bs/production/2845afd8bf6f32f3f6834ef3e195c26bf26ce7ef.pdf
[380]

[381] DI 581

812.   In after hours trading, AMC shares surged and closed up over 63%, up over $2.78, to close the after hours session at $7.17, while the APEs closed down over 20%, down over 36 cents to close the after hours session at $1.43.

**AMC:** $7.17  **APE:** $1.43

### Adam Aron's July 23rd, 2023 Letter to Shareholders

813.   Like clockwork, on July 23rd, 2023, Aron penned a letter to stockholders encountered an assertion of "existential" significance. This nomenclature also raises alarm bells, for it insinuates an inextricable link between shareholders' interests and the very survival of the company. Aron then proceeds to assert that the company "MUST be in a position to raise equity capital," contending that this is imperative to safeguard shareholder value. This statement was a flagrant outright lie to shareholders, because the creation of a new share class had already granted the company the ability to issue up to 5 billion AMC preferred equity units, an avenue to raise equity capital that was well within their purview. This declaration by Mr. Aron, therefore, not only lacks factual grounding but also carries a shade of misleading intent. According to Mr. Aron's own prior revelations the whole purpose of creating the new share class APE, was to raise equity capital through it.



**Adam Aron** ✔
@CEOAdam                                                        ...

My open letter message below to you all is on a subject of existential importance to AMC Entertainment shareholders. I urge you to read it.
Adam Aron      #AMCSurviveThenThrive

Post übersetzen

10:42 nachm. · 23. Juli 2023 · 2,4 Mio. Mal angezeigt

83. Moreover, the insistence that shareholders "MUST" bestow upon the fiduciaries the ability to raise equity capital, when they were already vested with such authority, raises serious questions about the board's transparency and genuine dedication to shareholder interests. The subsequent reverse split conversion not only brought havoc on shareholder value but also significantly weakened shareholders' positions by reducing the number of their shares by a staggering 90%. This stratagem bore monumental consequences for shareholders, and the company was remiss in taking preemptive measures to shield them from the ensuing nosedive in stock prices over a brief span. This oversight, in itself, underscores a disconcerting lack of forethought and a palpable absence of the board's fiduciary duty towards the shareholders. To exacerbate matters further, the company announced an increased round of dilution (A 25 million share increase was announced on August 14, 2023, with the filing from  September 6, the amount was risen to 40 million shares = +25% of the outstanding shares already issued and diluted) that would impact shareholders. This move, undoubtedly translates to further adversity for the shareholders who have already borne the brunt of these dilutive measures. In the light of these actions and statements, it becomes unmistakably clear that the decisions and communications of the board were not in harmony with the fiduciary duties they owe to shareholders. And the hypocrisy of the fiduciaries have reached their absolute zenith by making such statements to shareholders, while the company has paid the executives for 2022 a total sum of $40.966.575 in executives compensation while the stock price flushed only in 2022 down around 85%.

From the outset, it is crucial to dissect the calculated misalignment with fiduciary duties, the very bedrock upon which corporate governance rests. The board's actions, in particular, reveal a stark disregard for the fundamental duties of care, loyalty, and disclosure, not to mention their obligation to act within the bounds prescribed by the company's Memorandum and Articles of Association. These duties are not mere formalities; they are the backbone of responsible corporate governance, and their transgression cannot be taken lightly. To sum things up, the misconduct by the fiduciaries outlined in this action seem to have no equal. The fiduciaries engaged in deliberate manipulation of shareholders and deceptive practices, reckless fiscal imprudence, excessive compensation and inequitable enrichment amidst financial decline, audacious investments, absurd executive compensation structure, and an astounding discrepancy in CEO compensation compared to other businesses. These actions collectively present a mosaic of fiduciary transgressions, a betrayal of the very principles upon which shareholder trust is built. The fiduciaries' decisions and declarations serve as a clarion call for scrutiny and, ultimately, justice.

814.   On July 24th, 2023, the parties in the consolidated action No. 2023-0215-MTZ, swiftly re-submitted the proposed settlement to Judge Zurn. This re-submission, identical except for excluding the APE claims from the release, raises questions about the perceived value of the APE claims or the motivations of both parties. It suggests a situation where either the APE

claims were deemed of zero value, or both the party attorneys were eager to procure the settlement regardless of its impact on stockholders.

815.    On July 24th, 2023, Theodore Kittila informed Judge Zurn that he was prepared to file a motion for a stay pending appeal should Judge Zurn approve the settlement. [382] The parties in the consolidated action No. 2023-0215-MTZ opposed, and Theodore Kittila's request for a stay was fully briefed prior to Judge Zurn's decision approving the settlement.

816.    On July 31st, 2023, Katherine Sullivan filed her one page letter with the court in the consolidated action No. 2023-0215-MTZ. The letter included, as Exhibit A, her client's affidavit. Her letter reads in part,

    I represent Anthony Kramer, who filed a Joinder in the Objection of Rose Izzo (D.I. 301). In the July 21, 2023 Opinion regarding the Proposed Settlement, Your Honor noted at Footnote 94 that Mr. Kramer's statement that he was unaware of the Proposed Settlement until June 2, 2023 is not supported by the exhibit to his Joinder, and Mr. Kramer did not verify under oath that he was unaware of the Proposed Settlement until June 2, 2023. In support of Mr. Kramer's Joinder, and in an effort to resolve any concerns about the timeliness and due process considerations raised therein, Mr. Kramer submits the attached Affidavit which sets forth, among other matters, his sworn statement that he did not know until June 2, 2023 that there was a May 31, 2023 deadline to object to the Proposed Settlement. Affidavit of Anthony L. Kramer is attached as Exhibit A. I am available at the call of the Court should Your Honor wish to discuss this issue further.

817.    On July 31st, 2023, AMC stockholder Chris Hamberg submitted a 46-page affidavit with the court in the consolidated action No. 2023-0215-MTZ. The affidavit contained a comprehensive mathematical analysis demonstrating how the reverse split and conversion would negatively impact AMC stockholders. [383]

[382] DI 583
[383] DI 602

818.   On August 4th, 2023, there were 519,192,389 AMC shares of common stock and 995,406,413 APE units issued and outstanding. [384]

### Judge Zurn's August 11th, 2023 Memorandum and Decision

819.   On August 11th, 2023, Judge Zurn issued **"her"** 110-page Memorandum Opinion approving the settlement[385]. The Memorandum Opinion held that the settlement was "reasonable" and "notice was adequate, that Franchi and ACER were adequate representatives of the class. In reaching that decision, Judge Zurn affirmed Corrine Amato's conclusion that "objectors did not carry their burden to disqualify Plaintiffs (Franchi and ACER) as adequate class representatives." It concluded that the holding of Prezant v. DeAngelis, 636 A.2d 915 (Del. 1994), was limited to a requirement of a judicial determination of adequacy in class actions.  It also determined that there was no economic antagonism between Franchi and ACER and other class members.  As for an opt-out, the Memorandum Opinion concluded that no opt-out is warranted because (a) the class can be certified under Rule 23(a),  23(b)(1) and (b)(2), (b) the lack of an opt-out would not violate the due process rights of other stockholders, and (c) an opt-out was not feasible. Regarding the fairness of the settlement itself, the Memorandum Opinion held that Plaintiffs' Section 242 claim possessed little value but that "a preliminary injunction has a discounted valued in Plaintiffs' 'give.'" The proposed settlement also approved, Lead counsel's award of 12% fee, and Franchi and ACER's incentive award of $5,000. Finally, the Memorandum Opinion rejected Rose Izzo's objections to the settlement, including those related to the scope of the release and the lack of opt-out rights for Class members and denied Rose Izzo's motion for a stay pending her planned appeal, noting that any such appeal would "raise only an ordinary question of contract interpretation," and that Rose Izzo failed to demonstrate a sufficient "likelihood of success" on appeal.  Judge Zurn also held that the granting of a stay would have inflicted "substantial harm" on AMC and its stockholders.

---

[384] https://investor.amctheatres.com/sec-filings/all-sec-filings/content/0001411579-23-000057/amc-20230630x10q.htm
[385] DI 615,

820.   In after hours trading, the ruling sent the APEs soaring 27% to close the after hours session at $2.26, while AMC's common stock fell 27%, to close the after hours session at $3.93.

**AMC:** $3.93  **APE:** $2.26

821.   On August 13th, 2023, Alex Mathew filed a motion on the consolidated action No. 2023-0215-MTZ docket, questioning whether Judge Zurn authored both the July 21st, 2023 Opinion and the August 11th, 2023 Memorandum and Decision. Alex Mathew writes in part,

> "That being said, I would like to ask the court if the court had additional jurists worked on the judgement on this case that are not publicly disclosed. I have studied the linguistics styles of the court throughout the entirety of this case, and noticed a dramatic shift in linguistics style in the previous judgments and the Opinion Regarding Proposed Settlement, Issued July 21, 2023 and the final judgement on August 11, 2023.  The intentional use of very uncommon words such as "appurtenant" and "unitary" in this written opinion very clearly points to a specific author.  Those two words used together in one document stick out in my mind because legal (business) academics use it more prevalent than others. Those are what pedestrians like myself call "rare words" that used in select applications that are so finite, that it's exclusive uses are limited in scope. So rare that you scarcely see them. It's that rarity that made it so fascinating to me. The person who uses words like that has a deep understanding of the context it is used in business. So I went on LexisNexis to see if I could find any past documentation of the court's usage of those two words in any available legal document, but there were none.  So my initial question for the court began at, "was there another judge helping?", and now its "How much work has this person done in this case? And were there other judges involved that was not disclosed to class members? If we looked through emails, and phone records, what will I find?"  Then the usage of the words "human owners" was also very curious. There is a cold indifference to the usage of that phrase that shows a certain tone, I had not seen in previous documents the court had penned. This lead me to the conclusion that neither the first rejection and subsequent approval was not penned by the court (Vice Chancellor Morgan T. Zurn) but by someone else.  I also found it strange that Unocol was brought up, which was a Federal matter I had read about. As it turns out, I found my answer on Wikipedia of all

places. Judge Laster uses it quite frequently when making decisions. What a strange coincidence I thought." [386]

822.    Before the market opened on August 14th, 2023—the next business day following  Judge Zurn's approval of the settlement and lifting of the status quo order— AMC announced that:

- **August 24th, 2023 -** the reverse stock split of Common Stock would occur
- **August 25th, 2023 -** the conversion of APEs into Common Stock would occur
- **August 28th, 2023 -** the Settlement Consideration would be issued

823.    On August 14th, 2023, Judge Zurn denied Alex Mathew's August 13th, 2023 motion stating in part,

> "The motion identifies no valid grounds for recusal. **I am the sole author of the July 21 Opinion.** To the extent the movant believes further investigation is necessary, this Court is the wrong avenue to pursue such relief. Further, because there was no trial in this action, the Court cannot declare a mistrial. The movant identified no basis to reinstate the status quo order." [387]

824.    Judge Zurn's denial of Alex Mathew's August 13th, 2023 motion clearly lacks clarification on whether she is the author of the August 11th, 2023 Memorandum and Decision. The denial neither admits nor denies her authorship of the document, leaving ambiguity regarding its origin.

825.    Also on August 14th, 2023, Michael Simons, an APE shareholder brought a pending action in Delaware Chancery Court, case number 2023—0835-MTZ[388], against AMC for,

(a)  a declaratory judgment that the August 11th, 2023 Settlement breaches the Series A convertible participating preferred stock certificate of designations ("COD"); and
(b)  an injunction requiring AMC to

(1) give effect to the anti-dilution provision in Section VI of the COD, which requires AMC to adjust the number of shares of AMC

---

[386] DI 619 for Case 2023-0215-MTZ
[387] DI 622 for Case 2023-0215-MTZ
[388] https://www.docketalarm.com/cases/Delaware_State_Court_of_Chancery/2023-0835/Simons_v._AMC_Entertainment_Holdings_Inc/92351725/

> Class A Common Stock to be received by the holders of the APEs
> upon the conversion of the Preferred Stock according to the formula
> set forth therein, and
> (2) give effect to Section III of the COD and distribute the Special
> Distribution of the Settlement to the holders of APEs at the same
> time and on the same terms as it will be distributed to the holders of
> Common Stock.

826.   On August 14th, 2023, AMC Common stock opened the regular trading session at $3.33, down over 36% from its previous day close of $5.26 and APE opened the day at $2.04.

**AMC:** $3.33  **APE:** $2.04

827.   On August 15th, 2023, Theodore Kittilia filed an application for interlocutory appeal in the Court of Chancery in Delaware, in a final effort to avert disaster, Rose Izzo asked Judge Zurn to reimpose the Status Quo order, and a motion for a Status Quo Order pending appeal in the Supreme Court of the State of Delaware.

828.   On August 16th, 2023, AMC stockholder and objector, Alexander Holland, filed a complaint with the NYSE, which was assigned complaint number CC35096275. The complaint reads in part,

> Dear NYSE Compliance Department,
>
> I am Alexander Holland AMC Common Stockholder, and I want to bring a matter of upmost urgency to your attention involving recent developments at AMC, which appears to potentially infringe upon the rights and interests of common shareholders and will cause SIGNIFICANT ECONOMIC HARM to 3.8 million shareholders worldwide. On August 14, 2024, AMC ENTERTAINMENT HOLDINGS, INC. released in an 8-K filing (001-33892) stating that:
>
> 1. Company files the amendment to its Third Amended and Restated Certificate of Incorporation to enable the Share Increase, Reverse Stock Split and Conversion to occur, setting an effective time for the Reverse Stock Split and Share Increase at 12:01 a.m. on August 24, 2023

2. Class A common stock (NYSE: AMC) commences trading on a one-for-ten split-adjusted basis (for comparison, the prior trading day's closing price is multiplied by 10)

3. Last day of trading of AMC Preferred Equity Units (NYSE: APE) (no adjustment is made to prior closing price, 1 APE is now comparable to 1/10th of share of Class A common stock)

4. Record date set at close of business for holders of Class A common stock entitled to Litigation Settlement Payment

Pursuant NYSE Rule 9800 TEMPORARY CEASE AND DESIST ORDERS & Rule 9810 Initiation of Proceedings I want to urge you to issue an EMERGENCY Cease and Desist order to the filed transaction of AMC ENTERTAINMENT HOLDINGS, INC. for the following reasons:

1. Violation of the Board of Directors of SEA Rule 10b-5:

   a. Misrepresentation or omission of material information: Providing false or misleading information, or not disclosing important information that could affect a person's decision to buy or sell a security.

   b. Materiality: The information that is misrepresented or omitted must be significant enough to influence an investor's decision.

   c. Reliance: The person who is harmed by the fraud must have relied on the false information when making their investment decision.

According to Discovery documents of the Class Action Lawsuit 2023-0215-MTZ the Board of Directors implemented a scheme to overthrow the voting power of AMC Common Stockholders. This scheme – called "Project Popcorn" was introduced in November 2021 and was not publicly disclosed to shareholders. In the PLAINTIFFS' OPENING BRIEF IN SUPPORT OF SETTLEMENT, AWARD OF ATTORNEYS' FEES AND EXPENSES, AND INCENTIVE AWARDS EFiled: May 04 2023 Transaction ID 69958454 Case No. 2023-0215-MTZ, the happenings around "Project Popcorn" were thoroughly described. There it states "In November 2021, the Company's banker, Citigroup, began work on "Project Popcorn," a prospective issuance of an alternative form of equity that could convert into Common Stock. By February 2022, Citigroup proposed that "AMC could call [the rights] AMC Preferred Equity Units ("APEs")." Van Zandt expounded upon this proposal at a Board meeting held on February 17, 2022: The rights are dilutive so the shareholders are incented to buy the shares to avoid dilution. Mr. Van Zandt …reviewed the decision tree each shareholder would

process. Notwithstanding Aron's rosy public statements about AMC's financial outlook, by no later than mid-May 2022, AMC's executives were exploring giving APEs special voting powers that could be maneuvered so management could force amendment of its Certificate. Specifically, on May 17, 2022, D.F. King and the Company's attorneys discussed using supervoting preferred stock and proportional voting to effectively lower the standard for an amendment.28 On May 27, 2022, B. Riley Financial, one of the Company's advisors, sent AMC executives Sean Goodman and John Merriwether a number of prospectuses from issuers that had used supervoting preferred shares to force through Certificate amendments.29 A July 20, 2022 memorandum about the potential APE issuance showed that AMC was by then already planning an ATM offering of APEs.30 Goodman acknowledged that "[i]ndex funds that own AMC common shares will likely be required to sell the Preferred Equity Units, while this may put pressure on the value of the Preferred Equity Units, lower index fund ownership also means less shares available for short sellers to borrow and this could have an offsetting positive impact on the trading value of the Preferred Equity Units."31 In a contemporaneous email exchange, Goodman agreed that registration of one billion preferred equity units would make sense (with)approximately 517 million to be used for the dividend and the remainder to be sold through an ATM offering), with Merriwether asserting that "[t]here is a sweet spot somewhere that doesn't raise the shareholders' ire about dilution but also gives us the flexibility to raise the capital we want. I think we will get ire no matter what the number is, so does it make sense to get the ire out all at once at 1B."

"Project Popcorn," which is a scheme involving the issuance of an alternative form of equity (AMC Preferred Equity Units - APEs) that could convert into Common Stock. This scheme was deliberately not publicly disclosed to shareholders until the Class Action Lawsuit. The Board of Directors intentionally withheld or misrepresented information about this scheme which is in FACT a violation of SEC Rule 10b-5.

Materiality:
The issuance of APEs in August 22, 2022 negatively impacted the value and voting power of AMC Common Stockholders. It annihilated AMC stockholders investments. The super voting power through mirrored voting information was not disclosed to AMC Common Stockholders and would had significant impact to influence investors' decisions of buying or selling AMC common Stock prior the APE issuance and or after. Quote: "The Company did not highlight how much the mirror-voting instruction to Computershare would likely increase the power of Antara's votes, or that APEs would assuredly carry more voting power per unit than shares of Common Stock."

Reliance and Investor Impact:
The discussions around the issuance of APEs and the potential special voting powers attached to clearly show that the AMC management was considering actions that significantly impacted shareholders' voting rights. Shareholders were not made aware of these changes and its affects and relied on the information available to them, thus they were misled in their investment decisions by the Board of Directors.

Timing and Disclosure:
The fact that "Project Popcorn" was introduced in November 2021 but not publicly disclosed to shareholders until the Class Action Lawsuit factually proves the lack of timely and accurate disclosure of Material Information to Shareholders, which is a key aspect of SEC Rule 10b-5.

Market Impact:
In addition to that, the discovery showed, that the impact of the APE issuance on index funds, causing a major sell-off had potential consequences for the market and investors. If these consequences were not adequately disclosed, it is also a violation under the rules of SEC and NYSE.

2. Under NYSE Rule 2010 member organizations and individuals associated with the NYSE MUST adhere to ethical standards and requirements. The rule requires members to observe "high standards of commercial honor and just and equitable principles of trade." It means that members of the NYSE must conduct themselves in an honest and fair manner when engaging in any business activities related to the stock exchange. This rule aims to maintain the integrity of the marketplace and protect investors from unethical practices.

The Board of Directors has deliberately manipulated a shareholder vote on March 14, 2023. In the Opinion from Vice Chancellor Morgan T. Zurn EFiled: Jul 21 2023 Transaction ID 70454004 Case No. 2023-0215-MTZ (Source: https://www.docketalarm.com/cases/Delaware_State_Court_of_Chancery/2023-0215/IN_RE_AMC_ENTERTAINMENT_HOLDINGS_INC._STOCKHOLDER_LITIGATION/92190035/)

She clearly states the following on page 22/23:

"A majority of common stockholders and a majority of the APE unitholders did not give any voting instructions at all, let alone in favor of the Proposals. The Proposals passed only because of the APEs' mirrored voting feature and Antara's promised APE votes. AMC acknowledged that fact internally."

> "But only 35.23% of the 517,580,416 outstanding shares of common stock were present and voted at the Special Meeting, meaning only 25.54% of the outstanding common voted for the Share Increase Proposal, and 24.80% for the Reverse Split Proposal."

Further she states:

> "The defendants continue to misrepresent the nature of the vote by including the uninstructed mirrored votes in the total. In this litigation, the defendants have touted, "AMC's Proposals to authorize additional shares of Common Stock and convert the APEs into Common Stock were overwhelmingly supported by holders of both APEs and Common Stock".

> This is a clear violation of NYSE Rule 2010. The board used a scheme to overthrow his shareholders and now they try to implement the changes on a fraudulent basis.

3.  On Feb 20, 2023 the plaintiffs filed a request for a court issued

> "Temporary Restraining order". The Brief was filed with Transaction ID 69181648                                                    (Source: https://www.docketalarm.com/cases/Delaware_State_Court_of_Chancery/2023-0215/Allegheny_County_Employees%27_Retirement_System_on_behalf_of_itself_and_all_other_similarly-situated_Class_A_stockholders_of_AMC_Entertainment_Holdings_Inc._v._AMC_Entertainment_Holdings_Inc/90908043/90908045/).

In that brief, the plaintiff's used the "irreparable harm argument" successfully to get the Status Quo order granted in the first place. "On a motion for expedited proceedings or a temporary restraining order, a plaintiff must show only a "sufficient possibility of threatened irreparable injury." Rohm & Haas Co. v. Dow Chem. Co., 2009 WL 445612, at *2 (Del. Ch. Feb. 6, 2009)

(citation and quotation marks omitted) (addressing a motion to expedite); CBS, 2018 WL 2263385, at *6 (addressing a motion for a temporary restraining order). Here, absent a temporary restraining order and expedition, Plaintiff and the other common stockholders of AMC will be damaged irreparably, with only highly speculative and hypothetical means of unwinding Defendants' proposed amendments to AMC's Charter and proposed conversion." "Indeed, if the March 14 stockholder vote goes forward and the Proposals are adopted, each existing APE unit will convert into shares of AMC common stock traded publicly on the NYSE— resulting in SIGNIFICANT ECONOMIC HARM to the Company's existing Class A Stockholders. If the Court were to later find that the conversion results from a breach of fiduciary duty or that the Preferred Stock was never properly authorized, it does not appear that there would be any practical means of unwinding that conversion— which, as noted above, would result in significant dilution of the economic and voting rights of AMC's common stockholders as a class. See Police & Fire Ret. Sys. of City of Detroit v. Bernal, 2009 WL 1873144, at *2 (Del.Ch., 2009)" Merely because the 'parties' have deceitfully concocted a resolution based on fraud and the court has, regrettably, approved a settlement that allows a corporate action based on a foundation of illegal voting fraud – a reality explicitly acknowledged in the court's initial opinion on the proposed settlement (Transaction ID 70454004) and the discovery documents – does not in any way invalidate or miraculously eliminate the underlying justifications that led to the issuance TRO on February 27, 2023. This undeniably implies that the initial decision of the trial court to grant the TRO was rooted in a crystal-clear understanding of the substantive, significant, irreversible, and imminent financial damage AMC Common Stockholders will face.

4.  On August 16, 2023 an AMC Common Shareholder filed a Motion for Status Quo pending appeal (File No. 290, 2023) in the Delaware Supreme Court. For reasons not immediately apparent, the perplexing decision of the Chancery Court to lift the status quo order and deny a motion (Transaction ID 70620767) to let the status quo intact before a higher court can review an appeal. This decision diverges from the well-founded conclusions reached during the TRO proceedings, resulting in an apparent contradiction and oversight. Nevertheless Shareholders seek assistance against the fraud they suffered in higher courts. The NYSE cannot and should not ignore the exceptional and evolving circumstances around the case.

5.  According to Rule 9840. Issuance of Temporary Cease and Desist Order by Hearing Panel should be immediately issued:

(a) Basis for Issuance The Hearing Panel shall issue a written decision stating whether a temporary cease and desist order shall be imposed. The Hearing Panel shall issue the decision not later than ten days after receipt of the hearing transcript, unless otherwise extended by the Chief Hearing Officer or Deputy Chief Hearing Officer for good cause shown. A temporary cease and desist order shall be imposed if the Hearing Panel finds:
(1) that Enforcement has made a showing of a likelihood of success on the merits; and
(2) that the alleged violative conduct or continuation thereof is likely to result in significant dissipation or conversion of assets or other significant harm to investors prior to the completion of the underlying disciplinary proceeding under the Rule 9200 and 9300 Series.
(b)Content, Scope, and Form of Order A temporary cease and desist order shall:
(1) be limited to ordering a Respondent (and any successor of a Respondent, where the Respondent is a member organization) to cease and desist from violating a specific rule or statutory provision, and, where applicable, to ordering a Respondent (and any successor of a Respondent, where the Respondent is a member organization) to cease and desist from dissipating or converting assets or causing other harm to investors;
(2) set forth the alleged violation and the significant dissipation or conversion of assets or **OTHER SIGNIFICANT HARM TO INVESTORS** that is likely to result without the issuance of an order;

There should be no confusion here, if the conversion will be granted and exercised by the NYSE – on which basis to do so, the NYSE will take responsibility in allowing FRAUD to happen upon millions of shareholders, Pandora's box will be open and the NYSE might see unknown consequences in reputation damages and years of following litigations. I really hope your compliance department is going to do the right thing and stop this fraud from further continuing.

Sincerely,
Alexander Holland

829.   On August 21st, 2023, Rose Izzo's application to reimpose the Status Quo Order was denied. The same day, Rose Izzo withdrew her interlocutory appeal in the Court of Chancery.

830.   On August 21st, 2023, the Supreme Court of the State of Delaware denied Rose Izzo's motion for a status quo order pending appeal.

## August 24th, 2023 Conversion Reverse Split is Effectuated

831.   On August 24th, 2023, AMC effectuated a draconian 10:1 Reverse Stock Split, a move that concomitantly involved the conversion of APE shares back into AMC common shares. This structural change fundamentally altered the landscape, resulting in a revised total authorization of 550 million shares of the certificate (post-split). Simultaneously, approximately 158,382,446 shares remained outstanding (post-split). However, this transformation came at a considerable cost, leading to an astronomical and egregious dilution of AMC Common stockholders, **measuring a staggering 1749%**. The repercussions of this dilution are palpable and profound.

832.   As a result, the AMC share price plummeted from its peak on June 2nd, 2021, commanding a post-split adjusted value of $726.20, to a meager $4.38 on February 9th, 2024. This precipitous decline amounts to a remarkable -99.01%, descending even below the pandemic-induced market valuation of the company. For household stockholders, this saga epitomizes sickening financial pain through unprecedented dilution. Their cost average has surged tenfold, potentially resting in a range between $50 and $150 for millions of people, with a striking reduction of 90% in their holdings. These stockholders, who were once cordially praised as heroes by the fiduciaries themselves for salvaging the company, now find themselves bereft of any tangible returns on their investments. Their property has been managed in a manner that, over a span of merely 2.5 years, has resulted in a profound transformation from praised saviors to holders of worthless assets with their investments.

833.   On August 25th, 2023, AMC converted outstanding APEs to Common Stock.

834.   On August 28th, 2023, AMC issued the settlement consideration, which was perceived by stockholders to offer no real value. On August 25th, 2023, AMC stock closed at $12.43, but on August 28th, 2023, it opened at $11.90 and closed at $11.07. Even on August 29th, 2023, AMC stock closed at $10.91. By early September 2023, AMC was trading in the $7 and $8 range. The perceived value of the "new" AMC shares provided by the proposed settlement was

swiftly eroded by the declining trading value of AMC stock, as warned by the AMC Objectors in the AMC Community Objection Brief.

835.    The Reverse Stock Split, coupled with the share increase, facilitated the conversion of all outstanding AMC Preferred Equity Units into shares of Class A common stock. Based on 995,406,413 AMC Preferred Equity Units outstanding as of June 30th, 2023, an aggregate of 99,540,641 shares of Class A common stock were issued as part of the Conversion. Following the Reverse Stock Split, Conversion, and Settlement Payment, there are, as of September 1st, 2023:

Outstanding shares of Class A common stock:  **158,382,446**

836.    AMC also retains the potential and authorization to issue up to 550,000,000 shares of AMC Class A common stock. The adjusted comparison of the split and conversion results in a mind-blowing 1449% dilution.

837.    On August 28th, 2023, Theodore Kittila made an application with Judge Zurn in the consolidated action No. 2023-0215-MTZ, for an Interim Award of Attorneys' Fees and Expenses. [389]

838.    Sometime in September, 2023, Mark Lebovitch, one of the lead counsel in the consolidated action No. 2023-0215-MTZ, retired.

839.    On September 6th, 2023, AMC entered into an equity distribution agreement with Citigroup Global Markets Inc., Barclays Capital Inc., B. Riley Securities, Inc., and Goldman Sachs & Co. LLC as sales agents. This agreement allowed for the sale of up to 40,000,000 shares of Class A common stock, from time to time, through an ATM offering program.

840.    On September 13th, 2023, AMC announced the completion of its previously disclosed ATM offering initiated on September 6th, 2023. Despite the offering, the company only managed to raise a modest sum of $325.5 million in cash, with shares being sold at an average price of approximately $8.14 per share (pre-adjusted price = $0.814). This offering resulted in a significant increase in the company's float by 25%, leading to substantial dilution for existing shareholders. The extent of dilution, calculated at an astonishing 1815%, highlights the significant impact on existing shareholders' ownership stakes.

---

[389] DI 655 for Case 2023-0215-MTZ

841.    On September 13th, 2023, there were 198,382,446 AMC shares of common stock issued and outstanding.

842.    On September 15th, 2023, Judge Zurn granted the stipulation and proposed order of dismissal in the consolidated action No. 2023-0215-MTZ.  Lead Counsel's fee fell—from the $20 million they had initially sought to $5,759,087.46. Franchi and ACER were each awarded $5,000 Incentive Awards which shall be paid out of the Fee and Expense Award. The Fee and Expense Award shall be paid by the AMC Defendants and/or their insurers pursuant to the terms of the Stipulation.

**Lead Counsel** -  $5,759,087.46
**Franchi -** $5,000.00
**ACER  -** $5,000.00

843.    The August 11th, 2023 Memorandum and Decision contemplated that Lead Counsel would be paid 12% of the value of the Settlement Shares, based on the closing price of AMC common stock on the date Settlement Shares are issued, making any necessary adjustments to account for dilution to the legacy common stockholders.  The Settlement Shares were issued on August 28th, 2023 and the closing price of AMC common stock was $11.07 per share.

844.    Also on September 15th, 2023, Judge Zurn rendered a decision to Theodore Kittila's August 28th, 2023 application for an Interim Award of Attorneys' Fees and Expenses and Rose Izzo's application for an incentive fee.  Judge Zurn awarded:

**Theodore Kittila** -  $212,700.00
**Rose Izzo -** $3,000.00

845.    On October 12th, 2023, three months after Sakoya Blackwood's sentencing memorandum was published on the New York Southern District Court docket, Liz Hoffman at Semafor published an article at 5:59 am EST titled, "AMC's CEO shared sexually explicit photos and texts in blackmail plot". [390]   The question remains: How did Liz Hoffman identify Aron as the Victim / Victim-1?

846.    Following the Semafor article being published, 31 minutes later, at 6:30 am EST,  Aron tweeted out to AMC stockholders giving them notice,

---

[390] https://www.semafor.com/article/10/11/2023/amc-ceo-adam-aron-amcs-ceo-shared-sexually-explicit-photos-and-texts-in-blackmail-plot

"Throughout my long career, I have successfully led many prominent companies and am proud of my impeccable reputation. In recent years, AMC's millions of retail shareholders have played a central role in my life. Your passion for our company is one of my key motivators in doing all I can to help AMC survive so that eventually we can thrive. Because you are so important to me, there is a matter I want to share with you.  By definition, I live my life in the public eye.  Unfortunately, last year I became the victim of an elaborate criminal extortion by a third party who was unknown to me related to false allegations about my personal life. Rather than give in to blackmail, I personally engaged counsel and other professional advisors and reported the matter to law enforcement. I did so knowing I risked personal embarrassment. But with my access to resources, if I did not stand up against blackmail, who could? A vigorous federal criminal investigation ensued which resulted in the extortionist being arrested, convicted of a felony, and spending nearly a year in jail. At the time of the arrest, the U.S. Attorney for the Southern District of New York commended my having reported the matter to the FBI and the U.S. Department of Justice.  This was entirely a personal matter.  I was asked by law enforcement to keep this matter confidential during their investigation and subsequent court case.  Shortly after the extortionist's July 2023 sentencing, I informed AMC's Board of Directors which thoroughly reviewed these events with independent outside counsel at WilmerHale. As I said above, this indeed was entirely a personal matter, and the matter is closed.  And now, I am reporting this to all of you.  I could not end this message without again thanking you for your support -- as well as emphasizing my extreme gratitude to the U.S. Attorney's Office for the Southern District of New York and to the FBI for their diligent, skillful, and professional handling of this unfortunate matter." [391]

847.   Aron's blackmail continued throughout the pendency of the consolidated class action lawsuit in Delaware Chancery case number 2023-0215-MTZ. However, it was not publicly disclosed to Judge Zurn or AMC stockholders until after the conversion reverse split theft that occurred against AMC stockholders.

848.   On October 13th, 2023, Rose Izzo filed her notice of appeal with the Delaware Supreme Court,

"does hereby appeal to the Supreme Court of the State of Delaware from the Report and Recommendation of the Special Master Regarding Objections to Proposed Settlement dated June 21, 2023 by Special Master Corinne Elise Amato (the "Report"); the Opinion dated July 21, 2023 (the "First Opinion"); the Memorandum Opinion dated August 11, 2023 (the "Second Opinion"); the interlocutory Order Certifying Class and Approving Settlement dated August 11, 2023 (the "Interlocutory Order") certifying a class under Court of Chancery

_____

[391] https://twitter.com/CEOAdam/status/1712415394454208905?lang=en

Rule 23, approving the adequacy of the proposed representatives of the class, approving the reasonableness of the proposed settlement, and approving an award of attorneys' fees and expenses and the payment of incentive awards; and the final order of dismissal (the "Final Order") dated September 15, 2023, all of the Court of Chancery, in and for New Castle County, by the Honorable Vice Chancellor Morgan T. Zurn (except for the Report), in case number 2023-0215-MTZ in that court." [392]

849.    On October 19th, 2023, Aron notified Norwegian Cruise Line Holdings Ltd. that he was resigning from the company's Board of Directors, effective immediately. [393]

850.    On November 7th, 2023, there were 198,356,898 AMC shares of common stock issued and outstanding. [394]

851.    On November 15th, 2023, HYMC effectuated a one-for-ten (1-10) reverse split of its Class A Common Stock.

852.    On December 1st, 2023, Rose Izzo filed her appeal with the Supreme Court of the State of Delaware.

853.    On January 26, 2024, Theodore Kittila (Attorney for Rose Izzo) filed the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court. This document is part of the appeal process for the appeal of case  CONSOL. C.A. NO. 2023-0215-MTZ from the

---

[392] DI 672
[393]

https://www.streetinsider.com/Board+Changes/Norwegian+Cruise+Line+%28NCLH%29+Announces+R esignation+of+Adam+Aron+from+Board/22296444.html
[394] https://investor.amctheatres.com/sec-filings/all-sec-filings/content/0001411579-23-000087/amc-20230930x10q.htm

COURT OF CHANCERY OF THE STATE OF DELAWARE. On pages 1-2 in the preliminary statement, Kittila states: "Reversal and remand remain AMC stockholders' only hope for recovery following the economic disaster that Plaintiffs dismissed as "speculation." A936. While Plaintiffs boast of increasing common stockholders "pro forma ownership of post-Conversion AMC by nearly 3%," they ignore AMC's post-Conversion collapse. PAB at 1. The Class lost millions. Plaintiffs lost nothing: their incentive awards exceed their investments. And the hemorrhaging continues: AMC now trades below $5/share, far less than the approximately $28/share post-Conversion price Plaintiffs predicted. A453. Defendants "rig[ged] the Special Meeting vote to overcome common stockholder opposition and the defeating presence of nonvotes." MO at 76. Plaintiffs then sold Defendants insurance against predictable devastation. True, Defendants could have resubmitted their proposal following the amendments to DGCL Section 242. PAB at 35. But had they won the vote, Class claims would not have been, as Plaintiffs maintain, "statutorily mooted." Id. at 1 [The Plaintiff's Answering Brief and Defendants' Answering Brief (together, the "Answering Briefs") are abbreviated "PAB," and "DAB," respectively. Unless otherwise defined herein, capitalized words have the meaning set forth in Appellant's Opening Brief ("OB")]. Defendants gained far greater protection through an overbroad release. See Section I, infra. Appellees urged the trial court to the erroneous conclusion that "Plaintiffs suffered the same type of harm proportionate to their common stock holdings as every other class member." MO at 24. They did not. Plaintiffs consider that the Settlement's "equitable . . . relief" included lifting the Status Quo Order. PAB at 31. That "relief" vindicated stockholders who voted "yes"—the beneficiaries of Defendants' scheme, not the victims. As a matter of due process, Plaintiffs' admission that they would not have enforced an injunction rendered a non-opt-out settlement uncertifiable and made Plaintiffs inadequate representatives. See Sections II & III, infra. Plaintiffs' deal required no contribution from the individual Defendants, but instead diluted APE-holders not accused of wrongdoing. Defendants took no position on Plaintiffs' $20 million fee application. MO at 90 n.319. Yet Defendants' actions inflicted, and continue to inflict, enormous economic harm on stockholders who opposed dilution.2 [See, e.g., AR48 (stockholder requesting opt-out following losses of "75%" of investment of "life savings of $554,707.35"); AR51 (stockholder holding 1,000 shares and requesting opt-out).] Delaware law should not leave dissenting

stockholders without a remedy."[395] Kittila calls out AMC's misrepresentations regarding their bankruptcy risk and cash flow reporting, on Pages 3-4, Kittila states, "Plaintiffs' reliance upon uncited facts reinforces the gulf between them and the stockholders they purported to represent. In February 2023, Plaintiffs maintained that AMC's non-public internal documents did not "indicate that the Company faced bankruptcy or any other existential threat." A184. AMC's 2022 forecast showed positive cash positions without any capital raise or additional borrowing. PAB at 34. Discovery showed AMC was set to exceed these expectations, even without $80.3 million in APE sales. Compare id. with AR54 (February 2023 email anticipating Q1 cash balance of $428.6m). Actual results were even better. PAB at 15 n.38. Plaintiffs' opinion changed once settlement (and a potential $20 million fee) loomed. But when the trial court asked Plaintiffs to identify which discovery document convinced them that AMC "was facing imminent bankruptcy," they did not. Op. at 61 n.194; MO at 81. Plaintiffs now offer recent data, without attribution or context, to contend that AMC "bled money" during 2023 "while selling almost a billion dollars' worth of equity." PAB at 20 n.63. AMC's SEC filings tell a different story. AMC held $729.7 million in cash and cash equivalents after its "most successful third quarter results" in its history and the "second consecutive quarter" of "positive net income." Ex. 1 at 1. Yes, AMC raised $865 million in equity by December 11, 2023. Ex. 2 at 1. But $440 million was used to pay down debts, most not due until 2026. Id. Paying down debt with new equity is restructuring, not "bleeding" cash or a sign of insolvency. At settlement, Plaintiffs believed that the Conversion would save AMC from bankruptcy and set it on an "upward trajectory." A721. Dissenting stockholders believed the exact opposite. Plaintiffs had a remedy: dismiss their lawsuit and vote for Defendants' transaction. Allowing them to speak for dissenters and strip them of their rights is the core legal error at issue." [396] Kittila reported that the approval of the proposed settlement violates of due process regarding the non-opt out and the lack of notification of the settlement class, and that absentee shareholders had their rights taken away. Regarding the due process violations, on pages 8-10, Kittila stated: "Neither brief confronts the obvious due process problem. The trial court closed the record on June 30, 2023, and it did not consider submissions thereafter. MO at 6. Because

---

[395] Page 1-2 of the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court.  Need link to supreme court docket
[396] Page 3-4 of the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court.

the settlement may release securities claims related to subsequent statements (PAB at 25), "absent class members . . . could have their claims released without an opportunity to be heard." In re Celera Corp. S'holder Litig., 59 A.3d 418, 433-34 (Del. 2012) (quoting Edward P. Welch, et al., Mergers and Acquisitions Deal Litigation Under Delaware Corporation Law § 11.01 (2012)). Plaintiffs sold Defendants immunity from violations of Delaware law and federal securities claims for over a month after the settlement hearing for any material misrepresentation connected "in any way" to an allegation in the Complaints. This violates due process and disregards PHLX's limitations. Similarly, the release violates Griffith's holding. Because "a release that directly or indirectly binds absent interested parties is limited by the Due Process Clause," it may not "release claims based on a set of operative facts that will occur in the future." 283 A.3d at 1134, 1137. Appellees cannot cabin Griffith to releases that explicitly mention future stockholder votes. See PAB at 26-27; DAB at 28-29. The Griffith Court also analyzed future events unrelated to any vote—such as a future corporate scandal— that might implicate an overbroad release. Id. at 1136. Ms. Izzo offered a similar example: a federal securities claim. OB at 26. Appellees did not respond because the example is fatal to their argument. Damages are an element of a federal securities claim under Rule 10b-5, and losses often may not be measured until the market responds to the correction of a misleading statement. See, e.g., Stanley Black & Decker, Inc. v. Gulan, 70 F. Supp. 3d 719, 727-28 (D. Del. 2014) (discussing economic loss and loss causation). Assume an AMC stockholder purchased shares in reliance upon Aron's statements related to this action during the class period. If those statements are revealed to be materially misleading a year later, a securities claim would "relate to" ownership during the class period since that is when the purchase occurred. But it would also arise out of unknowable future events. Defendants' need for this overbroad protection is obvious given the postsettlement catastrophe. In class settlements, "[d]efendants are motivated to reach an agreement that provides the broadest possible protection from future disputes." Griffith, 283 A.3d at 1133-34. Contrary to Plaintiffs' Brief, Defendants could not have protected themselves through a new, fair vote. PAB at 1, 35. Stockholder ratification does not extinguish claims: it applies a deferential standard of review. Griffith, 283 A.3d at 1136. That protection only extends to the specific transaction that Defendants seek to approve; thus, a vote on the Conversion would not affect claims arising from the creation of the APEs (let alone tangential claims like Hycroft). See Gantler v.

Stephens, 965 A.2d 695, 713 (Del. 2009). Defendants, while pursuing an unconstitutionally overbroad release, never echoed Plaintiffs' assurance that after the settlement "[AMC's] market cap would be in an upward trajectory." A721. They anticipated the value of protection greater than they could achieve through a fair vote, a PHLX- and Griffith-complaint release, or even victory at trial." [397]   On Page 12, Kittila states: "PHLX and Griffith protect the constitutional due process rights of absent stockholders. If an appropriate settlement were truly "unworkable," then the settlement must yield, not constitutional rights. An appropriate release was available. But it would not have protected Defendants from the looming postsettlement disaster." [398] On page 15, Kittila explains that the "Non-Opt-Out Settlement is a Denial of Due Process and an Abuse of Discretion", and states, "Here, Plaintiffs failed to represent "the interests of particular class members, triggering due process concerns." Celera, 59 A.3d at 418. Plaintiffs' chosen relief did not simply differ from that "thought to be what would be desired by other members of the class." Prezant v. DeAngelis, 636 A.2d 915, 924 (Del. 1994) (quotation omitted)). Plaintiffs viewed the lifting of the Status Quo Order as part of the settlement's "relief." PAB at 31. They lauded the Conversion as benefitting AMC, asserting there was "no basis to assume that the market cap would be cut by half" and that it would put "market cap . . . in an upward trajectory." A721. Not only were Plaintiffs wrong, they sat in diametric opposition to the stockholders whose will Defendants subverted—those who wished to vote "no." MO at 76. It was "a violation of due process to permit them to obtain a judgment binding absent plaintiffs." Prezant, 636 A.2d at 924 (quotation omitted)." [399]   Regarding the need for an opt out given the shareholder response, on pages 17-18, Kittila states: "This case attracted an unprecedented number of objectors, some of whom traveled great distances to make their voices heard. A783-84, A796. The number of opt-outs would undoubtedly have been greater if (a) stockholders were given notice of an opt-out right, and (b) notice were distributed in a manner designed to let them exercise that right.10 OB at 12 n.4. [Footnote 10 - Plaintiffs refer to "only" 2,850 timely objectors (PAB at 36)—but omit that the parties gave

---

[397] Pages 8-10 of the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court.

[398] Page 12 of the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court.

[399] Page 16 of the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court.

the majority of recipients no more than two business days to respond. OB at 12 n.4. Appellees' failure put the trial court in the awkward position of walking back its earlier order that notice "will only work if postcards will generally be delivered by May 24, 2023." MO at 39.]  Given the hurdles set before dissenting stockholders, the fact that thousands responded—when normally few appear—speaks to the need for an opt-out."[400]   On Pages 18-19, Kittila states: "Appellees ignore viable claims preserved by an opt-out: the claims Plaintiffs advanced in the trial court. PAB at 30-31. Allegheny's complaint sought "damages in an amount which may be proven at trial." AR41. At settlement approval, Plaintiffs maintained that "[t]he claims against the AMC Board for its conduct involve both equitable relief and monetary damages." A333 (emphasis added); SMR at 71 (same). At the settlement hearing, Plaintiffs' counsel discussed the possibility of post-Conversion monetary damages if AMC avoided bankruptcy, estimating that "the maximum post-trial damages is [$]692 million." A729-30, A733. An opt-out would have preserved dissenters' share of the $692 million in damages claims that Plaintiff identified. That analysis only includes claims Plaintiffs prosecuted, not the numerous claims Plaintiffs didn't. For instance, the trial court described the truthfulness of Defendants' statements "accompanying the APE issuance that no conversion was intended" as a "thin reed" to uphold an injunction. MO at 72. Perhaps. But the trial court put no value on federal securities claims arising from those statements. Id.; cf. A729 (Plaintiffs' counsel arguing that a higher post-transaction share price implies lower potential post-trial damages).  Plaintiffs' contention that "no viable claim" for money damages exists contradicts their $692 million trial court damages estimate. That estimate adopted Plaintiffs' Panglossian theory that Defendants' transaction would not harm AMC. We now know actual damages were far worse."[401]   On Page 21, Kittila writes on how the plaintiffs in case 2023-0215-MTZ did not represent the class, Kittila states: "Plaintiffs sued purporting to defend stockholders from Defendants' scheme to frustrate stockholders' ability to vote "no." They settled championing the cause of stockholders who voted "yes." The spirited opposition to Plaintiffs' settlement merely highlights a problem

---

[400] Page 17-18 of the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court.
[401] Pages 18-19 of the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court.

that would exist no matter how many stockholders objected."[402]  On page 24, Kittila calls out the eligibility of one of the plaintiffs (Franchi), Kittila states: "In federal court, AMC stockholders would have two protections under the Private Securities Litigation Reform Act ("PSLRA"). First, it limits "professional plaintiffs" to five securities class actions in a three-year period. See 15 U.S.C. §78u4(a)(3)(B)(vi). Franchi's litigation history would call his leadership into question."[403]  On Page 26, Kittila states: "Due process and this Court's precedent in Prezant precluded certification of Franchi and Allegheny as representatives. But Plaintiffs' small stockholdings, coupled with the unusual last-minute refusal of the only significant stockholder plaintiff to support the settlement, call into question the discretionary decision to deem these stockholder plaintiffs adequate."[404]  On Page 27, Kittila concludes: "For the foregoing reasons, and those set forth in the opening brief, reversal and remand of the trial court's orders approving the settlement and dismissing the action is appropriate to preserve valuable claims of dissenting stockholders."[405]

854.    The calamity that Lead Counsel, Franchi, and ACER derided as "wild speculation" during the Settlement Hearing has indeed materialized: AMC's market capitalization plummeted following the conversion reverse split. Within a few months, it declined from $4.50 billion to $790 million, mirroring the fate of tickers such as OPGN, AVGR, and AGRX, as Jon Merriman's emails eerily foreshadowed on May 27th, 2022, several months before APE was even launched.

---

[402] Page 21  of the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court.
[403] Page 24 of the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court.
[404] Page 26 of the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court.
[405] Page 27 of the APPELLANT'S REPLY BRIEF for Case No. 385, 2023 to the Delaware Supreme Court.

855.   The Project Popcorn scheme has led to AMC's market capitalization declining from $23.7 billion in November 2021 to only $780 million in February 2024.

856.   The AMC Defendants and Lead Plaintiffs procured this settlement based on concealment rather than disclosure and by fraud.   The scheme involved not only the reverse split but also the plan to recruit "friendly" plaintiffs to manipulate a lawsuit that ultimately yielded no real benefit for shareholders but provided releases (protection) for the AMC Board. Allegheny and Franchi, as Plaintiffs, opposed any efforts to provide shareholders with discovery, refrained from conducting any depositions, opposed motions from pro se shareholders to intervene, withheld documents, failed to notify their class in a timely manner, frequently misclassified compliant shareholders on the objection list, and collaborated with the AMC defendants to secure releases as part of a non-opt-out settlement.

## COUNT I

Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder

(Against the Project Popcorn Defendants)

857.   Plaintiff Willis incorporates by reference paragraphs 1 through 856 as if more fully set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Willis respectfully requests that the Court grant the following relief jointly and severely against Defendants:

A.  Compensatory damages in an amount to be determined at trial;
B.  Punitive damages against
C.  Such other further relief as the Court may deem just and proper.

I.

**DATED:**     February 23rd, 2024          Respectfully submitted,


By: _____


By: _____