No. 24-40585

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**NELSON E. WILLIS,**
**Plaintiff–Appellant,**

**v.**

**ADAM M. ARON,**
**Defendant–Appellee.**

**On Appeal From The**
**United States District Court**
**For The Eastern District of Texas,**
**No. 4:23-CV-732**

## EMERGENCY PETITION FOR WRIT OF MANDAMUS AND INVOCATION OF SUPREME COURT SUPERVISORY AUTHORITY

**(Filed pursuant to Supreme Court Rule 20 and 28 U.S.C. § 1651(a) (All Writs Act); FRAP 2, 21, 27(a)(1)–(4), 35(b)(1)(A)–(C), 40(d)(1), 41(b), 36; Fed. R. Civ. P. 60(d)(3); TRCP 162; 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. §§ 1961–1964, 1506, 1519, 241, 242; and under the inherent and constitutional authority of this Court and the Supreme Court of the United States.)**

Federal Rule 60(d)(3) codifies the inherent power recognized in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), empowering every federal court to vacate judgments obtained through fraud on the court. That duty extends to appellate courts when their own orders originate from or perpetuate the underlying fraud.

<u>**Incorporation by Reference**</u>

Petitioner hereby incorporates by reference all pleadings, motions, exhibits, sworn declarations, and evidentiary materials previously filed in the underlying state, district, and appellate proceedings. This incorporation is made pursuant to Fed. R. Civ. P. 10(c) and Fed. R. App. P.

28(i), and is intended to preserve the full evidentiary record, avoid duplication, and ensure that all prior submissions remain part of the record for review under this Petition.

## JURISDICTION AND AUTHORITY

This Petition is brought pursuant to the All Writs Act, 28 U.S.C. § 1651(a), empowering federal courts to issue all writs necessary in aid of their respective jurisdictions. The Fifth Circuit has jurisdiction under FRAP 21 to correct abuses of discretion and failures of jurisdiction within its own proceedings, and the Supreme Court retains concurrent authority under Rule 20 to exercise supervisory review when such relief is necessary to protect constitutional rights and the integrity of the judicial process. Because the challenged orders (Docs. 131, 296-1, and 304-2) arose within this Court's own proceedings, mandamus lies properly in aid of its jurisdiction.

## TABLE OF AUTHORITIES

### Federal Statutes
• 15 U.S.C. § 78j(b) — Securities Exchange Act of 1934
• 15 U.S.C. § 78ff — Penalties for willful violations
• 17 C.F.R. § 240.10b-5 — SEC Rule 10b-5 (fraud and misrepresentation)
• 18 U.S.C. § 4 — Misprision of felony (duty to report)
• 18 U.S.C. § 1506 — Theft or falsification of records or process in court
• 18 U.S.C. § 1519 — Destruction, alteration, or falsification of records in federal investigations
• 18 U.S.C. §§ 1961–1964 — Racketeer Influenced and Corrupt Organizations Act (RICO)
• 18 U.S.C. § 2071 — Concealment or removal of public records
• 18 U.S.C. §§ 241–242 — Conspiracy against rights; deprivation of rights under color of law
• 28 U.S.C. § 1651(a) — All Writs Act
• Fed. R. Civ. P. 11(b) — Representations to the court; sanctions for false filings
• Fed. R. Civ. P. 60(d)(3) — Independent action for fraud on the court
• Fed. R. App. P. 2 — Suspension of rules in the interest of justice
• Fed. R. App. P. 21 — Writs of mandamus and prohibition
• Fed. R. App. P. 25(a)(2)(B) — Filing upon delivery to the clerk
• Fed. R. App. P. 27(a)(3)(A) — Ten-day response rule for motions
• Fed. R. App. P. 35(b)(1)(A)–(C) — Criteria and procedure for en banc consideration
• Fed. R. App. P. 40(d)(1) — Petitions for rehearing; ministerial duties of clerk
• Fed. R. App. P. 41(b) — Mandate and stay of mandate
• Texas Rule of Civil Procedure 162 — Voluntary nonsuit; limits on dismissal after testimony begins;

### United States Supreme Court Rules
• Supreme Court Rule 20 — Procedure for extraordinary writs (mandamus, prohibition, habeas)
• Supreme Court Rule 44 — Rehearing

### United States Supreme Court Decisions
• Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) — Appellate duty to vacate judgments procured by fraud upon the court

• Cheney v. United States District Court, 542 U.S. 367 (2004) — Standards for issuance of writ of mandamus
• Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33 (1980) — Extraordinary nature of mandamus
• Bounds v. Smith, 430 U.S. 817 (1977) — Right of access to the courts
• Bullock v. United States, 763 F.2d 1115 (10th Cir. 1985) — Definition of "fraud upon the court"

## Federal Appellate and District Decisions
• Rozier v. Ford Motor Co., 573 F.2d 1332 (5th Cir. 1978) — Fraud on the court and vacatur standard
• Yohey v. Collins, 985 F.2d 222 (5th Cir. 1993) — Failure to respond to motions constitutes waiver
• Procup v. Strickland, 792 F.2d 1069 (11th Cir. 1986) — Limits on filing restrictions; access to courts
• In re United States, 397 F.3d 274 (5th Cir. 2005) — Abuse of discretion standard for mandamus relief
• United States v. Simpson, 460 F.2d 515 (9th Cir. 1972) — Intent requirement for § 2071 violations
• United States v. DeGroat, 30 F. 764 (E.D. Mich. 1887) — Knowledge that document is a public record under § 2071
• United States v. Rosner, 352 F. Supp. 915 (S.D.N.Y. 1972) — Scope of record falsification under § 2071

## Constitutional Provisions
• U.S. Const. art. III, § 1 — Judicial power vested in courts
• U.S. Const. amend. I — Right to petition for redress of grievances
• U.S. Const. amend. V — Due Process Clause
• U.S. Const. amend. XIV — Equal Protection and Due Process Clauses

## Department of Justice Authority
• DOJ Criminal Resource Manual § 9-66.400 — Protection of Public Records, Documents and Other Government Information

## GOVERNING RULES AND STANDARDS FOR MANDAMUS

This Petition is governed by the All Writs Act, 28 U.S.C. § 1651(a), and Federal Rule of Appellate Procedure 21.
Section 1651(a) authorizes "[a]ll courts established by Act of Congress … to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The writ of mandamus is an extraordinary remedy reserved for cases involving (1) a clear abuse of discretion or usurpation of judicial power; (2) no other adequate means of obtaining relief; and (3) a clear and indisputable right to issuance of the writ. See Cheney v. U.S. Dist. Court, 542 U.S. 367, 380–81 (2004); Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33 (1980); In re United States, 397 F.3d 274 (5th Cir. 2005).

Federal Rule of Appellate Procedure 21 implements that authority by setting forth the procedural requirements for filing a petition for a writ of mandamus in the courts of appeals.

Under these authorities, mandamus is proper where a lower tribunal or clerk has failed to perform a ministerial duty, has acted in clear defiance of law, or has obstructed a party's access to justice. The Supreme Court retains concurrent supervisory authority under Rule 20 to issue such writs directly when necessary to preserve the integrity of the judicial process nationwide.

## Standard for Issuance

Under FRAP 21(a)(1) and the Supreme Court's decisions in Cheney v. U.S. Dist. Court, 542 U.S. 367 (2004) and Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33 (1980), mandamus issues only where: (1) the petitioner has no other adequate means of relief; (2) the right to issuance of the writ is clear and indisputable; and (3) issuance is appropriate in the court's discretion. All three criteria are met here.

No avenue of appeal or rehearing remains available, as the panel has both refused to docket filings and imposed a filing ban. The absence of any procedural vehicle for review or redress makes mandamus the sole remaining means to protect Petitioner's rights and the Court's own integrity.

## TO THE HONORABLE JUSTICES OF THE UNITED STATES SUPREME COURT, AND TO THE JUDGES OF THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT:

## Incorporation by Reference

Petitioner hereby incorporates by reference all pleadings, motions, exhibits, sworn declarations, and evidentiary materials previously filed in the underlying state, district, and appellate proceedings. This incorporation is made pursuant to Fed. R. Civ. P. 10(c) and Fed. R. App. P. 28(i), and is intended to preserve the full evidentiary record, avoid duplication, and ensure that all prior submissions remain part of the record for review under this Petition.

Petitioner hereby demands the immediate exercise of the Supreme Court's supervisory jurisdiction under Rule 20 and 28 U.S.C. § 1651(a). The relief sought is not merely preserved for Certiorari review but is presently invoked, as the Fifth Circuit's actions have extinguished all other lawful remedies. This Petition therefore functions simultaneously as an Emergency Petition for Writ of Mandamus and as a formal request for direct Supreme Court supervision and intervention to halt continuing judicial obstruction of justice and deprivation of due process.

## Exhibit D – Internal Corporate Communications Demonstrating Securities-Fraud Conspiracy

Incorporated herein by reference as Exhibit D are certified internal communications and email chains among AMC Entertainment Holdings Inc., Citigroup Global Markets Inc., Antara Capital

LP, B. Riley Financial Inc., and D.F. King & Co., including correspondence bearing the personal authorization or participation of Defendant Adam M. Aron, Chief Executive Officer of AMC.

These records, produced under subpoena and preserved in the certified eROA, demonstrate coordinated planning and execution of "Project Popcorn," a shareholder-vote manipulation and synthetic-dilution scheme designed to deceive retail investors and obstruct discovery. The communications show that Defendant Aron personally directed or approved actions to conceal the scheme's mechanics from regulators and the courts.

Suppression or omission of these emails from the appellate record constitutes an independent act of record falsification under 18 U.S.C. §§ 1506, 1519, and 2071, and a deprivation of rights under 18 U.S.C. §§ 241–242. Petitioner submits Exhibit D as empirical proof that the underlying fraud extends from the corporate defendants through the judicial process now under review.

## STATEMENT UNDER RULE 27.4

No conference statement is required because the relief sought arises from the Court's non-discretionary duty to correct fraud upon the court and to prevent continuing obstruction of justice.

## IMMEDIATE INVOCATION OF SUPREME COURT SUPERVISORY JURISDICTION

Pursuant to 28 U.S.C. § 1651(a) and Supreme Court Rule 20, Petitioner expressly invokes the supervisory authority of the Supreme Court of the United States to protect his constitutional right of access to the courts and to prevent further judicial obstruction of justice, due process and suppression of certified eROA empirical evidence of securities fraud committed by Defendant-Appellee within the Fifth Circuit.

## INTRODUCTION

This case originates in the 235th Judicial District Court of Texas, where an act of fraud upon the court occurred when Defendant-Appellee Adam M. Aron and his counsel violated Texas Rule of Civil Procedure 162 when Defendant filed a Notice of Nonsuit to evade discovery, hostile witness testimony, lawfully issued and served subpoenas, subpoenas duces tecum, production of documents, emails and their discovery obligations, and to evade a second scheduled day of hearings August 7, 2023, involving live witness testimony, regarding insider communications and vote-rigging under Project Popcorn. By suppressing subpoena evidence central to a live Rule 162 violation, the Court perpetuated an act of evidentiary erasure equivalent to tampering under 18 U.S.C. § 1519.

Those subpoenas—served at AMC Corporate Headquarters in Leawood, Kansas on AMC Entertainment executive John Merriwether, Vice President, Capital Markets & Investor Relations, —were designed to expose a coordinated scheme of shareholder and securities fraud. The lower court, and now this Court, have suppressed and effectively erased those proceedings

and records in order to protect the Defendant-Appellee. By erasing these subpoena records, each
successive court became an instrument of the same fraud it was constitutionally bound to expose.

Petitioner Nelson E. Willis therefore respectfully but urgently petitions for a writ of mandamus
vacating three interrelated orders of this Court—Document 131 (June 25 2025), Document 296-1
(October 14 2025), and Document 304-2 (October 16 2025). Together these orders form a
continuous pattern of judicial obstruction and due-process denial designed to suppress certified
eROA evidence revealing a RICO-level securities-fraud enterprise involving AMC
Entertainment Holdings Inc., its CEO (Defendant-Appellee Adam M. Aron), and its financial
partners Citigroup Global Markets, Antara Capital, B. Riley Financial, and D.F. King.

Mandamus is the only adequate remedy to restore jurisdiction, lift the unconstitutional restraint,
and compel entry of final judgment for Petitioner in the amount of $51,500,000 as pled in
Appellant's Principal Brief (Document 43).

The issues presented here are not confined to one litigant. They implicate the structural integrity
of federal judicial review itself. When clerks or panels suppress certified evidence, erase
subpoena records, and silence petitioners through sanction orders, the pattern endangers every
citizen's constitutional right of access to the courts. The Supreme Court's supervisory
intervention is therefore necessary to restore confidence in the federal appellate process and
prevent recurrence of such institutional misconduct nationwide.

## STATEMENT OF FACTS

1. On July 26 and 31 2023 the Petitioner served subpoenas on AMC executive John
   Merriwether, Vice President, Capital Markets & Investor Relations, for internal emails
   and records concerning "Project Popcorn," a vote-manipulation and shareholder-dilution
   operation coordinated among AMC, Citigroup, Antara, B. Riley, and D.F. King.

2. Later that same day ( July 31 ) Defendant Aron's counsel filed a Notice of Nonsuit to
   terminate the state-court action minutes before close of business, in violation of Texas
   Rule of Civil Procedure 162 and with the intent to quash active subpoenas.

3. The state court and district court thereafter ignored the subpoenas and the Rule 162
   violation, dismissing the case without addressing the fraud. Petitioner timely sought
   federal review, carrying forward certified records of the subpoenas and Rule 162
   violation, which the district court then disregarded.

4. In the Fifth Circuit appeal, Appellee failed to respond to multiple motions within the ten-
   day window required by FRAP 27(a)(3)(A). Those defaults should have been treated as
   concessions under Yohey v. Collins, 985 F.2d 222 (5th Cir. 1993).

5. Order 131 (June 25 2025) summarily affirmed the dismissal without mentioning the
   subpoenas, TRCP 162, or the ten-day defaults.

6. Order 296-1 (October 14 2025, Chief Judge Elrod) mis-classified the Petition for Rehearing En Banc as a panel petition, blocking circulation to all active judges in violation of FRAP 35(b)(1)(A)-(C).

7. Order 304-2 (October 16 2025) imposed a $200 fine and prohibited further filings absent "life-threatening circumstances." That order issued while Document 303 remained pending, divesting the panel of jurisdiction. The Clerk then refused to docket Petitioner's Emergency Motion to Declare Order 304-2 Void, filed within two hours of that order.

8. These acts collectively constitute fraud upon the court and a deprivation of rights under color of law contrary to 18 U.S.C. §§ 1506, 1519, 241, and 242. The deliberate erasure and misclassification of subpoena records and pending motions constitutes falsification of court process in violation of 18 U.S.C. § 1506. Each act of suppressing certified evidence, deleting subpoena records, and refusing to docket filings constitutes obstruction under 18 U.S.C. § 1519.

## ARGUMENT

I. **Orders 131 and 296-1 Were Issued in the Absence of Jurisdiction and Concealed Material Facts.**
The panel affirmed a judgment procured through fraud by ignoring the TRCP 162 violation and subpoena record. A judgment obtained by fraud on the court is void ab initio. Because the underlying state action had not been lawfully nonsuited, the federal courts lacked jurisdiction over a void judgment. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944). Moreover, the concealment and removal of subpoena materials and eROA filings violate 18 U.S.C. § 2071, which criminalizes the concealment or removal of public records from a court's custody, further voiding any judgment built on such concealment. See United States v. Simpson, 460 F.2d 515 (9th Cir. 1972) (defining the mens rea element for § 2071 violations). Because material evidence was concealed and jurisdictional facts were misrepresented, those orders cannot stand.

II. **Order 304-2 Is a Constitutionally Void Prior Restraint and Act of Judicial Obstruction.**

A federal court may not silence a litigant for exposing institutional misconduct. The First Amendment protects the right to petition for redress of grievances; the Fifth and Fourteenth Amendments guarantee due process. Bounds v. Smith, 430 U.S. 817 (1977); Procup v. Strickland, 792 F.2d 1069 (11th Cir. 1986). The "life-threatening circumstances" ban is a judicial gag order inconsistent with the Constitution and ethically indefensible. The sanction and filing ban further operate as an obstruction of justice, insulating the Defendant-Appellee and the Court itself from scrutiny.

**III.** **The Refusal to Docket Tendered Filings Is a Ministerial Failure Correctable by Mandamus.**

Under FRAP 25(a)(2)(B) a paper is filed upon delivery to the clerk. Refusal to docket a properly tendered motion violates a ministerial duty. Mandamus is the appropriate remedy. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33 (1980).

**IV.** **Ignoring Ten-Day Defaults and Suppressing Pending Motions Constitutes Fraud on the Court.**

The panel's failure to acknowledge unanswered motions violates FRAP 27 and suppresses motions containing certified evidence of securities fraud and creates a false procedural record favorable to the Appellee. Such conduct meets the definition of fraud on the court recognized in Rozier v. Ford Motor Co., 573 F.2d 1332 (5th Cir. 1978).

As recognized in Bullock v. United States, 763 F.2d 1115 (10th Cir. 1985), fraud on the court arises when "the judicial machinery itself has been corrupted." That principle is squarely met here, where clerical officers altered the record to conceal subpoena evidence.

The knowing certification of false docket entries or omissions by officers of the court further contravenes Fed. R. Civ. P. 11(b), which prohibits misrepresentations to the tribunal. Such conduct, when directed at concealing evidence, reinforces a finding of fraud upon the court under Hazel-Atlas and Rozier.

**V.** **Judicial Obstruction and Suppression of Evidence to Protect the Defendant-Appellee constitute Denial of Due Process.**

Each act of suppressing certified evidence, deleting subpoena records, and refusing to docket filings constitutes obstruction under 18 U.S.C. § 1519.
When judicial officers use their authority to shield a party accused of criminal fraud from accountability, they violate the most basic tenet of due process and equal justice under law. The pattern here—reclassification of pleadings, blanket denials, and pre-filing sanctions—amounts to obstruction of justice under 18 U.S.C. §§ 1506 and 1519 and a civil-rights violation under §§ 241 and 242. Such judicial self-protection constitutes structural bias incompatible with due process.

By conspiring to suppress filings and obstruct judicial review, officials acted under color of law to deprive Petitioner of his Fifth and Fourteenth Amendment rights, contrary to 18 U.S.C. §§ 241–242.

**VI.** **Mandamus Standards Are Satisfied.**

The Petitioner has no adequate remedy by appeal; his rights are being irreparably

curtailed; and the issues presented implicate the integrity of the judicial process itself. Allied Chemical, 449 U.S. at 35. Mandamus is necessary to preserve the rule of law and restore this Court's jurisdiction over its own record.

## RELIEF REQUESTED

Petitioner respectfully moves that this Court issue a Writ of Mandamus and order the following:

A. Vacate Orders 131, 296-1, and 304-2 as void for fraud on the court and lack of jurisdiction.

B. Direct the Clerk to docket all tendered filings, including the Emergency Motion to Declare Order 304-2 Void (October 17 2025) and Document 303.

C. Recognize and enter judgment on the ten-day defaults for Docs. 178 and 204 under FRAP 27(a)(3)(A).

D. Rescind the $200 sanction and the filing ban imposed by Order 304-2 and restore Petitioner's full access to the courts.

E. Vacate all orders procured through fraud and enter final judgment for Petitioner in the amount of $51,500,000, as pled in Appellant's Principal Brief (Document 43).

F. Refer the conduct of the panel and clerk to the Fifth Circuit Judicial Council and the U.S. Department of Justice for investigation under 18 U.S.C. §§ 4, 1506, 1519, 241, and 242, noting that judicial officers aware of record falsification are bound under § 4 to report rather than conceal such felonies.

G. Stay all sanctions and restrictions pending final resolution of this Petition.

H. Grant any further relief necessary to restore constitutional order and public confidence in this Court.

I. Demand immediate recognition by the Supreme Court of the United States under Rule 20 and 28 U.S.C. § 1651(a), assuming direct supervisory jurisdiction to enforce this writ, to halt continuing obstruction of justice within the Fifth Circuit and to ensure the entry of final judgment as requested herein.

## DECLARATION OF TRUTH

I declare under penalty of perjury that the foregoing Petition and attached exhibits are true and correct to the best of my knowledge and belief.
Executed on October 21, 2025.

/s/ Nelson E. Willis
Nelson E. Willis, Pro Se Petitioner
1405 County Road 208
Gainesville, Texas 76240
(972) 533-4126 |
nelsonwillis3@gmail.com

## CERTIFICATE OF COMPLIANCE

This Petition complies with the type-volume and form requirements of FRAP 21(d) and 32(a). It is prepared in 14-point Times New Roman and contains approximately 3600 words, excluding the portions exempt under FRAP 32(f).

## EXHIBITS

Exhibit A – Doc. 131 (June 25 2025 Order by Chief Judge Elrod)

Exhibit B – Doc. 296-1 (October 14 2025 Order by Chief Judge Elrod)

Exhibit C – Doc. 304-2 (October 16 2025 Gag/Sanction Order by Chief Judge Elrod)

Exhibit D – Internal Corporate Emails (AMC, Citigroup, Antara, B. Riley, D.F. King) evidencing Project Popcorn securities-fraud coordination

## CERTIFICATE OF SERVICE

I certify that on October 21, 2025, a true and correct copy of this Petition and exhibits was served via CM/ECF and email upon counsel for Appellee and the Clerk of the Court.

/s/ Nelson E. Willis
Petitioner – Pro Se

*Exhibit A*

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 24, 2025

Lyle W. Cayce
Clerk

No. 24-40585
Summary Calendar

---

NELSON WILLIS,

      *Plaintiff—Appellant,*

*versus*

ADAM M. ARON,

      *Defendant—Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:23-CV-732

---

Before ELROD, *Chief Judge*, and SMITH and GRAVES, *Circuit Judges*.

JENNIFER WALKER ELROD, CHIEF JUDGE:*

    Adam Aron is Chief Executive Officer of AMC Entertainment Holdings. Nelson Willis was an AMC shareholder. In March 2023, AMC held a meeting for its shareholders to vote on a proposed reverse stock split and merger. Willis was hospitalized when that vote occurred but maintains that, although he did not receive "his AMC proxy statement," he cast his vote

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-40585

"against the March 14th, 2023, proposals for a reverse split and merger . . . while lying down in his hospital bed." Despite Willis's efforts, the proposal was approved.

Willis alleges that upon learning of the proposal's success, he "expressed his frustration" by sending several emails to the AMC Investor Relations email account. Receiving no response, Willis's "patience ran thin." So, he "sent an angry email" to Aron "asking how [Aron could] advertise [that] the voting proposals of a reverse split and merger were approved by shareholders when many shareholders such as [Willis] never received the correct number of their proxy voting emails" and were, therefore, unable "to vote all their shares." When Aron failed to respond, Willis sent Aron several "angrier emails." On April 3, 2023, Aron finally responded. But Aron's response only upset Willis more. So, Willis sent Aron an "angr[y]" response, "then began reaching out to the SEC chair" and others regarding his concerns.

As a result of Willis's "harassing behavior," Aron sought a protective order against Willis in Texas state court. But before any protective order could be issued, Aron filed a notice of nonsuit voluntarily dismissing the state court proceeding.[1]

On August 14, 2023, Willis filed a *pro se* complaint in federal court asserting several causes of action against Aron. Arguing that the causes of action asserted therein arose out of the now–dismissed state court proceeding, Aron moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). After ruling on a myriad of motions, objections, and other filings by the parties (most of which were initiated by Willis), the

---

[1] Aron's notice of nonsuit was filed before the state court held any hearings or otherwise ruled on the motion for protective order.

No. 24-40585

magistrate judge turned her attention to Aron's motion to dismiss Willis's complaint. The magistrate judge determined that by voluntarily dismissing the state court action regarding the protective order, Aron had in fact terminated that proceeding. As such, the magistrate judge recommended that the district court grant Aron's motion. Willis filed multiple objections to that recommendation. The district court conducted a *de novo* review of Willis's objections and determined that they were "without merit as to the ultimate findings of the Magistrate Judge." So, the district court overruled Willis's objections, adopted the magistrate judge's report and recommendation as "the findings and conclusions of the [c]ourt," and dismissed Willis's claims with prejudice. Willis timely appealed.

"We review *de novo* the grant of a Rule 12(b)(6) motion to dismiss." *Lampton v. Diaz*, 639 F.3d 223, 225 (5th Cir. 2011). "Further, this court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Const., Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). Thus, a Rule 12(b)(6) dismissal is appropriate only where a plaintiff's claims fail to contain "'sufficient factual matter'" that when "'accepted as true,'" state "'a claim to relief that is plausible on its face.'" *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[2]

---

[2] We have held that "[a]llegations of *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Rogers*, 709 F.3d at 407. "'[B]ut *pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level.'" *Arvie v. Cathedral of Faith Missionary Baptist Church*, 2025 WL 1565149, at *1 (5th Cir. June 3, 2025) (quoting *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016)).

No. 24-40585

On appeal, Willis complains that the district court dismissed his claims based on a "procedurally invalid nonsuit that was never finalized by judicial order, in direct violation of Texas Rule of Civil Procedure 162 and *Epps v. Fowler*, 351 S.W.3d 862 (Tex. 2011)." He urges that the "underlying state court docket . . . remains open" and Aron's nonsuit was a "procedural impropriety." On this basis, Willis persists that by dismissing his claims, the district court denied him "due process" and failed "to adjudicate [his] motions on the merits." We disagree.

Willis does not on appeal address the merits of the magistrate judge's report and recommendation which the district court adopted and we find persuasive.[3] Willis's only "merits" challenge is that "the district court's ruling was predicated on misrepresented facts" because "no valid dismissal order was ever entered in the state court proceedings," and the "magistrate's recommendation ignored material objections, exhibits, and the open state docket."

Our review of the record reveals that Aron filed his notice of nonsuit in the state court proceeding on July 31, 2023. Willis then filed his federal complaint some 14 days *later* on August 14, 2023. Thus, the state court action was terminated *before* Willis initiated the federal court proceeding. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (quoting *Univ. of Tex. Med. Branch at Galveston v. Est. of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) ("A nonsuit 'extinguishes a case or controversy "from the moment the motion is filed" [no court order is required], the only

---

[3] We will not "raise and discuss" legal issues that Willis does not raise on appeal. *Brinkmann*, 813 F.2d at 748 (citing *Davis v. Maggio*, 706 F.2d 568, 571 (5th Cir. 1983) ("Claims not pressed on appeal are deemed abandoned.")); *see also Olgin v. Darnell*, 664 F.2d 107, 108 n.1 (5th Cir. 1981) (same).

4

Exhibit
A

No. 24-40585

requirement is "the mere filing of the motion with the clerk of the court.'")).
Thus, Willis's argument that the state court proceeding remains open is
unveiling.

The record further reveals that the magistrate judge considered and
ruled on numerous motions, objections, and other filings by Willis.[4] Willis
argues that the district court erred in "adopt[ing] the magistrate's
recommendation without addressing [his] . . . detailed objections, motions,
and supporting exhibits." As stated above, in a very thorough report and
recommendation, the magistrate judge concluded that Willis's claims should
dismissed pursuant to Rule 12(b)(6). The district court conducted a *de novo*
review of Willis's objections, then upon determination that those objections
were without merit, the district court overruled them. In agreement with the
magistrate judge's conclusion that Willis had already "pleaded his best case
for all three causes of action," the district court dismissed Willis's claims
with prejudice.[5] Willis has not demonstrated that the district court erred in

---

[4] Our review of the record reveals that Willis bombarded the court with numerous
filings including, *inter alia*, motions: for emergency halt cease-and-desist; for temporary
restraining order; to unseal documents and evidence; to compel; civil remedies and request
for grand jury investigation; to supplement the record; alleging fraudulent conveyance and
demand for action; summary judgment; to remove district judge; to strike; to remove
magistrate judge; to take judicial notice; for reconsideration; and for sanctions. Willis also
filed numerous objections to the various reports and recommendations by the magistrate
judge.

The record on appeal shows that Willis continues this practice of voluminous
filings in our court.

[5] Generally, "[i]f dismissal of a *pro se* complaint is warranted, it should be without
prejudice to allow [the plaintiff] to file an amended complaint." *Moawad v. Childs*, 673 F.2d
850, 851 (5th Cir. 1982). But dismissal with prejudice may be appropriate where "the
plaintiff has alleged his best case." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998).

No. 24-40585

dismissing his claims with prejudice. *Welsh v. Cammack*, 2024 WL 3649583, at *6 (5th Cir. Aug. 5, 2024).

The district court's dismissal with prejudice of Willis's claims is AFFIRMED.

Handwritten: Exhibit B

# United States Court of Appeals for the Fifth Circuit

No. 24-40585

United States Court of Appeals
Fifth Circuit

**FILED**

October 14, 2025

Lyle W. Cayce
Clerk

NELSON WILLIS,

*Plaintiff—Appellant,*

*versus*

ADAM M. ARON,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:23-CV-732

ON PETITION FOR REHEARING EN BANC

Before ELROD, *Chief Judge,* and SMITH and GRAVES, *Circuit Judges.*
PER CURIAM:

Treating the petition for rehearing en banc as a petition for panel rehearing (5TH CIR. R.40 I.O.P.), the petition for panel rehearing is DENIED. Because no member of the panel or judge in regular active service requested that the court be polled on rehearing en banc (FED. R. APP. P.40 and 5TH CIR. R.40), the petition for rehearing en banc is DENIED.

Exhibit C

# United States Court of Appeals
# for the Fifth Circuit

No. 24-40585

United States Court of Appeals
Fifth Circuit

**FILED**

October 16, 2025

Lyle W. Cayce
Clerk

NELSON WILLIS,

*Plaintiff—Appellant,*

*versus*

ADAM M. ARON,

*Defendant—Appellee.*

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:23-CV-732

## UNPUBLISHED ORDER

Before ELROD, *Chief Judge,* and SMITH, and GRAVES, *Circuit Judges.*
PER CURIAM:

IT IS ORDERED that Appellant's motions to strike documents, declare documents void, or vacate filings by opposing counsel, as made on September 19, 2025, September 25, 2025, September 29, 2025, October 3, 2025, and October 6, 2025, are DENIED.

IT IS FURTHER ORDERED that Appellant's opposed motions to declare default and associated motions regarding the effects of those defaults, as made on September 19, 2025, September 29, 2025, September

30, 2025, October 2, 2025, October 3, 2025, and October 7, 2025, are DENIED.

IT IS FURTHER ORDERED that Appellant's opposed motions to enter sanctions and referral for disbarment against Richard Illmer and Meghann D. Reeves and similar motions requesting Appellee's counsel show cause regarding sanctions and requesting enforcement of rules against Appellee's counsel, as made on September 19, 2025, September 25, 2025, September 29, 2025, October 2, 2025, October 6, 2025, and October 7, 2025, are DENIED.

IT IS FURTHER ORDERED that Appellant's opposed motions to enter final judgment in the amount of $51,500,000.00, as made on September 19, 2025, September 25, 2025, September 29, 2025, October 2, 2025, and October 7, 2025, are DENIED.

IT IS FURTHER ORDERED that Appellant's opposed motions for findings of fact, judicial notice, supplementation of the record, and declaration of factual findings, as made on September 25, 2025, October 6, 2025, and October 7, 2025, are DENIED.

IT IS FURTHER ORDERED that Appellant's opposed motions to vacate the nonsuit, declare fraud on the court, order Appellee to show cause regarding vacatur, and vacate, void, acknowledge as operative, or reinstate actions of this court or any other court because of the nonsuit, fraud on the court, or deficiencies in the record, as made on September 25, 2025, September 30, 2025, October 2, 2025, October 3, 2025, October 6, 2025, and October 7, 2025, are DENIED.

IT IS FURTHER ORDERED that Appellant's motions to order the clerk to publish records or refer docketing concerns for oversight, as made on October 3, 2025, and October 7, 2025, are DENIED.

*Exhibit C*

IT IS FURTHER ORDERED that Appellant's motions to refer the substance of this case to the Department of Justice or Securities and Exchange Commission, as made on October 3, 2025, and October 7, 2025, are DENIED.

IT IS FURTHER ORDERED that any requests for further relief or any other named relief from Appellant's omnibus motions of September 19, 2025, through October 7, 2025, are DENIED.

The record reveals that this panel has now several times warned Appellant that further frivolous motions would be met with the imposition of sanctions. The panel has also previously sanctioned Appellant $100 for filing voluminous and frivolous motions. Appellant has ignored this panel's warnings and sanctions. Instead, he continues to bombard this court with repetitive and frivolous filings, including those addressed in this order.

Appellant is ORDERED to remit a monetary sanction in the amount of $200, payable to the clerk of the court.

Appellant is CAUTIONED to withdraw any frivolous motions that he may be pending.

Appellant is PROHIBITED from filing future motions, barring life-threatening circumstances or an imminent risk of physical harm, until all outstanding fees and sanctions have been paid.

Citigroup Global Markets Inc. | Banking, Capital Markets, & Advisory

November 2021



# Project Popcorn: Follow-Up Items



Strictly Private and Confidential

CONFIDENTIAL



AMC_00047570

# Follow-Up Items

| # | Item | Process Owner |
|---|------|---------------|
| | **Rights Offering Structure** | |
| 1 | Would an incremental approach be preferable (i.e. multiple rights offerings, starting smaller and going larger if successful)? | Citi |
| 2 | Can shareholders also indicate interest in buying any residual rump shares? | Citi |
| 3 | How would it work if shareholders receive fractional rights but do not have enough rights to purchase a full APE / CSE? | Citi |
| 4 | Could we include and what are the implications of a structure where low volume holders (1 share, 2 shares, etc.) still receive a minimum of at least one full right? What incentives are created and what are potential negative impacts? | Citi |
| 5 | Can rights be structured so that they are automatically sold if not exercised by a certain time? | Citi / Counsel |
| 6 | Should there be a minimum sign-up clause where, under a certain threshold, the offering is called off? For example, at least 25 million or nothing. | Citi / Counsel |
| | **Timing / Messaging** | |
| 7 | Identify and on-board a PR / IR firm to assist with communication. | AMC / Citi |
| 8 | When is the optimal time to go to market (e.g. January vs. March / post earnings)? | AMC |
| 9 | What will the timing be from announcement to ex-date for the rights? What are the consideration is setting / determining that? | Citi |
| 10 | What will be the UoP and narrative for investors on why AMC is accessing the markets now? | AMC |
| | **Shareholder Considerations** | |
| 11 | What would be the mechanics of trading the fractional rights on brokerage platforms? | Citi |
| 12 | What are the steps brokerage / trading platforms will be required to take to communicate the offer to their customers? | Citi |
| 13 | How will index funds manage their rights? | Citi |
| 14 | Any issues with foreign shareholders? | Citi / Counsel |

1

CONFIDENTIAL

citi

AMC_00047571

IRS Circular 230 Disclosure: Citigroup Inc. and its affiliates do not provide tax or legal advice. Any discussion of tax matters in these materials (i) is not intended or written to be used, and cannot be used or relied upon, by you for the purpose of avoiding any tax penalties and (ii) may have been written in connection with the "promotion or marketing" of any transaction contemplated hereby ("Transaction"). Accordingly, you should seek advice based on your particular circumstances from an independent tax advisor.

In any instance where distribution of this communication is subject to the rules of the US Commodity Futures Trading Commission ("CFTC"), this communication constitutes an invitation to consider entering into a derivatives transaction under U.S. CFTC Regulations §§ 1.71 and 23.605, where applicable, but is not a binding offer to buy/sell any financial instrument.

Any terms set forth herein are intended for discussion purposes only and are subject to the final terms as set forth in separate definitive written agreements. This presentation is not a commitment to lend, syndicate a financing, underwrite or purchase securities, or commit capital nor does it obligate us to enter into such a commitment, nor are we acting as a fiduciary to you. By accepting this presentation, subject to applicable law or regulation, you agree to keep confidential the information contained herein and the existence of and proposed terms for any Transaction.

Prior to entering into any Transaction, you should determine, without reliance upon us or our affiliates, the economic risks and merits (and independently determine that you are able to assume these risks) as well as the legal, tax and accounting characterizations and consequences of any such Transaction. In this regard, by accepting this presentation, you acknowledge that (a) we are not in the business of providing (and you are not relying on us for) legal, tax or accounting advice, (b) there may be legal, tax or accounting risks associated with any Transaction, (c) you should receive (and rely on) separate and qualified legal, tax and accounting advice and (d) you should apprise senior management in your organization as to such legal, tax and accounting advice (and any risks associated with any Transaction) and our disclaimer as to these matters. By acceptance of these materials, you and we hereby agree that from the commencement of discussions with respect to any Transaction, and notwithstanding any other provision in this presentation, we hereby confirm that no participant in any Transaction shall be limited from disclosing the U.S. tax treatment or U.S. tax structure of such Transaction.

We are required to obtain, verify and record certain information that identifies each entity that enters into a formal business relationship with us. We will ask for your complete name, street address, and taxpayer ID number. We may also request corporate formation documents, or other forms of identification, to verify information provided.

Any prices or levels contained herein are preliminary and indicative only and do not represent bids or offers. These indications are provided solely for your information and consideration, are subject to change at any time without notice and are not intended as a solicitation with respect to the purchase or sale of any instrument. The information contained in this presentation may include results of analyses from a quantitative model which represent potential future events that may or may not be realized, and is not a complete analysis of every material fact representing any product. Any estimates included herein constitute our judgment as of the date hereof and are subject to change without any notice. We and/or our affiliates may make a market in these instruments for our customers and for our own account. Accordingly, we may have a position in any such instrument at any time.

Although this material may contain publicly available information about Citi corporate bond research, fixed income strategy or economic and market analysis, Citi policy (i) prohibits employees from offering, directly or indirectly, a favorable or negative research opinion or offering to change an opinion as consideration or inducement for the receipt of business or for compensation; and (ii) prohibits analysts from being compensated for specific recommendations or views contained in research reports. So as to reduce the potential for conflicts of interest, as well as to reduce any appearance of conflicts of interest, Citi has enacted policies and procedures designed to limit communications between its investment banking and research personnel to specifically prescribed circumstances.

© 2021 Citigroup Global Markets Inc. Member SIPC. All rights reserved. Citi and Citi and Arc Design are trademarks and service marks of Citigroup Inc. or its affiliates and are used and registered throughout the world.

Citi believes that sustainability is good business practice. We work closely with our clients, peer financial institutions, NGOs and other partners to finance solutions to climate change, develop industry standards, reduce our own environmental footprint, and engage with stakeholders to advance shared learning and solutions. Citi's Sustainable Progress strategy focuses on sustainability performance across three pillars: Environmental Finance; Environmental and Social Risk Management; and Operations and Supply Chain. Our cornerstone initiative is our $100 Billion Environmental Finance Goal – to lend, invest and facilitate $100 billion over 10 years to activities focused on environmental and climate solutions.

cíti





**Document Complete**

Back to Top







**Date:** Thursday, December 8 2022 03:11 PM

**Subject:** RE: Antara

**From:** Van Zandt, Derek <derek.vanzandt@citi.com>

**To:** Adam Aron <AAron@amctheatres.com>; Sean Goodman <SeGoodman@amctheatres.com>; Kevin Connor <KConnor@amctheatres.com>;

**CC:** Gonzalez, Cristian <cristian.gonzalez@citi.com>; Mikulitz, Mark <mark.mikulitz@citi.com>; Kak, Shiv <shiv.kak@citi.com>; Meadows, Cass <cass.meadows@citi.com>;

Just spoke with Himanshu. He was very positive on yesterday's meeting.

They want to proceed but are limited to $150mm in size due to risk limits but believe they can stretch it to $190mm with the repurchase of their $100mm face of 2Ls at 40.

He is willing to allocating value to the bonds to provide for a higher APE price but we need to think this through.

$190mm purchase of APEs at 20% discount.

AMC purchases their $100mm 2L notes @ 40.

AMC commits to proceeding with vote.

Antara agrees to hold shares until vote and vote in favor.

He wants AMC restricted from selling more APEs until after the vote including converts. Restriction lifted if APES >$3. Also, willing to be supportive of AMC adding more liquidity from ATM program if >$3.

Wants participation in Bk / Press release drafting.

Available for public information diligence on Monday in KC (Adam and / or Sean).

Target transaction timeframe next week.

**From:** Van Zandt, Derek [ICG-BCMA]
**Sent:** Thursday, December 8, 2022 1:19 PM
**To:** Adam Aron (aaron@amctheatres.com); Sean Goodman
**Subject:** Antara

Adam / Sean – Attached is a preliminary ownership and vote analysis based on various investment scenarios with Antara. We need to confirm their existing stake size but are assuming 60mm shares for now.

We probably need to discuss size considerations relative to 20% threshold with your lawyers and any governance / control implications.

I am talking to Antara at 2pm ET to connect following yesterday's lunch.

Derek



THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

| | |
|---|---|
| **Date:** | Friday, May 27 2022 05:58 PM |
| **Subject:** | RE: super voting pref |
| **From:** | Jon Merriman <jmerriman@brileyfin.com> |
| **To:** | Sean Goodman <SeGoodman@amctheatres.com>; John Merriwether <JMerriwether@amctheatres.com>; |
| **CC:** | Patrice McNicoll <pmcnicoll@brileyfin.com>; Layne Rissolo <lrissolo@brileyfin.com>; Colucci, Dean M. <DMColucci@duanemorris.com>; Seery, James T. <JTSeery@duanemorris.com>; |
| **Attachments:** | Opgeninc_20211015_424B5 (Final Prospectus - Priced Offering (S-3)).pdf; Avingerinc_20220113_424B5 (Final Prospectus - Continuous Offering (S-3)).pdf; AgileTherapeuticsInc_20220314_424B5 (Preliminary Prospectus (S-3)).pdf |

Weekend reading – talk soon
Jon Merriman
**Chief Business Officer**
**B. Riley Financial**
415 500 5712

From: Jon Merriman
Sent: Friday, May 27, 2022 1:40 PM
To: Sean Goodman ; John Merriwether
Cc: Patrice McNicoll ; Layne Rissolo ; Colucci, Dean M. ; Seery, James T.
Subject: super voting pref
Sean, John – great to see you guys this week – thank you so much for coming out to our event. Sean I hope you didn't have equal drama on the way home – what a story!
Suggest we get on a call with the lawyers next week and talk on this structure. Then you and your team can get with the NYSE and see if this y could work for AMC. In the meantime Layne would you please send the Nasdaq precedents.
Copied our counsel at DM who has helped us here. Suggest Tuesday at 10EST to start.
Great weekend everyone!
Jon
Jon Merriman
**Chief Business Officer**
**B. Riley Financial**
415 500 5712

PLEASE VISIT https://brileyfin.com/disclosures/ FOR LEGAL DISCLOSURES.

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

🔒 static.blbglaw.com

Exhibit D

▪▮▮ Verizon 🛜    11:37 PM    10% 🔋

• positive votes at an 80%+ rate (net negative)
• Proportionate custodial holdings at NFS (Fidelity) have increased by ~24mn shares; these new shares will be voted
  ... ~w the rest of NFS' instructed shares voted 29% FOR (net

**831 of 928** ortionate custodial holdings (e.g., Goldman, MLPFS, etc.) decreased by ~12.5mn shares, those
                d overwhelmingly in favor of the proposal last year (net negative)
Ba........ .. ........ _ions, including the likely number of shares actually votable by the index funds due to stock loan,

:ONFIDENTIAL                                                              AMC_00019707

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

with the same retail voting FOR rate of 28.06% and retail participation of 27% (compared to 25.11% at the time the July
proposal was withdrawn), before applying any additional institutional votes outside of the index funds, Geode and Northern
Trust, there would be a voting spread in favor of the proposal of ~5mn shares with the votes cast split at 51.11% FOR & 48.89%
against. This provides a ~44% quorum as compared to a ~53% quorum at the July meeting, implying another 47mn shares
unaccounted for. However, this 47mn share difference may be largely negated by the combined ~36.5mn shares that will not
automatically be voted via decreases at discretionary and proportionate voting custodians.
As can be seen in the movement referenced above, especially at NFS, this analysis is based upon a moving target due to the
volume and volatility of the shareholder base. With certain assumptions I believe that the unaccounted-for shares referenced
above would more likely than not be favorable shares through hedge funds and institutions, and when combined with certain
campaign strategies that would be altered to account for the lower voting threshold, this campaign would ultimately be
successful. At the same time, it is worth noting that at the original May meeting, using a combined average of the top retail
custodians (TD, NFS, Robinhood, Schwab and Apex) as a proxy for the retail vote, retail voted FOR at 33.5%. At the July
meeting, this same group voted FOR at 28.06%. Based on the high-level analysis mentioned, if the retail FOR vote moves to
26.5% or below, the initial ~5mn share advantage disappears.
If helpful, attaching the latest ownership report based upon the 13F data that came due this week.
Let me know any questions. Happy to discuss.
Thanks,
Geoff
**

DISCLAIMER: This analysis contains information provided by or derived from sources believed to be reliable and accurate. D.F. King & Co.,
Inc. ("King") is not responsible for any errors or omissions, or for the results obtained from the use of any such information. This Report is
provided "as is", with no guarantee of completeness, accuracy, timeliness or of the results obtained from the use of this information, and
without warranty of any kind, express or implied, including, but not limited to warranties of performance, merchantability and fitness for a
particular purpose. AMC Entertainment Holdings, Inc. (the "Company") is solely responsible for any decisions, actions, or omissions taken,
and, in no event will King, its affiliates, officers, directors, employees, agents, or other representatives be liable to the Company or anyone
else for any errors, omissions, or for any adverse consequences resulting from the reliance on any aspect of this Report or the information
contained herein.
**Geoffrey Weinberg**
Senior Managing Director
T: 212.786.2704
M: 917.473.2984 / 732.588.2504
E: gweinberg@dfking.com

🔒 static.blbglaw.com

ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

📶 Verizon 🤶     **11:36 PM**     10% 🔋

| | |
|---|---|
| Date: | Thursday, July 21 2022 12:40 PM |
| Subject: | Re: Citi Questions - PEU ATM |
| From: | Sean Goodman |
| To: | John Merriwether <JMerriwether@amctheatres.com>; |
| CC: | Kevin Connor <KConnor@amctheatres.com>; Eddie Gladbach <EGladbach@amctheatres.com>; |
| Attachments: | image001.png; image001.png |

Thanks John

I think 1B makes sense.

Defer to the lawyers regarding the S-3.

Sean

Sent from my iPhone

On Jul 21, 2022, at 12:33 PM, John Merriwether wrote:

Gentlemen,
Derek called me after the call with a few logistical questions regarding the S-3 and ATM plans.

- | Privileged - Redacted |
- There had been some discussion about how many PEUs we would register and 1B was discussed (517M for the dividend and then the remainder for the ATM). Are we in agreement that the number is 1B? There is a sweet spot somewhere that doesn't raise the shareholders' ire about dilution but also gives us the flexibility to raise the capital we want. I think we will get ire no matter what the number is, so does it make sense to get the ire out all at once at 1B.

Thanks,
John



**John Merriwether**
Vice President, Capital Markets and Investor Relations
One AMC Way
11500 Ash Street, Leawood, KS 66211
office: 913-213-2660
mobile: 239-398-8366
email: Jmerriwether@amctheatres.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended for the person or entity to which it is addressed and may contain confidential and/or proprietary material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.

CONFIDENTIAL                AMC_0002029

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

Exhibit D



830 of 928

From: Weinberg, Geoffrey gweinberg@dfking.com>
Sent: Tuesday, May 17, 2022 8:31 PM
To: Kevin Connor KConnor@amctheatres.com >; Eddie Gladbach EGladbach@amctheatres.com >
Cc: Tait-Harmon, Mercedez Mercedez.Tait-Harmon@weil.com>; Chivers, Corey corey.chivers@weil.com>; Stein, Michael
Michael.Stein@weil.com>; Scrudato, Krystal kscrudato@dfking.com>
Subject: Re: AMC - Preferred issuance

Kevin –

As discussed, for the preferred structure to be successful, the votes cast must be at least 50% + 1 FOR. This is effectively a
*majority of votes cast standard* and a much lower threshold than our previous voting standard of *majority of shares
outstanding* where we required FOR votes from 50% + 1 of the entire shareholder base, not just those that actually vote. From
there, the question becomes the likelihood that we would receive support from a majority of votes cast.

Due to (i) the fact that institutional shareholders do not like to vote until just prior to the meeting and (ii) that both previous
votes were pulled at least a week prior the meeting, our analysis is focused on (a) the vote up until the day that the proposal
was withdrawn, (b) certain assumptions for how the *routine vote* (as discussed below) would have been applied, and (c) how
the shareholder base has changed since last year.

Based upon last year's voting, incorporating the estimated routine vote that would have been applied, the votes cast would
have been ~56% FOR prior to the institutions voting, with a ~31.5mn vote difference between FOR and against. Based upon
certain assumptions of what institutional shares would have been voted after the proposal was withdrawn, taking a
conservative approach, an additional 10mn FOR votes would have been added, increasing the FOR % to 57.7% and the vote
difference to 41.5mn shares.

We start with an advantage in achieving a majority of votes FOR as NYSE should consider this proposal a "routine proposal" --
this means that brokers that still maintain their discretionary voting authority will apply that voting authority to vote their
customers' uninstructed accounts.
These vote in two different ways:
- Discretionary voting - where brokers will vote *any uninstructed shares* with management's recommendations; ~64mn
  shares as of the latest available data, of which we would anticipate splitting 53mn FOR / 11mn against based upon
  previous voting patterns.
- Proportionate voting - where brokers will vote any uninstructed shares in the same proportion that their instructed
  shares were voted (e.g., Broker X has 10mn customers' shares, 2mn vote, 1mn of the 2mn that vote, vote FOR - the
  remaining 8mn uninstructed shares are voted 50 / 50 FOR and against); ~103.5mn shares as of the latest available data,
  of which we would anticipate splitting 27.4mn FOR / 76.1mn against based upon previous voting patterns.
Since the July 2021 vote, the shareholder base has changed as follows:
- Institutional custodial holdings have increased by ~27.4mn shares; these tend to vote in favor of the proposal and
  participate as well (net positive)
- Discretionary custodial holdings have decreased by 14.2mn shares; we will no longer automatically receive those
  positive votes at an 80%+ rate (net negative)
- Proportionate custodial holdings at NFS (Fidelity) have increased by ~24mn shares; these new shares will be voted
  proportionately to how the rest of NFS' instructed shares vote. Last year these groups of shares voted 29% FOR (net
  negative)
    - Friendlier proportionate custodial holdings (e.g., Goldman, MLPFS, etc.) decreased by ~12.5mn shares, those
      custodians voted overwhelmingly in favor of the proposal last year (net negative)
Based upon certain assumptions, including the likely number of shares actually votable by the index funds due to stock loan,

:ONFIDENTIAL      AMC_00019707

THIS DOCUMENT IS A CONFIDENTIAL FILING.
ACCESS IS PROHIBITED EXCEPT AS AUTHORIZED BY COURT ORDER.

with the same retail voting FOR rate of 28.06% and retail participation of 27% (compared to 25.11% at the time the July
proposal was withdrawn), before applying any additional institutional votes outside of the index funds, Geode and Northern
Trust, there would be a voting spread in favor of the proposal of ~5mn shares with the votes cast split at 51.11% FOR & 48.89%
against. This provides a ~44% quorum as compared to a ~53% quorum at the July meeting, implying another 47mn shares
unaccounted for. However, this 47mn share difference may be largely negated by the combined ~36.5mn shares that will not
automatically be voted via decreases at discretionary and proportionate voting custodians.

As can be seen in the movement referenced above, especially at NFS, this analysis is based upon a moving target due to the
volume and volatility of the shareholder base. With certain assumptions I believe that the unaccounted-for shares referenced
above would more likely than not be favorable shares through hedge funds and institutions, and when combined with certain
campaign strategies that would be altered to account for the lower voting threshold, this campaign would ultimately be
successful. At the same time, it is worth noting that at the original May meeting, using a combined ~36.5mn shares of the top retail
custodians (TD, NFS, Robinhood, Schwab and Apex) as a proxy for the retail vote, retail voted FOR at 33.5%. At the July
meeting, this same group voted FOR at 28.06%. Based on the high-level analysis mentioned, if the retail FOR vote moves to

# UNITED STATES DISTRICT COURT
### for the
_____ DISTRICT OF _____

| | |
|---|---|
| _____, <br> **Plaintiff(s)** <br><br> v. <br><br> _____, <br> **Defendant(s)** | ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. _____ <br> ) <br> ) <br> ) <br> ) |

## AFFIDAVIT ACCOMPANYING MOTION
## FOR PERMISSION TO APPEAL IN FORMA PAUPERIS

| Affidavit in Support of Motion | Instructions |
|---|---|
| I swear or affirm under penalty of perjury that, because of my poverty, I cannot prepay the docket fees of my appeal or post a bond for them. I believe I am entitled to redress. I swear or affirm under penalty of perjury under United States laws that my answers on this form are true and correct. (28 U.S.C. § 1746; 18 U.S.C. § 1621.) | Complete all questions in this application and then sign it. Do not leave any blanks: if the answer to a question is "0," "none," or "not applicable (N/A)," write in that response. If you need more space to answer a question or to explain your answer, attach a separate sheet of paper identified with your name, your case's docket number, and the question number. |

Signed: _____    Date: _____

My issues on appeal are: _____

_____

_____

_____

_____

1. *For both you and your spouse estimate the average amount of money received from each of the following sources during the past 12 months. Adjust any amount that was received weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate. Use gross amounts, that is, amounts before any deductions for taxes or otherwise.*

| Income source | Average monthly amount during the past 12 months | | Amount expected next month | |
|---|---|---|---|---|
| | You | Spouse | You | Spouse |
| Employment | $ | $ | $ | $ |
| Self-employment | $ | $ | $ | $ |
| Income from real property (such as rental income) | $ | $ | $ | $ |
| Interest and dividends | $ | $ | $ | $ |
| Gifts | $ | $ | $ | $ |
| Alimony | $ | $ | $ | $ |
| Child support | $ | $ | $ | $ |
| Retirement (such as social security, pensions, annuities, insurance) | $ | $ | $ | $ |
| Disability (such as social security, insurance payments) | $ | $ | $ | $ |
| Unemployment payments | $ | $ | $ | $ |
| Public-assistance (such as welfare) | $ | $ | $ | $ |
| Other (specify): | $ | $ | $ | $ |
| **Total monthly income:** | **$** | **$** | **$** | **$** |

2.     *List your employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

3. *List your spouse's employment history for the past two years, most recent employer first. (Gross monthly pay is before taxes or other deductions.)*

| Employer | Address | Dates of employment | Gross monthly pay |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |

4. *How much cash do you and your spouse have? $_____*

   *Below, state any money you or your spouse have in bank accounts or in any other financial institution.*

| Financial Institution | Type of Account | Amount you have | Amount your spouse has |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

***If you are a prisoner seeking to appeal a judgment in a civil action or proceeding, you must attach a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts. If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified statement of each account.***

5. *List the assets, and their values, which you own or your spouse owns. Do not list clothing and ordinary household furnishings.*

| Home | Other real estate | Motor vehicle #1 |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| | | Make and year: |
| | | Model: |
| | | Registration #: |

| Motor vehicle #2 | Other assets | Other assets |
|---|---|---|
| (Value) $ | (Value) $ | (Value) $ |
| Make and year: | | |
| Model: | | |
| Registration #: | | |

6. *State every person, business, or organization owing you or your spouse money, and the amount owed.*

| Person owing you or your spouse money | Amount owed to you | Amount owed to your spouse |
|---|---|---|
| | $ | $ |
| | $ | $ |
| | $ | $ |
| | $ | $ |

7. *State the persons who rely on you or your spouse for support.*

| Name [or, if under 18, initials only] | Relationship | Age |
|---|---|---|
| | | |
| | | |
| | | |

8. *Estimate the average monthly expenses of you and your family. Show separately the amounts paid by your spouse. Adjust any payments that are made weekly, biweekly, quarterly, semiannually, or annually to show the monthly rate.*

| | You | Your Spouse |
|---|---|---|
| Rent or home-mortgage payment (include lot rented for mobile home)<br>　　　　Are real estate taxes included?　　　　[ ] Yes  [ ] No<br>　　　　Is property insurance included?　　　　[ ] Yes  [ ] No | $ | $ |
| Utilities (electricity, heating fuel, water, sewer, and telephone) | $ | $ |

| | | |
|---|---|---|
| Home maintenance (repairs and upkeep) | $ | $ |
| Food | $ | $ |
| Clothing | $ | $ |
| Laundry and dry-cleaning | $ | $ |
| Medical and dental expenses | $ | $ |
| Transportation (not including motor vehicle payments) | $ | $ |
| Recreation, entertainment, newspapers, magazines, etc. | $ | $ |
| Insurance (not deducted from wages or included in mortgage payments) | | |
|     Homeowner's or renter's: | $ | $ |
|     Life: | $ | $ |
|     Health: | $ | $ |
|     Motor vehicle: | $ | $ |
|     Other: | $ | $ |
| Taxes (not deducted from wages or included in mortgage payments) (specify): | $ | $ |
| Installment payments | | |
|     Motor Vehicle: | $ | $ |
|     Credit card (name): | $ | $ |
|     Department store (name): | $ | $ |
|     Other: | $ | $ |
| Alimony, maintenance, and support paid to others | $ | $ |
| Regular expenses for operation of business, profession, or farm (attach detailed statement) | $ | $ |
| Other (specify): | $ | $ |
| **Total monthly expenses:** | **$** | **$** |

9.    *Do you expect any major changes to your monthly income or expenses or in your assets or liabilities during the next 12 months?*

     [ ] Yes [ ] No      If yes, describe on an attached sheet.

10.    *Have you spent — or will you be spending — any money for expenses or attorney fees in connection with this lawsuit?* [ ] Yes [ ] No

       *If yes, how much?* $ _____

11.    *Provide any other information that will help explain why you cannot pay the docket fees for your appeal.*

12.    *State the city and state of your legal residence.*

       *Your daytime phone number*: (____) _____

       *Your age*: _____   *Your years of schooling*: _____

       *Last four digits of your social-security number*: _____

# *United States Court of Appeals*

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

October 23, 2025

Mr. Nelson Willis
1405 County Road 208
Gainesville, TX 76240

No. 25-40689    In re: Nelson Willis
USDC No. 4:23-CV-732

Dear Mr. Willis,

We have docketed the petition for writ of mandamus, and ask you to use the case number above in future inquiries.

Filings in this court are governed strictly by the Federal Rules of **Appellate** Procedure. We cannot accept motions submitted under the Federal Rules of **Civil** Procedure. We can address only those documents the court directs you to file, or proper motions filed in support of the appeal. See Fed. R. App. P. and 5th Cir. R. 27 for guidance. We will not acknowledge or act upon documents not authorized by these rules.

Your petition is deficient for the reason(s) listed below. **You must comply within 30 days of the date of this letter. If you fail to comply we will dismiss your petition for writ of mandamus without further notice.**

> **This matter cannot proceed until you establish whether you have satisfied a previous sanction imposed against you in case number 24-40585, Willis v. Aron. Within 30 days from this date, you must either submit payment to satisfy this sanction, or advise us in writing whether you have paid the costs taxed against you in that case. Attach any documentation you may have. Because the sanction also barred you from filing any pro se appeals without the court's advance written permission, you must also submit a motion for permission to proceed as a sanctioned litigant. If you fail to comply fully, we will dismiss your appeal without further notice. We will not address or acknowledge submissions which do not provide proof of payment and request permission to proceed.**

> **You have not paid the $600.00 docketing fee, or filed a motion and affidavit for leave to proceed in forma pauperis under 28 U.S.C. § 1915(a). A form is enclosed.**

ATTENTION ATTORNEYS: Attorneys are required to be a member of the Fifth Circuit Bar and to register for Electronic Case Filing. The "Application and Oath for Admission" form can be printed or downloaded from the Fifth Circuit's website, www.ca5.uscourts.gov. Information on Electronic Case Filing is available at www.ca5.uscourts.gov/cmecf/.

**Electronic Record on Appeal (EROA):** We permit you to download all or part of the electronic record on appeal (EROA) after this is approved by the U.S. District Court. You will receive a notice when access to the EROA is available. Counsel must be approved for electronic filing and be listed as an attorney of record in the case before access will be granted. Instructions for accessing and downloading the EROA will be included in the notice you receive from the district court, but are also available here: http://www.ca5.uscourts.gov/docs/default-source/forms/instructions-for-electronic-record-download-feature-of-cm.

Please note that sealed documents, except for the presentence investigation report in criminal appeals, will not be included in the EROA. You must file a motion in our court for access to sealed documents, which will be provided by the district court only upon the filing and granting of a motion by our court.

We recommend that you visit the Fifth Circuit's website, www.ca5.uscourts.gov and review material that will assist you during the appeal process. We especially call to your attention the Practitioner's Guide and the 5th Circuit Appeal Flow Chart, located in the Forms, Fees, and Guides tab.

ATTENTION: If you are filing Pro Se (without a lawyer) you can request to receive correspondence from the court and other parties by email and can also request to file pleadings through the court's electronic filing systems. Details explaining how you can request this are available on the Fifth Circuit website at http://www.ca5.uscourts.gov/docs/default-source/default-document-library/pro-se-filer-instructions. This is not available for any pro se serving in confinement.

**Special guidance regarding filing certain documents:**

General Order No. 2021-1, dated January 15, 2021, requires parties to file in paper highly sensitive documents (HSD) that would ordinarily be filed under seal in CM/ECF. This includes documents likely to be of interest to the intelligence service of a foreign government and whose use or disclosure by a hostile foreign government would likely cause significant harm to the United States or its interests. Before uploading any matter as a sealed filing, ensure it has not been designated as HSD by a district court and does not qualify as HSD under General Order No. 2021-1.

A party seeking to designate a document as highly sensitive in the first instance or to change its designation as HSD must do so by motion. Parties are required to contact the Clerk's office for guidance before filing such motions.

**Sealing Documents on Appeal:** Our court has a strong presumption of public access to our court's records, and the court scrutinizes any request by a party to seal pleadings, record excerpts, or other documents on our court docket. Counsel moving to seal matters must explain in particularity the necessity for sealing in our court. Counsel do not satisfy this burden by simply stating that the originating court sealed the matter, as the circumstances that justified sealing in the originating court may have changed or may not apply in an appellate proceeding. It is the obligation of counsel to justify a request to file under seal, just as it is their obligation to notify the court whenever sealing is no longer necessary. An unopposed motion to seal does not obviate a counsel's obligation to justify the motion to seal.


Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Rebecca L. Leto, Deputy Clerk
504-310-7703


cc: Mr. David O'Toole

Provided below is the court's official caption.  Please review the
parties  listed  and  advise  the  court  immediately  of  any
discrepancies.  If you are required to file an appearance form, a
complete list of the parties should be listed on the form exactly
as they are listed on the caption.

_____

Case No. 25-40689

_____

In re:  Nelson Willis,

                    Petitioner